**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| FUNICULAR FUNDS, LP, individually and on behalf of all others similarly situated,<br><br>                Plaintiff,<br><br>      v.<br><br>PIONEER MERGER CORP., PIONEER MERGER SPONSOR LLC, JONATHAN CHRISTODORO, RICK GERSON, OSCAR SALAZAR, RYAN KHOURY, SCOTT CARPENTER, MATTHEW COREY, MITCHELL CAPLAN and TODD DAVIS,<br><br>                Defendants. | Case No. No. 22-cv-10986-JSR<br><br>**ECF Case** |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**
**PLAINTIFF'S AMENDED COMPLAINT OR TO STAY THE ACTION**

**KIRKLAND & ELLIS LLP**
Stefan Atkinson
Kyla Jackson
Amanda Lamothe-Cadet
601 Lexington Avenue
New York, New York 10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-2900
stefan.atkinson@kirkland.com
kyla.jackson@kirkland.com
amanda.lamothecadet@kirkland.com

*Counsel for Defendants*

## TABLE OF CONTENTS

                                                                                    **Page**

INTRODUCTION..........................................................................................................1

BACKGROUND ..........................................................................................................2

    A.    The Parties ................................................................................. 2

    B.    Overview of SPACs.................................................................. 2

    C.    Pioneer's Formation, Its Articles and the Sponsor Agreement.............................. 3

    D.    Proposed Merger with Acorn, Its Termination and Plaintiff's Suits ..................... 4

ARGUMENT ...............................................................................................................6

I.      THIS COURT SHOULD DISMISS OR STAY PLAINTIFF'S CASE UNDER THE DOCTRINES OF *FORUM NON CONVENIENS*, INTERNATIONAL COMITY OR ABSTENTION. ....................................7

    A.    The Court Should Dismiss or Stay This Case on *Forum Non Conveniens* Grounds..........................................................................7

        1.    The Court should afford no deference to Plaintiff's choice of a New York forum. .................................................... 8

        2.    The Cayman Islands is an adequate alternative forum. ........................... 11

        3.    The public and private interests weigh in favor of the Cayman proceeding........................................................ 14

    B.    The Court Should Dismiss Plaintiff's Amended Complaint or Stay the Case Pursuant to Principles of International Comity and Abstention.................. 16

II.    THE COURT SHOULD DISMISS THE AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6) BECAUSE PLAINTIFF FAILS TO ADEQUATELY PLEAD ANY VIABLE CLAIMS....................................18

    A.    Plaintiff lacks standing to bring a breach of fiduciary duty claim under Cayman law. ........................................................... 19

    B.    Plaintiff's breach of contract claim should be dismissed because Plaintiff is not a third-party beneficiary to the Sponsor Agreement and cannot claim entitlement to the Termination Fee. ..................................... 20

    C.    Plaintiff's unjust enrichment claim should be dismissed because none of the Defendants have been enriched, Plaintiff has no contractual right to additional funds, and its claim overlaps with its breach of contract claim. .......... 23

CONCLUSION ...........................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aenergy, S.A. v. Republic of Angola*,
  No. 20 CIV. 3569 (JPC), 2021 WL 1998725 (S.D.N.Y. May 19, 2021), *aff'd,*
  31 F.4th 119 (2d Cir. 2022), *cert. denied,* 143 S. Ct. 576 (2023).......................................9, 11

*In re Allstate Ins. Co. (Stolarz)*,
  81 N.Y.2d 219, 597 N.Y.S.2d 904, 613 N.E.2d 936 (1993)....................................................24

*Allstate Life Ins. Co. v. Linter Grp. Ltd.*,
  994 F.2d 996 (2d Cir. 1993)...........................................................................................15, 16

*Aritomo v. Rhee*,
  No. 21-cv-4875 (RA), 2022 WL 17156554 (S.D.N.Y. Nov. 22, 2022) ...........................15, 16

*ASG & C, Inc. v. Arch Specialty Ins. Co.*,
  No. 21-1767-CV, 2022 WL 839805 (2d Cir. Mar. 22, 2022).................................................24

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)............................................................................................................19

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)............................................................................................................19

*BFI Grp. Divino Corp. v. JSC Russian Aluminum*,
  298 F. App'x 87 (2d Cir. 2008) ..........................................................................................10

*Burns Jackson Miller Summit & Spitzer v. Lindner*,
  59 N.Y.2d 314 (1983)..........................................................................................................21

*In re CIL, Ltd.*,
  No. 18-CV-2226-JSR, 2018 WL 2383102 (S.D.N.Y. May 4, 2018).....................................20

*Consol. Edison, Inc. v. Ne. Utilities*,
  426 F.3d 524 (2d Cir. 2005).............................................................................................21, 22

*Cooper v. Anheuser-Busch, LLC*,
  553 F. Supp. 3d 83 (S.D.N.Y. 2021)....................................................................................25

*Corsello v. Verizon New York, Inc.*,
  18 N.Y.3d 777 (2012) .....................................................................................................24, 25

*Dormitory Auth. v. Samson Constr. Co.*,
  30 N.Y.3d 704 (2018) .....................................................................................................21, 23

*Evolution Online Sys., Inc. v. Koninklijke Nederland N.V.*,
    41 F. Supp. 2d 447 (S.D.N.Y. 1999) (Rakoff, J.) ............................................................13, 15

*Finocchiaro v. NQ Mobile, Inc.*,
    No. 15-cv-6385 (NRB), 2018 WL 1217728 (S.D.N.Y. Feb. 27, 2018)................................3, 6

*Georgia Malone & Co. v. Rieder*,
    19 N.Y.3d 511 (2012) ...........................................................................................................24

*GlobalNet Financial.Com, Inc. v. Frank Crystal & Co.*,
    449 F.3d 377 (2d Cir. 2006)..................................................................................................24

*Greg Beeche, Logistics, LLC v. Cross Country Constr., LLC*,
    210 A.D.3d 1158 (2022) .......................................................................................................23

*In re Herald*,
    540 F. App'x 19 (2d Cir. 2013) .........................................................................11, 12, 13, 16

*Iragorri v. United Techs. Corp.*,
    274 F.3d 65 (2d Cir. 2001)......................................................................................... *passim*

*JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*,
    412 F.3d 418 (2d Cir. 2005)............................................................................................17, 18

*Kingstown Cap. Mgmt., L.P. v. Vitek*,
    No. 19CV3170 (DLC), 2020 WL 5350492 (S.D.N.Y. Sept. 4, 2020), aff'd,
    No. 20-3406, 2022 WL 3970920 (2d Cir. Sept. 1, 2022) ...................................................17, 18

*LaSalle Nat. Bank v. Ernst & Young LLP*,
    729 N.Y.S.2d 671 (2001)......................................................................................................22

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
    672 F.3d 155 (2d Cir. 2012)..................................................................................................24

*Mayer v. Time, Inc.*,
    No. 17-cv-5613 (DLC), 2018 WL 1738322 (S.D.N.Y. Apr. 9, 2018)...............................10, 15

*Old Crompond Rd., LLC v. Cnty. of Westchester*,
    162 N.Y.S.3d 71 (2022).......................................................................................................22

*Pappas v. Tzolis*,
    20 N.Y.3d 228 (2012) ......................................................................................................24, 25

*Piper Aircraft Co. v. Reyno*,
    454 U.S. 235 (1981)........................................................................................................8, 9, 12

*Pollux Holding Ltd. v. Chase Manhattan Bank*,
    329 F.3d 64 (2d Cir. 2003)................................................................................................12, 16

*Port Chester Elec. Const. Co. v. Atlas*,
    40 N.Y.2d 652 (1976) ...........................................................................................21

*RIGroup LLC v. Trefonisco Mgmt. Ltd.*,
    949 F. Supp. 2d 546 (S.D.N.Y. 2013), *aff'd*, 559 F. App'x 58 (2d Cir. 2014).......................13

*Royal & Sun All. Ins. Co. of Canada v. Century Int'l Arms, Inc.*,
    466 F.3d 88 (2d Cir. 2006)...................................................................................17

*S'holder Representative Servs. LLC v. Sandoz Inc.*,
    9 N.Y.S.3d 595 (N.Y. Sup. 2015).........................................................................24

*Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.*,
    825 F.2d 709 (2d Cir. 1987)...........................................................................17, 18

**Rules**

Fed. R. Civ. P. 12(b)(6)........................................................................................1, 19, 25

## INTRODUCTION

Plaintiff Funicular Funds, LP has commenced two separate actions in two different jurisdictions, asserting substantially similar claims in both places. In the proceeding here in New York, Plaintiff alleges breach of Cayman law fiduciary duties, breach of contract and unjust enrichment in connection with the potential disbursement of a termination fee (the "Termination Fee") negotiated by and paid to Defendant Pioneer Merger Corp. ("Pioneer"), a Cayman company. In the other proceeding, which Plaintiff commenced in the Cayman Islands two weeks after filing this case, Plaintiff seeks the appointment of independent liquidators to determine the final distribution of Pioneer's remaining assets, including the Termination Fee. Allowing these two proceedings—each commenced by the same litigant—to proceed simultaneously is not only an inefficient use of the Court's resources, but also presents a substantial risk of inconsistent outcomes. The only way to avoid this problematic result is to allow only one of these actions to proceed, and the Cayman court is plainly the more appropriate forum for resolution of a dispute over the assets of a Cayman company. The Court should dismiss the Amended Complaint (or, alternatively, stay the case) pursuant to the doctrines of *forum non conveniens* or international comity and abstention to allow the claims to be resolved in the Cayman Islands.

In the alternative, the Court should dismiss the Amended Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) because, among other reasons, (i) Plaintiff has not alleged any exception to the Cayman law rule that fiduciary duties are owed only to the company, not its shareholders; (ii) Plaintiff was not a third-party beneficiary to and is unable to enforce the agreement it claims was breached; and (iii) Plaintiff's unjust enrichment claim not only overlaps with its claim for breach of contract, but the disputed funds are still with Pioneer, the

1

entity originally entitled to receive the Termination Fee, and Plaintiff admits the transfer it believes is unjust has not, and may never occur.

## BACKGROUND

### A.   The Parties

Pioneer is a special purpose acquisition company ("SPAC") that was formed under Cayman law for the purpose of effectuating a business combination within 24 months of its initial public offering ("IPO").  ECF No. 9, Am. Compl. ¶¶ 20, 45.  Defendant Pioneer Merger Sponsor LLC ("Sponsor"), a Cayman limited liability company, managed and operated Pioneer.  *Id.* ¶¶ 2, 20, 21.  Sponsor and the individual Defendants, who are officers and/or directors of Pioneer, are holders of Pioneer's Class B ordinary shares.  *Id.* ¶¶ 4, 22-29.  Plaintiff is a Delaware limited partnership that purchased Pioneer's Class A ordinary shares in December 2022.  *Id.* ¶ 19.

### B.   Overview of SPACs

SPACs are often referred to as blank check companies since they have no operations of their own.  They are formed to raise capital from the public markets (specifically, through an IPO) and to acquire or merge with an established operating company (an "initial business combination") within a certain time frame (often between 18 or 24 months).  SPACs offer a pathway to taking private companies public.  If the SPAC successfully completes an initial business combination, then the target company can become publicly listed without having to carry out an IPO.

The SPAC process is initiated by the sponsor, which is typically a newly incorporated company formed by an investment firm solely for the purpose of seeking out potential target companies for the SPAC to acquire.  Key personnel from the investment firm that formed the sponsor are usually appointed as directors or officers of the SPAC.  The sponsor and potentially some of the SPAC's directors and officers make an initial investment in the SPAC prior to the IPO by purchasing founder shares, which are not publicly available.  The sponsor and other investors

can also purchase warrants that allow them to buy more shares in the SPAC in the future at a specified price.  Such funds may be used help cover the SPAC's operating expenses and a portion of the IPO underwriting fee.

SPACs will then raise additional funds through an IPO.  In most cases, shares are listed at $10 per share.  Proceeds from the IPO are then held in a trust account.  Such proceeds can only be used in limited circumstances.  SPACs can use such funds to complete an initial business combination.  Alternatively, in the event that a SPAC fails to complete a business combination within the time specified by its organizational documents, the SPAC must liquidate and return the public shareholders' initial investment plus their pro rata share of interest earned on the trust account by returning the money in the trust account to those public shareholders.  *See, e.g.*, Am. Compl. ¶¶ 6, 15.

### C.    Pioneer's Formation, Its Articles and the Sponsor Agreement

Pioneer was formed on October 21, 2020, as a Cayman exempted company.  *Id.* ¶ 35. Pioneer's capital structure consisted of two classes of ordinary shares: (1) Class A shares, which became publicly available through the IPO; and (2) Class B shares, also known as founder shares, which were available to initial investors prior to the IPO.  *Id.* ¶ 37.  On January 12, 2021, Pioneer consummated its IPO of 40,250,000 Class A shares at $10.00 per share.  *Id.* ¶¶ 4, 42.  The net proceeds from the IPO were held in a trust account (the "Trust Account").  *See* Ex. 2 to the Decl. of K. Jackson, Am. and Restated Mem. and Articles of Ass'n of Pioneer ("Articles") § 1.1.[1]

Consistent with most SPACs, if Pioneer failed to consummate an initial business combination within 24 months of its IPO (specifically, by January 12, 2023), Pioneer would be

---

[1]  "Courts may take judicial notice of filings with the SEC when considering a motion to dismiss."  *Finocchiaro v. NQ Mobile, Inc.*, No. 15-cv-6385 (NRB), 2018 WL 1217728, at *1 n.1 (S.D.N.Y. Feb. 27, 2018).

required to redeem 100 percent of the Class A shares, such that each Class A shareholder would receive their initial $10 per share investment, plus accrued interest. *See* Articles § 49.7(b) ("[T]he Company shall . . . redeem the Public Shares, at a per-Share price, payable in cash, equal to the aggregate amount then on deposit in the Trust Account . . . divided by the number of then Public Shares in issue"); *see also* Am. Compl. ¶ 45. Importantly, Pioneer's Articles provide that upon such a redemption, Class A shareholders' rights would be completely extinguished, and they would not be entitled to any distributions in a liquidation beyond the redemption. Articles § 49.7(b) (The "redemption will completely extinguish [Class A shareholders'] rights . . . including the right to receive further liquidation distributions, if any.") The letter agreement among Pioneer, Sponsor and the individual Defendants (the "Sponsor Agreement") contains substantially similar language. *See* Ex. 1 to the Decl. of K. Jackson, *id.* § 4(a).

### D. Proposed Merger with Acorn, Its Termination and Plaintiff's Suits

On May 27, 2021, after a months'-long process overseen by Pioneer's board of directors, Pioneer announced that it had entered into a business combination agreement (the "Business Combination Agreement") with Acorns Grow Incorporated ("Acorns"), a financial technology and financial services company. Am. Compl. ¶ 9; *see generally*, Ex. 6. to Decl. of K. Jackson, Business Combination Agreement. As relevant here, the Business Combination Agreement included a termination date of January 15, 2022, and permitted either party to terminate the agreement if a deal was not consummated on or prior to that date. Business Combination Agreement § 8.1(d).

Pioneer's efforts to consummate the transaction with Acorns eventually broke down at the end of 2021 as the parties neared the termination date. *See* Am. Compl. ¶¶ 55, 57; *see also* Sponsor Agreement § 8.1(d). The parties subsequently entered into a termination fee agreement (the "Termination Fee Agreement"), which Pioneer announced on January 3, 2022. Am. Compl. ¶ 62. In particular, Acorns agreed that, if the transaction between Pioneer and Acorns was not

consummated by January 14, 2022, either party would have a right to terminate the Business Combination Agreement.  Ex. 7. to Decl. of K. Jackson, Termination Fee Agreement § 2.1.  Upon such termination, Acorns would be required to pay Pioneer the Termination Fee, which consisted of $17.5 million up front and an additional $15 million in the event that the SPAC was unable to complete another business combination by December 15, 2022; in exchange, Pioneer agreed to release all claims against Acorns.  Am. Compl. ¶¶ 12, 63-65.

Acorns subsequently exercised its right to terminate the Business Combination Agreement under the Termination Fee Agreement.  *See* Am. Compl. ¶¶ 57, 68.  Shortly thereafter, Pioneer disclosed that the Termination Fee would be held outside of the Trust Account.  *Id.* ¶¶ 12, 73.  On March 30, 2022, Pioneer further disclosed that "any funds remaining . . . from payments under the Termination Fee Agreement . . . [would] not be part of liquidating distributions with respect to the [Class A shares]."  *Id.* ¶ 69 (emphasis omitted).

In the interim, the SPAC market had begun to "sour[]."  *Id.* ¶ 71.  On December 15, 2022, Pioneer announced that it would not be able to consummate a potential business combination, would redeem all of its outstanding Class A shares and would return a pro rata portion of the funds held in the Trust Account to the class A shareholders.  *Id.* ¶¶ 72, 74.  That same day, Plaintiff purchased 66,099 Class A shares of Pioneer.  Ex. 3 to the Decl. of K. Jackson, Schedule 13D.  Plaintiff then purchased 1,085,653 Class A shares on December 16, 2022; 76,304 Class A shares on December 19, 2022; and 1,286,485 Class A shares on December 20, 2022.  *Id.*[2]

On December 30, 2022, Plaintiff filed this lawsuit on behalf of itself and a putative class of Pioneer's Class A shareholders.  Two weeks later, on January 12, 2023, Plaintiff filed a winding

---

[2]   "Courts may take judicial notice of filings with the SEC when considering a motion to dismiss."  *Finocchiaro v. NQ Mobile, Inc.*, No. 15-cv-6385 (NRB), 2018 WL 1217728, at *1 n.1 (S.D.N.Y. Feb. 27, 2018).

up petition (the "Petition") in the Cayman Islands seeking the appointment of two joint official liquidators to conduct Pioneer's winding up under the supervision of the Grand Court of the Cayman Islands (the "Cayman Court").  *See* Ex. 4 to the Decl. of K. Jackson, Pet. ¶ 36.  Plaintiff argued in the Petition that independent liquidators must be appointed because, among other reasons, Pioneer's leadership had supposedly breached the Articles, the Sponsor Agreement and their fiduciary duties under Cayman law by "diverting" the Termination Fee to themselves, as holders of the Class B shares.  *Id.* ¶ 30, 33.  If the Petition is granted, the liquidators will take control of Pioneer, preventing Pioneer's board of directors from distributing any remaining funds, and would conduct the winding up of Pioneer.  *See* Ex. 5 to the Decl. of K. Jackson, Affidavit of Alexander Gray Henderson, KC ("A. Henderson Decl.") ¶ 16.  Pioneer has told Plaintiff that it does not intend to contest the Petition's requested appointment of independent court-supervised liquidators on the basis of "loss of substratum" (*i.e.*, the purpose of the SPAC, acquiring an operating company, can no longer be fulfilled).

In January 2023, Pioneer redeemed the assets held in its Trust Account and distributed such funds to the Class A stockholders, including Plaintiff, pursuant to the Articles.  Am. Compl. ¶ 78.

In the operative complaint here in New York, Plaintiff alleges that Defendants "have no legal, equitable, fiduciary, contractual or other basis to misappropriate the Termination Fee."  *Id.* ¶ 79.  It brings claims for breach of fiduciary duty under Cayman law, breach of the Sponsor Agreement and unjust enrichment, and seeks an order requiring Defendants to distribute the Termination Fee to itself and the other Class A shareholders.  *Id.* ¶¶ 93-114.

## ARGUMENT

The Amended Complaint should be dismissed in its entirety, or alternatively, the present case should be stayed, on *forum non conveniens* or international comity and abstention grounds. The Cayman Islands, where Plaintiff has already instituted a separate proceeding concerning the

same set of facts and which could ultimately provide the same basic relief, is the more appropriate forum for Plaintiff's claims, which concern the winding up of a Cayman company. Independently, the Court should also dismiss Plaintiff's Amended Complaint for failure to state a claim.

I.    **THIS COURT SHOULD DISMISS OR STAY PLAINTIFF'S CASE UNDER THE DOCTRINES OF *FORUM NON CONVENIENS*, INTERNATIONAL COMITY OR ABSTENTION.**

The Court should dismiss, or at the very least stay this action, on *forum non conveniens* or international comity or abstention grounds. The Cayman Islands is the natural and most convenient forum for this dispute as it involves a Cayman company and issues arising under Cayman law. Importantly, dismissing or staying this action would be consistent with Plaintiff's decision to initiate a proceeding in the Cayman Islands that is capable of fully resolving each of the claims Plaintiff has asserted in this action.

A.    **The Court Should Dismiss or Stay This Case on *Forum Non Conveniens* Grounds.**

Dismissal or a stay on *forum non conveniens* grounds is appropriate for three main reasons. *First*, Plaintiff's choice of a New York forum should be given no deference, because Plaintiff has chosen *two different forums* for its claims. Here, not only does New York lack the indicia of a convenient forum, but Plaintiff's commencement of overlapping, competing proceedings is indicative of forum shopping. *Second*, the Cayman Islands is a more than adequate forum to decide issues of Cayman law. Pioneer is amenable to suit in the Cayman Islands, Plaintiff's claims can be finally resolved in that forum, and this litigation indisputably concerns how the assets of a Cayman company should be disbursed to current and/or former shareholders under the company's organizational documents and Cayman law. *Third*, the private and public interest factors considered by courts in assessing whether dismissal under *forum non conveniens* is appropriate weigh in favor of the Cayman Islands as the proper forum for this dispute.

7

*Forum non conveniens* is a flexible doctrine that empowers district courts, in the interest of justice, to dismiss cases at their discretion and ascertain the proper forum based on how "each case turns on its facts." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 249 (1981). The *forum non conveniens* analysis is a three-step process. *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 73 (2d Cir. 2001). *First*, the Court determines the appropriate level of deference to accord to Plaintiff's choice of forum. *Id.* *Second*, the Court assesses the adequacy of the alternate forum proposed by Defendants to adjudicate the parties' dispute. *Id.* *Third*, the Court engages in a balancing of "the private and public interest factors implicated in the choice of forum." *Id.*

  1.  The Court should afford no deference to Plaintiff's choice of a New York forum.

Review of a *forum non conveniens* motion generally begins with a "strong presumption in favor of the plaintiff's choice of forum." *Piper Aircraft*, 454 U.S. at 255. However, the more a defendant is able to demonstrate "that convenience would be better served by litigating in another country's courts" and that "the plaintiff's choice of a U.S. forum was motivated by forum-shopping reasons . . . , the easier it becomes for the defendant to succeed on *forum non conveniens* motion." *Iragorri*, 274 F.3d at 72.

In assessing the validity of a plaintiff's preferred forum, district courts typically begin their analysis by considering the following convenience factors: (1) "the convenience of the plaintiff's residence in relation to the chosen forum," (2) "the availability of witnesses or evidence to the forum district," (3) "the defendant's amenability to suit in the forum district," (4) "the availability of appropriate legal assistance," and (5) "other reasons relating to convenience or expense." *Iragorri*, 274 F.3d at 72. District courts then consider if there is evidence to suggest a plaintiff is forum shopping, and "[t]he more it appears that the plaintiff's choice of a U.S. forum was motivated by forum-shopping reasons . . . , the less deference the plaintiff's choice commands."

*Id.* Facts evincing forum shopping include: (1) "attempts to win a tactical advantage resulting from local laws that favor the plaintiff's case," (2) "the habitual generosity of juries in the United States or in the forum district," (3) "the plaintiff's popularity or the defendant's unpopularity in the region," or (4) "the inconvenience and expense to the defendant resulting from litigation in that forum." *Id.*

Furthermore, where, as here, a plaintiff invests in a foreign entity, courts do not accord much, if any, deference to a plaintiff's choice of a U.S. forum. *See Aenergy, S.A. v. Republic of Angola*, No. 20 CIV. 3569 (JPC), 2021 WL 1998725, at *9 (S.D.N.Y. May 19, 2021), *aff'd,* 31 F.4th 119 (2d Cir. 2022), *cert. denied,* 143 S. Ct. 576 (2023) ("The Court also affords Plaintiffs' choice of forum less deference because Plaintiffs chose to do business in [a foreign country]. . . . Courts routinely have little sympathy for plaintiffs—even American plaintiffs—who conduct business in foreign lands and later try to cry foul here."); *see also BFI Grp. Divino Corp. v. JSC Russian Aluminum*, 298 F. App'x 87, 91 (2d Cir. 2008) (weighing the plaintiff's "U.S. citizenship against the fact that [plaintiff] had chosen to invest in Nigeria" and concluding that "the district court did not abuse its discretion in determining that [the plaintiff's] choice of forum was not entitled to significant deference").

Plaintiff's choice of a New York forum should not be given any deference. The convenience factors weigh against a finding that New York is a convenient forum; and there is evidence that Plaintiff is forum shopping. In any event, the dismissal of the New York action would still result in "deference" to Plaintiff's choice of forum because the remaining forum, the Cayman Islands, was also chosen by Plaintiff.

As to the first convenience factor, Plaintiff is a resident of Delaware and California, not New York (Am. Compl. ¶ 19), and has pled no connections between itself and New York. *See*

9

*Iragorri*, 274 F.3d at 71.  With respect to the second factor, Defendants are willing to travel to the Cayman Islands for any testimony as would assist the independent liquidators or the Cayman Court.  *See id.*  For the third factor, Defendants are amenable to suit in the Cayman Islands. *See Mayer v. Time, Inc.*, No. 17-cv-5613 (DLC), 2018 WL 1738322, at *4 (S.D.N.Y. Apr. 9, 2018). Concerning the fourth factor, as a result of the Petition that Plaintiff filed in the Cayman Islands, both parties have already retained Cayman counsel.  *See id.*  And, with respect to the fifth factor, Plaintiff's initiation of two actions in two different jurisdictions is inconvenient and burdensome because Defendants must try to coordinate their defenses in two separate, but overlapping actions, and because they must expend significant time and money in connection with the same.

Moreover, there are a number of facts that suggest Plaintiff is motivated by forum shopping motives in here.  First, by initiating actions in New York and the Cayman Islands, both of which can provide virtually identical relief, Plaintiff is improperly attempting to seek a tactical advantage by gaining access to more favorable law and class action procedures not available to it in the Cayman Islands.  As described more fully below, Plaintiff alleges a broad fiduciary duty claim that is more in line with the scope of fiduciary duties owed under U.S. rather than Cayman law. *See, e.g.*, Am. Compl. ¶ 102.  Under Cayman law, which applies to Plaintiff's claim, directors generally owe fiduciary duties to the company, not to its shareholders.  A. Henderson Decl. ¶ 25. Also, under Cayman law, the losing party is usually responsible for a successful party's attorney fees, which is generally not the case in the U.S.  *Id.* ¶ 27.  Additionally, Plaintiff may be hoping to use a decision in this forum to influence the decisionmakers in the Cayman proceeding.  Thus, it seems all too likely that Plaintiff is hoping a New York federal court may have a broader interpretation of the fiduciary duties, if any, owed under Cayman law and that it can take advantage of the more generous class action procedures here.  *See In re Herald*, 540 F. App'x 19, 27 (2d Cir.

10

2013) (affirming the district court's determination that the plaintiff's "choice of forum was motivated at least in part by a desire to take advantage of U.S. class action procedures and rules governing attorney's fees"); *see also Aenergy*, 31 F.4th at 129 (concluding that the district court correctly determined that the plaintiff was forum shopping "while pursuing similar claims abroad").

Additionally, Plaintiff has demanded a jury trial, and presumably seeks to take advantage of the "generosity of juries in the United States." *Iragorri*, 274 F.3d at 71.  By contrast, should Plaintiff's Petition be granted, Plaintiff's claims would likely be resolved by a judge from the Cayman Court through the winding up process to follow.  A. Henderson Decl. ¶¶ 14-16, 20.  As to the last forum-shopping factor, as explained above, it is both inconvenient and expensive for Defendants to participate in two simultaneously proceeding actions, especially since the ongoing Cayman proceeding can resolve all of Plaintiff's claims concerning the final distribution of the Cayman company's funds.  *See In re Herald*, 540 F. App'x at 29 (affirming the district court determination that the cost and expediency weighed in favor of dismissal as there were already two ongoing proceedings better situated for the parties' convenience).[3]

Given that the convenience and forum shopping factors weigh against New York being an appropriate forum, as well as the fact that Plaintiff knowingly invested in a foreign entity, the Court should accord no deference to Plaintiff's preferred forum.

> 2. The Cayman Islands is an adequate alternative forum.

The second step in the *forum non conveniens* analysis—analyzing the adequacy of the alternative forum—also supports dismissal in favor of the Cayman proceeding.  "An alternative

---

[3]   The third factor concerning the parties' popularity in this forum is not applicable; neither entity appears to have any discernible level of popularity in New York.

forum is adequate if the defendants are amenable to service of process there, and if it permits litigation of the subject matter of the dispute." *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 75 (2d Cir. 2003) (citing *Piper Aircraft*, 454 U.S. at 254 n.22).   While the defendant must persuade the court as to the adequacy of the alternative forum, Plaintiff "bears the initial burden of producing evidence of corruption, delay, or lack of due process in the foreign forum." *RIGroup LLC v. Trefonisco Mgmt. Ltd.*, 949 F.Supp.2d 546, 554 (S.D.N.Y. 2013), *aff'd*, 559 F. App'x 58 (2d Cir. 2014) (quotation marks and citations omitted).   "Conclusory submissions, bare denunciations, and sweeping generalizations about the alternative forum's legal system do not satisfy the plaintiff's burden on this issue." *Id.* (quotation marks and citations omitted).

There can be no dispute that the Cayman Islands is an adequate forum to hear all of the claims Plaintiff has asserted in this action, and Pioneer is amenable to service of process there. *In re Herald*, 540 F. App'x at 27 (determining that foreign forums were adequate because the plaintiff and defendant entered an appearance before the foreign court and the foreign court recognized analogous legal claims brought by the parties); *Evolution Online Sys., Inc. v. Koninklijke Nederland N.V.*, 41 F. Supp. 2d 447, 451 (S.D.N.Y. 1999) (Rakoff, J.).   Further evincing the appropriateness of the Cayman Islands as an adequate forum is the fact that Plaintiff itself initiated the Cayman proceeding, which will result in the application of Cayman law. *See In re Herald*, 540 F. App'x at 27 (determining that Ireland and Luxembourg were adequate alternative forums for a suit between investors and an investment fund since the plaintiffs had already brought similar suits in those countries); *Evolution Online*, 41 F. Supp. 2d at 451 (determining that the defendant's burden to show Dutch law was adequate was satisfied by plaintiff's acceptance of Dutch law in draft agreements of the disputed contract).   Hence, by Plaintiff's own admission, the Cayman Islands is an adequate alternative forum.

Plaintiff is unlikely to demonstrate that the Cayman Islands is an inadequate forum due to corruption, delay or lack of due process.  There is no evidence that Plaintiff will be deprived of due process or subjected to undue delay if only the Cayman proceeding, and not this action, were to move forward.  There has been no indication that the Cayman Court will not rule on the Petition in a timely manner.  Moreover, should Plaintiff's Petition be granted, which seems likely since Defendants are not contesting it on loss of substratum grounds, the winding up process that would then follow will give Plaintiff (and indeed, all interested potential stakeholders) the opportunity to be heard on all of the issues presented in this case.

The winding up process will also afford Plaintiff adequate due process for its claims.  The liquidators would likely determine the principal issue in this case—*i.e.*, who should receive Pioneer's remaining assets, including the Termination Fee.  A. Henderson Decl. ¶ 15-16.  Insofar as any party, other than Pioneer, did not agree with the liquidators' determination, the liquidators would likely submit an application to the Cayman Court, asking the Cayman Court to resolve the question of who is entitled to the Termination Fee.  *Id.*  In doing so, the Cayman Court could consider the Sponsor Agreement, the Articles or any other applicable governing document.  *Id.*  In the unlikely event the liquidators decided not to make such an application, a shareholder or creditor could, on its own, bring an application to the Cayman Court to pursue the same issue.  *Id.*  Both the Class A and Class B shareholders would have an opportunity to be heard on any such application to the Cayman Court.  *Id.*

The liquidators could also resolve Plaintiff's breach of fiduciary duty and unjust enrichment claims.  Under Cayman Islands law, once liquidators are appointed, they can bring any claims available to Pioneer under Cayman or any other applicable law.  *Id.* ¶ 17. The adequacy of the Cayman Islands is confirmed by the fact that the Cayman proceeding has the potential to

significantly overlap with this litigation and lead to inconsistent outcomes if both continue.  *Id.* ¶¶ 20, 29.1.

          3.    The public and private interests weigh in favor of the Cayman proceeding.

The third step in the *forum non conveniens* analysis, the balancing of the private and public interests of the parties, also supports dismissal of this action in favor of the Cayman proceeding. "In considering these factors, the court is necessarily engaged in a comparison between the hardships defendant would suffer through the retention of jurisdiction and the hardships the plaintiff would suffer as the result of dismissal and the obligation to bring suit in another country." *Iragorri*, 274 F.3d at 74.

In assessing the private interest factors, district courts consider the ease of access to sources of proof, availability of witnesses, enforceability of a judgment if one is obtained, and all other practical problems that make trial of a case easy, expeditious, and inexpensive.  *Allstate Life Ins. Co. v. Linter Grp. Ltd.,* 994 F.2d 996, 1002 (2d Cir. 1993).  "These factors are considered in light of the particular issues likely to be tried, including whether the plaintiff's damages are disputed and where the evidence of damages is likely to be more accessible."  *Mayer*, *Inc.*, 2018 WL 1738322, at *3.

Concerning the public interest factors, district courts consider the importance of having local courts adjudicate local disputes, avoiding the difficulty of applying foreign law, limiting court congestion by permitting the litigation to be resolved at its origin, and preventing the burden of jury duty on communities with nominal relation to the dispute.  *Iragorri*, 274 F.3d at 74. Unsurprisingly, the application of foreign law weighs in favor of the suit being adjudicated in the foreign jurisdiction. *See Evolution Online*, 41 F. Supp. 2d at 452; *see also Aritomo v. Rhee*, No. 21-cv-4875 (RA), 2022 WL 17156554, at *12 (S.D.N.Y. Nov. 22, 2022).

14

Plaintiff cannot dispute that the private interest factors weigh in favor of the Cayman Islands. Any judgment issued in the Cayman proceeding would be enforceable: through the liquidation initiated by Plaintiff's Petition, the Cayman Court would likely direct the liquidators as to how the Termination Fee should be distributed to current and/or former shareholders of Pioneer, a Cayman company. *See* A. Henderson Decl. ¶¶ 14-16, 20. Next, and as explained above, litigating in both forums is a strategic maneuver to burden Defendants with expensive legal costs, as well as a tactical attempt to secure a favorable judgment to be used in the winding up proceeding, which could delay final resolution of the dispute. *See In re Herald*, 540 F. App'x at 28 (finding U.S.-based class action was not more efficient than "the separate adjudication of these cases in Ireland and Luxembourg, where other suits are already proceeding against many of the same defendants").

Concerning the public interest factors, there is a verifiable interest in having the Cayman Court adjudicate this dispute. The dispute concerns a company incorporated in the Cayman Islands that is subject to Cayman law. *Id.* (concluding that the public interest factors weighed in favor of dismissal because the foreign forums, "as evidenced in part by the related proceedings in progress there, have an undeniably significant interest in policing conduct within their borders by Defendant . . . regulated under their laws"); *Aritomo*, 2022 WL 17156554, at *12 (determining that Austria had an interest in deciding a matter related to an Austrian company). Lastly, allowing this case to proceed solely in the Cayman Islands avoids wasting judicial resources and the potential for inconsistent results between the two proceedings. *See Allstate Life Ins. Co.*, 994 F.2d at 1002

(dismissing suit on *forum non conveniens* grounds to allow for all claims to be litigated under one forum to avoid "a waste of judicial resources" and a "risk of inconsistent judgments").[4]

Given the convenience of litigating in the Cayman Islands and the Cayman Islands' interest in resolving issues involving Cayman companies, the public and private interests weigh in favor of dismissal. Accordingly, for these reasons, the Court should grant Defendants' motion to dismiss on *forum non conveniens* grounds, or, at a minimum, the Court should stay this action based on the same.

**B.     The Court Should Dismiss Plaintiff's Amended Complaint or Stay the Case Pursuant to Principles of International Comity and Abstention.**

Should the Court decline to dismiss or stay this action on the basis of *forum non conveniens*, the Court can alternatively dismiss or stay this action pursuant to international comity. Courts recognize abstention based on international comity principles, such as according respect for litigation in the courts of a foreign sovereign, fairness to the litigating parties and ensuring judicial efficiency. *See Royal & Sun All. Ins. Co. of Canada v. Century Int'l Arms, Inc.*, 466 F.3d 88, 92 (2d Cir. 2006). To abstain from jurisdiction on grounds of international comity, a court must find that a case presents "exceptional circumstances." *Id.* at 93.

In considering whether there exist the "exceptional circumstances" necessary to abstain from jurisdiction, courts consider the following factors: (1) similarity of the parties and issues; (2) interests of judicial economy; (3) order in which the actions were filed; (4) adequacy of the alternative forum; and (5) the convenience and potential prejudice to either party. *See id.; see also Kingstown Cap. Mgmt., L.P. v. Vitek,* No. 19-CV-3170 (DLC), 2020 WL 5350492, at *4 (S.D.N.Y.

---

[4]     Of course, there is no hardship to Plaintiff in filing another suit in another country. Plaintiff has already commenced an action in the Cayman Islands that could resolve Plaintiff's claims here. *See Pollux Holding,* 329 F.3d at 75.

Sept. 4, 2020), *aff'd*, No. 20-3406, 2022 WL 3970920 (2d Cir. Sept. 1, 2022).  Additionally, regarding judicial economy, the Second Circuit has given heightened deference to foreign bankruptcy proceedings in the interest of judicial economy by requiring dismissal of domestic parallel litigation when the bankruptcy proceeding is pending in a foreign court with proper jurisdiction.  *See JP Morgan Chase Bank v. Altos Hornos de Mexico*, *S.A. de C.V.*, 412 F.3d 418, 424 (2d Cir. 2005); *Allstate Life Ins. Co.*, 994 F.2d at 999; *Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.,* 825 F.2d 709, 715 (2d Cir. 1987).

*First*, the Petition and the New York suit allege identical facts, and both involve Pioneer. *See Kingstow*n, 2020 WL 5350492, at *4 (determining that the foreign and domestic proceedings were parallel proceedings because they both "involve[d] the same core parties" and "concern[ed] the same overarching theory of wrongdoing")*.

*Second*, analogous to a domestic bankruptcy proceeding, judicial economy is obtained by allowing Plaintiff's claims to proceed in the Cayman winding up proceeding, eliminating the risk of inconsistent judgments.  *See JP Morgan*, 412 F.3d at 424 (quotation mark and citations omitted) (determining that American courts regularly defer to a foreign bankruptcy proceeding "[s]ince [t]he equitable and orderly distribution of a debtor's property requires assembling all claims against the limited assets in a single proceeding"); *Victrix*, 825 F.2d at 715 (concluding that deference to a Swedish bankruptcy court was "appropriate so long as the attached funds are subjected to the jurisdiction of that court").

*Third*, although the New York proceeding was filed first, Plaintiff commenced both proceedings, eliminating any first-in-time preference for this action.  Plaintiff's intentional resort to the judicial relief offered in the Cayman Islands confirms that it is an adequate alternative forum. *See Kingstown*, 2020 WL 5350492, at *9 (determining that Luxembourg was an adequate

alternative forum as "[the plaintiff] itself initiated litigation in the Luxembourg courts in 2015 to obtain recovery for essentially the same conduct described in the [complaint]").

*Fourth*, Plaintiff would not be prejudiced if dismissal or a stay were granted given its willingness to litigate in the Cayman Islands, whereas Defendants would be inconvenienced and prejudiced by litigating the same issues in both places.  *See supra* at II.A.1; *see also Kingstown*, at *7 (concluding that the defendant would be "seriously prejudiced by being required to litigate in New York" whereas plaintiff has not demonstrated how it would be "prejudiced from proceeding in the forum it chose . . . .").

The Court should conclude that the Cayman Islands is the natural forum to resolve a dispute regarding a Cayman company governed by Cayman law and dismiss this action, or, alternatively, stay this case pending resolution of the Cayman proceeding.

## II.   THE COURT SHOULD DISMISS THE AMENDED COMPLAINT PURSUANT TO RULE 12(b)(6) BECAUSE PLAINTIFF FAILS TO ADEQUATELY PLEAD ANY VIABLE CLAIMS.

Defendants move, in the alternative, pursuant to Rule 12(b)(6), to dismiss the Amended Complaint for failure to state a claim.  A complaint must be dismissed under Rule 12(b)(6) if the plaintiff cannot adequately allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  While the Court accepts all well-pleaded allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Iqbal*, 556 U.S. at 678.  A claim will also be dismissed if Plaintiff recites only legal conclusions or mere elements of a cause of action; the complaint must allege sufficient facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 663.

The Court should dismiss each of Plaintiff's claims pursuant to Rule 12(b)(6).  Plaintiff's claim for breach of fiduciary duty under Cayman law fails because it does not have standing to

assert such a claim on behalf of Pioneer shareholders.  Next, Plaintiff's claim for breach of contract

fails because it is not a party to, nor a third-party beneficiary of, the Sponsor Agreement.  The

Sponsor Agreement contains no language indicating that Plaintiff, or any other Class A

shareholders, was intended to be a third-party beneficiary.  Finally, Plaintiff's claim for unjust

enrichment fails because no Defendant has been unjustly enriched and Plaintiff's shareholder

rights are governed by the Articles.  Furthermore, Plaintiff's request for damages for its breach of

contract claim overlap with its unjust enrichment claim, and there is no dispute that equitable

remedies are not available for legal claims.

### A.    Plaintiff lacks standing to bring a breach of fiduciary duty claim under Cayman law.

Under Cayman law, directors of Cayman Island companies generally owe fiduciary duties

of loyalty, honesty and good faith to the company, *not to shareholders*.  A. Henderson Decl. ¶¶ 25;

*see also In re CIL, Ltd.*, No. 18-CV-2226-JSR, 2018 WL 2383102, at *2 (S.D.N.Y. May 4, 2018)

(finding that "under Cayman Island law, directors and majority owners generally have a fiduciary

duty only to the corporation itself, not to any individual shareholders").  Plaintiff therefore does

not have standing to bring a direct breach of fiduciary duty claim.  A. Henderson Decl. ¶ 25.

Rather, Pioneer is the only entity that could bring such a claim.  *Id.*[5]

Plaintiff, likewise, cannot prevail on a derivative breach of fiduciary duty claim.  To

successfully bring a derivative claim under Cayman law, a Plaintiff must establish, among other

things, that it is a shareholder and that the alleged wrongdoers are still in control of the company,

such that those individuals would not cause the company to bring such a claim.  *Id.* ¶¶ 25, 27.

---

[5]    In very rare circumstances, directors can conduct themselves in such a way to allow for a direct
breach of fiduciary duty claim.  Plaintiff has not alleged any such circumstances here, hence
the exceptions do not apply here.  A. Henderson Decl. ¶ 24 n.12.

Since upon the redemption Plaintiff no longer owns any Class A shares (*see* Articles § 49.7(b); Am. Compl. ¶ 78), it lacks standing to bring a derivative breach of fiduciary duty claim. A. Henderson Decl. ¶ 24.  If Plaintiff's Petition is granted, liquidators would be appointed and they—not the individual Defendants—would control the company.  *Id.* ¶¶ 24-25.  Then, only the liquidators (under the supervision of the Cayman Court) would be empowered to bring such a claim on behalf of Pioneer.  *Id.* ¶¶ 16, 24-25.  These events would independently deprive Plaintiff of standing to assert a derivative claim.

> **B.**   **Plaintiff's breach of contract claim should be dismissed because Plaintiff is not a third-party beneficiary to the Sponsor Agreement and cannot claim entitlement to the Termination Fee.**

Plaintiff alleges that a distribution of the Termination Fee to Defendants would constitute a breach of the Sponsor Agreement.  It is undisputed that Plaintiff is not a party to that contract. Plaintiff alleges instead that it is a third-party beneficiary.  *See* Am. Compl. ¶ 95.  Thus, to prevail on its claim, Plaintiff must meet the high burden of establishing that it is an intended third-party beneficiary of the Sponsor Agreement.

To maintain an action as a third-party beneficiary under New York law, which governs the Sponsor Agreement, a party must show:  "(1) the existence of a valid and binding contract between other parties; (2) that the contract was intended for [their] benefit; and (3) that the benefit to them is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate them if the benefit is lost."  *Burns Jackson Miller Summit & Spitzer v. Lindner*, 59 N.Y.2d 314, 336 (1983) (citation omitted).  Absent *express* language indicating that a particular party is a third-party beneficiary, courts consider a third party who benefits from a contract to be only an incidental beneficiary; such parties have no rights to enforce the contract. *Dormitory Auth. v. Samson Constr. Co.*, 30 N.Y.3d 704, 710 (2018) (citing *Port Chester Elec. Const. Co. v. Atlas*, 40 N.Y.2d 652, 655 (1976)) ("[A]n intent to benefit the third party must be

shown, and, absent such intent, the third party is merely an incidental beneficiary with no right to enforce the particular contracts."); *see also Consol. Edison, Inc. v. Ne. Utilities*, 426 F.3d 524, 528 (2d Cir. 2005) (quotation marks and citations omitted) ("To create a third party right to enforce a contract, the language of the contract must *clearly* evidence[ ] an intent to permit enforcement by the third party[.]").

Here, there is no indication that the Sponsor Agreement was intended for Plaintiff's or the other Class A shareholders' benefit.  The Sponsor Agreement is a contract among Pioneer, Sponsor and each of Pioneer's officers and directors.  There is no language in the Sponsor Agreement— and Plaintiff has cited to none—that states that the Sponsor Agreement was for Plaintiff's, or any other Class A shareholder's, benefit.

Plaintiff claims that it is a third-party beneficiary to the Sponsor Agreement because the Sponsor Agreement "was executed in connection with, and enabled, the IPO," "included a range of provisions protecting stockholders," and "d[id] not disclaim third-party beneficiaries." Am. Compl. ¶¶ 95-98.  The Court should reject such arguments under settled law.  *See Old Crompond Rd., LLC v. Cnty. of Westchester*, 162 N.Y.S.3d 71, 74 (2022) (concluding that plaintiff was not a third-party beneficiary in part because "the contract did not contain any language evincing the parties' intent to authorize the plaintiff to enforce any obligations thereunder."); *LaSalle Nat. Bank v. Ernst & Young LLP*, 729 N.Y.S.2d 671, 677 (2001) (determining that plaintiff was not a third-party beneficiary as "[t]he engagement letter formalizing the contractual relationship ma[de] no reference to any third party"); *see also Consol. Edison*, 426 F.3d at 528 (concluding that plaintiff did not have a third-party right to compel completion of a merger because the third-party right included in the contract was limited to an ability to collect a shareholder premium).  There is no statement in the Sponsor Agreement indicating that Class A shareholders

were third-party beneficiaries.  Even if the Court were to conclude that Plaintiff financially benefitted from the Sponsor Agreement here, which is disputed, the provision of some benefits to a third party "does not in itself establish enforcement rights in that third party." *Dormitory Auth.*, 30 N.Y.3d 704 at 711.

Moreover, the actual language of the Sponsor Agreement makes clear that Class A shareholders were not intended as third-party beneficiaries.  The Sponsor Agreement states that upon redemption, shareholders would be entitled to a pro-rata share of the Trust Account, nothing more.  Articles § 4(b) (upon redemption, Class A shareholders were entitled to "a per-share price . . . equal to the aggregate amount then on deposit in the Trust Account . . . divided by the number of then Public Shares in issue, which redemption will completely extinguish [Class A shareholders'] rights as Members (including the right to receive further liquidation distributions, if any)").  The Sponsor Agreement therefore cannot be said to both prohibit  Class A shareholders' entitlement to any funds beyond the redemption, and at the same time, also be said to grant additional, broader rights to Class A shareholders as third-party beneficiaries.

The Articles, the contract governing Plaintiff's rights and to which it is a party, further confirms that Defendants did not intend to make the Class A shareholders third-party beneficiaries to the Sponsor Agreement. *See Greg Beeche, Logistics, LLC v. Cross Country Constr.*, *LLC*, 210 A.D.3d 1158, 1161 (2022) (noting that, in addition to the agreement, courts can consider "surrounding circumstances" in making a third-party beneficiary determination).  It contains the same language as the Sponsor Agreement and expressly states that Class A shareholders would receive *only* their share of Trust Account funds, *i.e.*, they have no entitlement to any additional funds, including the Termination Fee. *See* Articles § 49.7.

**C.      Plaintiff's unjust enrichment claim should be dismissed because none of the Defendants have been enriched, Plaintiff has no contractual right to additional funds, and its claim overlaps with its breach of contract claim.**

Under New York law,[6] unjust enrichment claims are viewed as quasi-contract claims "and contemplate[] an obligation imposed by equity to prevent injustice, in the absence of an actual agreement between the parties." *Georgia Malone & Co. v. Rieder*, 19 N.Y.3d 511, 516 (2012) (quotation marks and citation omitted).  An unjust enrichment claim "is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Corsello v. Verizon New York, Inc.*, 18 N.Y.3d 777, 790 (2012).  However, "a party may not recover in . . . unjust enrichment where the parties have entered into a contract that governs the subject matter." *See Pappas v. Tzolis*, 20 N.Y.3d 228, 234 (2012).  To plead unjust enrichment, "the plaintiff must allege that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered." *Corsello*, 18 N.Y.3d at 790 (quotation marks and citation omitted).

Plaintiff has not adequately pled any of the requisite factors for an unjust enrichment claim because Plaintiff cannot allege that any Defendant has been unjustly enriched prior to any distribution of the Termination Fee.  *See ASG & C, Inc. v. Arch Specialty Ins. Co.*, No. 21-1767-CV, 2022 WL 839805, at *1 (2d Cir. Mar. 22, 2022) ("Moreover, [Plaintiff] nowhere alleges that

---

6      Under New York choice-of-law rules, "the first step in any case presenting a potential choice of law issue is to determine whether there is an actual conflict between the laws of the jurisdictions involved." *GlobalNet Financial.Com, Inc. v. Frank Crystal & Co.*, 449 F.3d 377, 382 (2d Cir. 2006) (quoting *In re Allstate Ins. Co. (Stolarz)*, 81 N.Y.2d 219, 223 (1993)).  Here, there is no substantive conflict between New York and Cayman law.  S*ee* A. Henderson Decl. ¶ 28; *see also Corsello*, 18 N.Y.3d at 790.  Thus, "the [C]ourt may simply apply New York law." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 672 F.3d 155, 157 (2d Cir. 2012); *see also S'holder Representative Servs. LLC v. Sandoz Inc.*, 9 N.Y.S.3d 595 (N.Y. Sup. 2015).

it actually paid the invoice.   Thus, [Defendant] was not enriched at all, much less unjustly.")
(emphasis omitted).

Plaintiff's unjust enrichment claim fails for two independent, additional reasons.   *First*,
Plaintiff's shareholder rights are governed by the Articles.   The Articles expressly states that
Class A shareholders would only be entitled to a pro rata portion of the funds held in the Trust
Account.   Where, as here, there is a relevant contract that governs Plaintiff's entitlement to a
company's assets, an unjust enrichment claim must fail.   *Pappas*, 20 N.Y.3d at 234.

*Second*, Plaintiff's breach of contract claim overlaps with its unjust enrichment claim;
therefore, the latter is not viable.   Claims are duplicative where they both arise from the same facts
and allege the same damages.   *See Cooper v. Anheuser-Busch, LLC*, 553 F. Supp. 3d 83, 115
(S.D.N.Y. 2021); *see also Corsello*, 18 N.Y.3d at 790 (2012) ("An unjust enrichment claim is not
available where it simply duplicates, or replaces, a conventional contract or tort claim.").   Where,
as here, Plaintiff's unjust enrichment claim is premised on identical facts as its legal claim, and
Plaintiff also fails to allege distinct damages, the unjust enrichment claim must fail.   *Id.*

## CONCLUSION

Defendants respectfully request that the Court grant their motion to dismiss the Amended
Complaint or, in the alternative, stay this action.   The Court should dismiss this action on *forum
non conveniens*, international comity or abstention grounds.   Should the Court decline to dismiss
the Amended Complaint on these bases, it should, at the very least, stay the case pursuant to such
doctrines.   Independently, the Court should dismiss Plaintiff's Amended Complaint for failure to
state a claim pursuant to Rule 12(b)(6).

Dated: New York, New York
      March 6, 2023

/s/ Stefan Atkinson
Stefan Atkinson
Kyla Jackson
Amanda Lamothe-Cadet
Kirkland & Ellis LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
stefan.atkinson@kirkland.com
kyla.jackson@kirkland.com
amanda.lamothecadet@kirkland.com

*Attorneys for Defendants*