**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| FUNICULAR FUNDS, LP, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> PIONEER MERGER CORP., PIONEER MERGER SPONSOR LLC, JONATHAN CHRISTODORO, RICK GERSON, OSCAR SALAZAR, RYAN KHOURY, SCOTT CARPENTER, MATTHEW COREY, MITCHELL CAPLAN, and TODD DAVIS, <br><br> Defendants. | Civil Action No. 22-10986-JSR <br><br> **ECF CASE** |

**DEFENDANTS' ANSWER TO PLAINTIFF FUNICULAR FUNDS, LP's**
**AMENDED CLASS ACTION COMPLAINT**

Defendants Pioneer Merger Corp. ("Pioneer" or the "SPAC"), Pioneer Merger Sponsor LLC ("Sponsor"), Jonathan Christodoro, Rick Gerson, Oscar Salazar, Ryan Khoury, Scott Carpenter, Matthew Corey, Mitchell Caplan, and Todd Davis (collectively, "Defendants"), by and through their undersigned counsel, respond to the Amended Class Action Complaint (ECF No. 9) (the "Complaint") filed on January 20, 2023, by Plaintiff Funicular Funds, LP. ("Plaintiff") as follows.

Defendants reserve the right to amend this Answer or to assert other defenses as this action proceeds. To the extent Defendants have not stated a specific response to any allegation stated in the Complaint, Defendants deny that allegation. To the extent that any of the Complaint's headings or footnotes constitute factual allegations, Defendants specifically deny each and every such allegation. Based on the foregoing, as well as specifically enumerated herein, Defendants deny

that Plaintiff is entitled to any relief whatsoever.  To the extent available under any contract, relevant statute, or other applicable law, Defendants will seek to recover the fees they have incurred in this action.

## INTRODUCTION

1.      This case involves the self-interested misappropriation of a $32.5 million corporate asset by the sponsor, officers and directors of a special purpose acquisition company (or SPAC).

**RESPONSE TO PARAGRAPH 1:**

**The allegations contained in Paragraph 1 of the Complaint set forth legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations contained in Paragraph 1 of the Complaint.**

2.      The SPAC, Pioneer, was formed by Alpha Wave Global, LP ("Alpha Wave") to acquire and take public a private company.  Pioneer was operated by its Sponsor, an entity created and controlled by Alpha Wave, and the SPAC's officers and directors are each affiliated with Alpha Wave.

**RESPONSE TO PARAGRAPH 2:**

**Defendants admit that Pioneer was formed, managed and operated by Sponsor. Defendants otherwise deny the allegations contained in Paragraph 2 of the Complaint.**

3.      Like a typical SPAC, Pioneer was structured to be a boom or bust proposition: the Defendants would either (i) own twenty percent of the post-acquisition company if Pioneer successfully completed a business combination; or (ii) lose their entire investment if Pioneer failed to complete a business combination.

**RESPONSE TO PARAGRAPH 3:**

**Defendants admit that if the SPAC did not complete a business combination in two years from its initial public offering ("IPO"), it would be required to dissolve and redeem 100 percent of the Class A ordinary shares.  Defendants otherwise deny the allegations contained in Paragraph 3 of the Complaint.**

4.      Prior to raising money from the public, the SPAC issued millions of shares of Class B common stock ("Founder Shares") at less than a penny per share to the Sponsor and the SPAC's officers and directors.  In order to support this arrangement and provide working capital, the Sponsor invested an additional $10.1 million through the purchase of warrants from the SPAC.

## RESPONSE TO PARAGRAPH 4:

**Defendants admit that (i) Pioneer issued shares of Class B ordinary shares (also known as "Founder Shares") to initial investors before its initial public offering, (ii) Sponsor purchased 10,062,500 of these Class B shares for $25,000, and (iii) Sponsor purchased warrants from the SPAC.  Defendants otherwise deny the allegations contained in Paragraph 4 of the Complaint.**

5.      In January 2021, the SPAC raised $402.5 million in an initial public offering ("IPO") that included the issuance of 40.25 million shares of Class A common stock ("Public Shares") to investors.

## RESPONSE TO PARAGRAPH 5:

**Defendants admit the allegations in Paragraph 5 of the Complaint.**

6.      The SPAC had two years to use the IPO proceeds to complete a business combination.  If the SPAC successfully completed a business combination, then Defendants' Founder Shares would convert to Public Shares and be worth more than $100 million on paper. If, however, the SPAC failed to close a deal, then the SPAC's assets would be returned to investors, the Founder Shares and warrants would become worthless, and Defendants would lose the capital that they invested.

## RESPONSE TO PARAGRAPH 6:

**Defendants admit that (i) Pioneer had two years to complete a business combination, (ii) if Pioneer successfully completed a business combination, Defendants' Founder Shares would convert to Public Shares, and (iii) if Pioneer failed to complete a business combination, Pioneer would be required to redeem 100 percent of the Class A ordinary shares.  Defendants otherwise deny the allegations contained in Paragraph 6 of the Complaint.**

7.      That economic bargain—*i.e.,* the Sponsor's risk of a complete loss of its private investment in exchange for the prospect of a notional 10x return if the SPAC were to strike a

3

deal—forms the heart of the SPAC model.  Public stockholders of the SPAC relied upon this incentive structure to motivate the Sponsor to identify and close an attractive acquisition on the SPAC's behalf, and thus mitigate the risk that stockholders' capital would be tied up for the life of the SPAC with no significant returns.

**RESPONSE TO PARAGRAPH 7:**

**Defendants state that they lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 7 of the Complaint to the extent they relate to the purported goals of the "[p]ublic stockholders of the SPAC" with regard to the SPAC's "incentive structure."  Defendants otherwise deny the allegations contained in Paragraph 7 of the Complaint.**

8.    Defendants repeatedly acknowledged in public filings that they would lose their entire investment if the SPAC did not complete a business combination, and each Defendant contractually agreed in connection with the IPO that they would have no "right, title, interest or claim of any kind in or to any monies held in the Trust Account *or any other asset of the [SPAC]* as a result of any liquidation" (*i.e.*, if the SPAC failed to make a deal).  (Emphasis added.)

**RESPONSE TO PARAGRAPH 8:**

**Defendants state that the allegations in Paragraph 8 of the Complaint characterize or describe publicly available documents or other sources, and Defendants deny any characterization or description that is inconsistent with the content of those materials.  Defendants otherwise deny the allegations contained in Paragraph 8 of the Complaint.**

9.    In May 2021, Defendants announced a proposed transaction with Acorns Grow Incorporated ("Acorns"), a fast-growing wealth manager with a novel application to make investing and saving easier than traditional investment accounts (the "Transaction").  Upon information and belief, Defendant Christodoro—the Chairman of the SPAC's Board and President and Chief Investment Officer of an Alpha Wave affiliate—has a personal relationship with the Chief Executive Officer and Chief Investment Officer of Acorns, which stems from their days as fraternity brothers at Cornell University.

**RESPONSE TO PARAGRAPH 9:**

**Defendants admit that Pioneer announced a proposed transaction with Acorns Grow Incorporated ("Acorns") in May 2021.   Defendants further admit that Defendant**

**Christodoro and non-parties Noah Kerner (the Chief Executive Officer of Acorns) and Seth**

**Wunder (the Chief Investment Officer of Acorns) were members of the same fraternity at**

**Cornell University.  Defendants state that they lack knowledge or information sufficient to**

**form a belief as to the truth of the allegations in Paragraph 9 of the Complaint to the extent**

**they relate to the purported business prospects of Acorns.  Defendants otherwise deny the**

**allegations contained in Paragraph 9 of the Complaint.**

10.     By late 2021, however, Acorns was regretting the deal and its valuation of the company, and it appears that Acorns was already negotiating a private raise at a higher valuation in violation of the Transaction's no-shop provision.

**RESPONSE TO PARAGRAPH 10:**

**Defendants state that they lack knowledge or information sufficient to form a belief**

**as to the truth of the allegations contained in Paragraph 10 of the Complaint.**

11.     Rather than enforce the SPAC's right to require Acorns to close or pursue other legal remedies, the Defendants reached a deal with their friends at Acorns that would benefit both sides at the expense of public stockholders: Acorns would be permitted to slide out of the Transaction (and pursue private funding) in exchange for a cash break-up fee to the SPAC, which Defendants planned to divert to themselves.

**RESPONSE TO PARAGRAPH 11:**

**Defendants deny the allegations contained in Paragraph 11 of the Complaint.**

12.     In January 2022, Defendants announced that the Transaction had been mutually terminated (the "Termination") and Acorns would pay a termination fee of up to $32.5 million—$17.5 million upfront and an additional $15 million if the SPAC were unable to identify a replacement transaction (the "Termination Fee").  At the time, Defendants subtly disclosed that the new funds would be kept outside of the SPAC's trust account, which was subject to distribution to investors if the SPAC failed to complete a transaction, but did not specify who would receive the Termination Fee in a dissolution.

**RESPONSE TO PARAGRAPH 12:**

**Defendants admit that (i) in January 2022, Acorns exercised its right to terminate the**

**Business Combination Agreement; (ii) upon such termination, Acorns was required to pay**

Pioneer a termination fee of $17.5 million up front and an additional $15 million in the event

that the SPAC was unable to complete another business combination by December 15, 2022;

and (iii) shortly after such termination, Pioneer publicly disclosed that the Termination Fee

would be held outside of the Trust Account and that it would not be a part of liquidating

distributions with respect to public shares.  Defendants otherwise deny the allegations

contained in Paragraph 12 of the Complaint.

13.     Shortly thereafter, Acorns completed a private fundraising round at a higher pre-money valuation, demonstrating that public stockholders had been deprived of a Transaction with significant value.

**RESPONSE TO PARAGRAPH 13:**

Defendants state that they lack knowledge or information sufficient to form a belief

as to the truth of the allegations contained in Paragraph 13 of the Complaint.

14.     Following the Termination, Defendants—who planned to pocket the Termination Fee for themselves—had no incentive to identify a new deal and did not do so.  In December 2022, they announced that the SPAC would dissolve, triggering the remaining $15 million Termination Fee payment from Acorns.

**RESPONSE TO PARAGRAPH 14:**

Defendants admit that Pioneer announced in December 2022 that the SPAC would

not be able to consummate a potential business combination and would dissolve.  Defendants

otherwise deny the allegations contained in Paragraph 14 of the Complaint.

15.     Having failed to make a deal, Defendants were required by the SPAC's governing documents to take a loss and return the SPAC's assets to investors.

**RESPONSE TO PARAGRAPH 15:**

Defendants admit that Pioneer was required to redeem 100 percent of the Class A

ordinary shares.  Defendants otherwise deny the allegations contained in Paragraph 15 of

the Complaint.

16.     Instead, they extracted a consolation prize: having diverted the $32.5 million Termination Fee to a separate account, Defendants chose to redeem outstanding Class A Public Shares in exchange for only the IPO proceeds held in the SPAC's trust account (with minimal interest less taxes).  All remaining assets, including the Termination Fee, would be distributed solely to Defendants as holders of the Class B Founder Shares.

**RESPONSE TO PARAGRAPH 16:**

**Defendants admit that Pioneer redeemed Class A ordinary shares for the initial $10 per share investment, plus accrued interest.  Defendants otherwise deny the allegations contained in Paragraph 16 of the Complaint**

17.     The decision to abscond with the Termination Fee rendered the Termination a self-interested and disloyal transaction, given that Defendants caused the SPAC to sacrifice the deal with Acorns and its legal rights and remedies in exchange for a payment *that Defendants intended to misappropriate.*

**RESPONSE TO PARAGRAPH 17:**

**The allegations contained in Paragraph 17 of the Complaint are legal conclusions for which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 17 of the Complaint.**

18.     The SPAC has stated that it will not distribute its remaining assets, including the Termination Fee, until resolution of litigation.  This action seeks an order of this Court requiring Defendants to distribute the Termination Fee equitably to a class of holders of Class A Public Shares as of the date of the redemption.

**RESPONSE TO PARAGRAPH 18:**

**Defendants admit the allegations contained in the first sentence of Paragraph 18 of the Complaint.  Defendants admit that this action seeks such an order of the Court as described in the second sentence of Paragraph 18 of the Complaint but deny that Plaintiff is entitled to such relief.**

## THE PARTIES

19.     Plaintiff is a Delaware limited partnership and was, prior to the redemption, the largest disclosed holder of Class A Public Shares of Pioneer.

**RESPONSE TO PARAGRAPH 19:**

**Defendants admit that Plaintiff was, shortly before the redemption, the largest disclosed holder of Class A ordinary shares of Pioneer.  Defendants otherwise deny the allegations contained in Paragraph 19 of the Complaint.**

20.     Pioneer is a special purpose acquisition company, sometimes called a "blank check company," organized as a Cayman Islands exempted company.  It was formed by Alpha Wave for the purpose of completing a business combination.  Alpha Wave is a "diversified global alternative asset manager" operated by Defendants Gerson and Khoury.

**RESPONSE TO PARAGRAPH 20:**

**Defendants admit the allegations in the first sentence of Paragraph 20 of the Complaint.  Defendants further admit Alpha Wave is a diversified global alternative asset manager and Defendants Gerson and Khoury are two of the members of its leadership team. Defendants otherwise deny the allegations contained in Paragraph 20 of the Complaint.**

21.     The Sponsor is a Cayman Islands limited liability company and was responsible for managing the SPAC.  Alpha Wave formed the Sponsor and controls it through Defendant Gerson, Alpha Wave's Founder and Chairman.

**RESPONSE TO PARAGRAPH 21:**

**Defendants admit the allegations contained in the first sentence of Paragraph 21 of the Complaint.  Defendants further admit Alpha Wave is controlled by Rick Gerson, who is Alpha Wave's Founder and Chairman.  Defendants otherwise deny the allegations contained in Paragraph 21 of the Complaint.**

22.     Defendant Christodoro is the Chairman of the SPAC's Board.  He is the President and Chief Investment Officer of Patriot Global, an affiliate of Alpha Wave.

**RESPONSE TO PARAGRAPH 22:**

**Defendants admit the allegations contained in Paragraph 22 of the Complaint.**

23.     Defendant Gerson is a Co-President of the SPAC.  He is the Founder, Chairman

and Chief Investment Officer of Alpha Wave.

**RESPONSE TO PARAGRAPH 23:**

     **Defendants admit the allegations contained in Paragraph 23 of the Complaint.**

    24.    Defendant Salazar is a Co-President of the SPAC and a member of the SPAC's Board.

**RESPONSE TO PARAGRAPH 24:**

     **Defendants admit the allegations contained in Paragraph 24 of the Complaint.**

    25.    Defendant Khoury is the SPAC's Chief Executive Officer.  He is a co-Founder and Partner of Alpha Wave.

**RESPONSE TO PARAGRAPH 25:**

     **Defendants admit the allegations contained in Paragraph 25 of the Complaint.**

    26.    Defendant Carpenter is the SPAC's Chief Operating Officer.  He is the Chief Operating Officer of Alpha Wave.

**RESPONSE TO PARAGRAPH 26:**

     **Defendants admit the allegations contained in the first sentence in Paragraph 26 of the Complaint.  Defendants otherwise deny the allegations contained in Paragraph 26 of the Complaint.**

    27.    Defendant Corey is the SPAC's Chief Financial Officer.  He is the Chief Financial Officer of Alpha Wave.

**RESPONSE TO PARAGRAPH 27:**

     **Defendants admit the allegations contained in Paragraph 27 of the Complaint.**

    28.    Defendant Caplan is a member of the SPAC's Board.

**RESPONSE TO PARAGRAPH 28:**

     **Defendants admit the allegations contained in Paragraph 28 of the Complaint.**

    29.    Defendant Davis is a member of the SPAC's Board.

**RESPONSE TO PARAGRAPH 29:**

**Defendants admit the allegations contained in Paragraph 29 of the Complaint.**

**JURISDICTION AND VENUE**

30.     This Court has jurisdiction over this action under 28 U.S. Code § 1332(a) and (d).

**RESPONSE TO PARAGRAPH 30:**

**The allegations contained in Paragraph 30 of the Complaint set forth legal conclusions to which no response is required.   To the extent a response is required, Defendants admit that Plaintiff purports to assert claims under federal law but deny that Plaintiff is entitled to any relief under those statutes or any other laws.   Defendants otherwise deny the allegations contained in Paragraph 30 of the Complaint.**

31.     Venue is proper in this judicial district under 28 U.S.C. § 1391 (b)(1) and (2).

**RESPONSE TO PARAGRAPH 31:**

**The allegations contained in Paragraph 31 of the Complaint set forth legal conclusions to which no response is required.   To the extent a response is required, Defendants deny the allegations contained in Paragraph 30 of the Complaint.**

32.     This Court has jurisdiction over Defendants because each lists a business address of 660 Madison Avenue, New York, NY 10065 and Defendants transact a substantial amount of business in New York, have substantial ties to New York, and/or are citizens or residents of New York or otherwise maintain sufficient minimum contacts with New York to render jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

**RESPONSE TO PARAGRAPH 32:**

**The allegations contained in Paragraph 32 of the Complaint set forth legal conclusions to which no response is required.   Defendants admit Defendants Pioneer, Sponsor, Rick Gerson, Todd Davis and Oscar Salazar list a business address of 660 Madison**

Avenue, New York, NY 10065 in Pioneer's Form 10-K filed with the SEC on March 30, 2022.

Defendants otherwise deny the allegations contained in Paragraph 32 of the Complaint.

33.     In addition, the Sponsor Agreement (defined below), to which each Defendant is a party, states that "any action, proceeding, claim or dispute arising out of, or relating in any way to [the Sponsor Agreement] shall be brought and enforced in the courts of New York City, in the State of New York," and Defendants agreed to "irrevocably submit to such jurisdiction and venue, which jurisdiction and venue shall be exclusive" and "waive any objection to such exclusive jurisdiction and venue or that such courts represent an inconvenient forum."

**RESPONSE TO PARAGRAPH 33:**

Defendants admit that the Sponsor Agreement contains a clause that provides that "any action, proceeding, claim or dispute arising out of, or relating in any way to [the Sponsor Agreement] shall be brought and enforced in the courts of New York City, in the State of New York," but deny that Plaintiff is entitled to enforce any part of the Sponsor Agreement. Defendants further deny any characterization or description of the Sponsor Agreement that is inconsistent with its terms. Defendants otherwise deny the allegations contained in Paragraph 33 of the Complaint.

## SUBSTANTIVE ALLEGATIONS

### A.     Alpha Wave Forms The Sponsor And The SPAC To Complete A Business Combination

34.     Alpha Wave (formerly known as Falcon Edge Capital) is a global alternative asset manager that offers investment products in different asset classes, themes, and geographies. It manages approximately $17.0 billion across a range of private investment funds and separately managed accounts.

**RESPONSE TO PARAGRAPH 34:**

Defendants admit the allegations contained in the first sentence in Paragraph 34 of the Complaint. Defendants state that Alpha Wave currently has approximately $19.3 billion in assets under management. Defendants otherwise deny the allegations contained in Paragraph 34 of the Complaint.

35.   In October 2020, Alpha Wave, in partnership with Patriot Global (an affiliate of Alpha Wave operated by Defendant Christodoro), formed the SPAC and the Sponsor for the purpose of completing a business combination with a "leading private company that is a potential industry disruptor or innovator in a growth market."

## RESPONSE TO PARAGRAPH 35:

**Defendants admit the allegations in the first clause of Paragraph 35 of the Complaint. With respect to the second clause, Defendants admit that in the Form 10-K filed with the SEC on March 30, 2022 Pioneer Corp. stated that its "business strategy is to identify and complete our initial business combination with a leading private company that is a potential industry disruptor or innovator in a growth market."  Defendants otherwise deny the allegations contained in Paragraph 35 of the Complaint.**

36.   The Sponsor is controlled by Defendant Gerson, its managing member and Alpha Wave's Founder and Chairman.

## RESPONSE TO PARAGRAPH 36:

**Defendants admit the allegations contained in Paragraph 36 of the Complaint.**

37.   The SPAC's capital structure consists of two classes of common stock: Class A Public Shares issued to the public through an IPO and Class B Founder Shares issued to Defendants for a nominal amount.

## RESPONSE TO PARAGRAPH 37:

**Defendants admit that the SPAC's capital structure consisted of Class A ordinary shares issued through an IPO and Class B ordinary shares.  Defendants otherwise deny the allegations contained in Paragraph 37 of the Complaint.**

38.   The Class B Founder Shares were convertible to Class A Public Shares only in the event that the SPAC successfully completed a business combination.  Otherwise, they would become worthless.

**RESPONSE TO PARAGRAPH 38:**

Defendants admit that the allegation contained in the first sentence of paragraph 38 of the Complaint.  Defendants further admit Pioneer's Form 10-K filed with the SEC on March 30, 2022 states that "[t]he founder shares will be worthless if we do not complete an initial business combination."  Defendants otherwise deny the allegations contained in Paragraph 38 of the Complaint.

39.     On October 23, 2020, the Sponsor purchased 10,062,500 Class B Founder Shares for $25,000 (*i.e.*, less than one penny per share).

**RESPONSE TO PARAGRAPH 39:**

Defendants admit the allegations contained in Paragraph 39 of the Complaint.

40.     On December 21, 2020, the Sponsor transferred 40,000 Founder Shares to each of Defendant Davis, Defendant Caplan, and Defendant Salazar (i.e., the only officers and directors not directly affiliated with Alpha Wave).

**RESPONSE TO PARAGRAPH 40:**

Defendants admit that on December 21, 2020, Defendants Davis, Caplan and Salazar each received 40,000 Founder Shares from Sponsor.  Defendants otherwise deny the allegations contained in Paragraph 40 of the Complaint.

41.     Thus, the SPAC's officers and directors (together, eight individuals) owned 100% of the outstanding Class B Founder Shares, and each had personal financial interests in the Founder Shares either directly as a holder or indirectly through affiliation with Alpha Wave.

**RESPONSE TO PARAGRAPH 41:**

Defendants admit that the SPAC's officers and directors had indirect or direct financial interests in the SPAC.  Defendants otherwise deny the allegations contained in Paragraph 41 of the Complaint.

42.     On January 12, 2021, Pioneer completed its initial public offering of 40,250,000 Class A Public Shares at $10.00 per share.  Following the IPO, the Public Shares represented 80%

of outstanding stock and the Founder Shares represented 20% of outstanding stock.

**RESPONSE TO PARAGRAPH 42:**

**Defendants admit the allegations contained in Paragraph 42 of the Complaint.**

43.     In connection with the IPO, each of the Defendants entered into a letter agreement with the SPAC (the "Sponsor Agreement") pursuant to which they waived any entitlement under the Charter or otherwise to any assets of the SPAC in connection with a liquidation (i.e., in the event that Defendants failed to complete a business combination).

**RESPONSE TO PARAGRAPH 43:**

**Defendants admit that Sponsor and the individual Defendants entered into a letter agreement with the SPAC (the "Sponsor Agreement"). Defendants state that the allegations in Paragraph 43 of the Complaint characterize or describe the Sponsor Agreement, and Defendants deny any characterization or description that is inconsistent with the content of those materials. Defendants otherwise deny the allegations contained in Paragraph 43 of the Complaint.**

44.     To provide working capital for the SPAC and induce Pioneer and the underwriter to enter into the Sponsor Agreement, the Sponsor invested $10.05 million in exchange for 6.7 million warrants issued by the SPAC in a private placement. The warrants were exercisable to purchase Class A Public Shares at $11.50 per share in the event of a business combination, and provided no other value or rights.

**RESPONSE TO PARAGRAPH 44:**

**Defendants admit that the Sponsor purchased 6.7 million warrants from the SPAC for a total price of $10.05 million and that these warrants would allow the Sponsor to purchase Class A ordinary shares at $11.50 per share in the event of a future business combination. Defendants otherwise deny the allegations contained in Paragraph 44 of the Complaint.**

45.     The SPAC had two years from its IPO to complete a business combination or else it would be required to dissolve and distribute its assets back to investors.

**RESPONSE TO PARAGRAPH 45:**

**Defendants admit that if the SPAC did not complete a business combination in two years from its IPO, it would be required to dissolve and redeem 100 percent of the Class A ordinary shares.  Defendants otherwise deny the allegations contained in Paragraph 45 of the Complaint.**

46.     Defendants acknowledged that their Class B Founder Shares and the warrants issued to the Sponsor were structured to provide a profit to Defendants *only* if they were able to successfully complete a transaction for the SPAC.

**RESPONSE TO PARAGRAPH 46:**

**Defendants deny the allegations contained in Paragraph 46 of the Complaint.**

47.     Indeed, Defendants expressly agreed in the Sponsor Agreement "that it, she or he has no right, title, interest or claim of any kind in or to any monies held in the Trust Account *or any other asset of the [SPAC]* as a result of any liquidation of the [SPAC] with respect to the Founder Shares held by it, her or him, if any." (Emphasis added.)

**RESPONSE TO PARAGRAPH 47:**

**Defendants admit that the quoted language in Paragraph 47 of the Complaint is in the Sponsor Agreement.  Defendants state that the allegations in Paragraph 47 of the Complaint characterize or describe the Sponsor Agreement, and Defendants deny any characterization or description that is inconsistent with the content of those materials. Defendants otherwise deny the allegations contained in Paragraph 47 of the Complaint.**

48.     The IPO prospectus also made clear that the "founder shares will be worthless if [Defendants] do not complete an initial business combination," "our warrants will expire worthless," and Defendants "will lose their entire investment."

**RESPONSE TO PARAGRAPH 48:**

**Defendants admit that the quoted language in Paragraph 48 of the Complaint is in the IPO prospectus.  Defendants state that the allegations in Paragraph 48 of the Complaint characterize or describe the IPO prospectus, and Defendants deny any characterization or**

description that is inconsistent with the content of those materials.  Defendants otherwise deny the allegations contained in Paragraph 48 of the Complaint.

49.     Further, in the SPAC's periodic filings thereafter, Defendants repeatedly reaffirmed that their "founder shares will be worthless if we do not complete an initial business combination" and "our warrants will expire worthless."

## RESPONSE TO PARAGRAPH 49:

Defendants state that the allegations in Paragraph 49 of the Complaint characterize or describe publicly available documents or other sources, and Defendants deny any characterization or description that is inconsistent with the content of those materials. Defendants otherwise deny the allegations contained in Paragraph 49 of the Complaint.

50.     Defendants had until January 12, 2023 to complete a business combination.

## RESPONSE TO PARAGRAPH 50:

Defendants admit the allegations in Paragraph 50 of the Complaint.

B.     **The SPAC Signs A Business Combination
       Agreement With Acorns, But The Deal Falls Through**

51.     On May 27, 2021, the SPAC announced that it had entered into a Business Combination Agreement (the "Transaction Agreement") with Acorns, a wealth manager that offers an application for simplified saving and investing.  The Transaction provided a pre-money valuation of Acorns of $1.5 billion.

## RESPONSE TO PARAGRAPH 51:

Defendants admit the allegations contained in Paragraph 51 of the Complaint.

52.     Upon information and belief, Defendant Christodoro has a personal relationship with the Chief Executive Officer of Acorns, Noah Kerner, and the Chief Investment Officer, Seth Wunder, dating back to their days as fraternity brothers at Cornell University.

**RESPONSE TO PARAGRAPH 52:**

**Defendants admit that Defendant Christodoro and non-parties Mr. Kerner and Mr. Wunder were members of the same fraternity at Cornell University.  Defendants otherwise deny the allegations contained in Paragraph 52 of the Complaint.**

53.    After negotiating the deal with Acorns, Defendants touted the merits of the Transaction in press releases and presentations to investors.

**RESPONSE TO PARAGRAPH 53:**

**Defendants admit that Pioneer publicly announced that it had entered into a business combination agreement with Acorns.  Defendants otherwise deny the allegations contained in Paragraph 53 of the Complaint.**

54.    For example, in a September 2021 investor presentation, Defendants stated that Acorns (i) is "the largest subscription service in US consumer finance today with attractive, recurring revenues from a base of 4.3M sticky, engaged subscribers"; (ii) expects $120 million in annualized revenue for 2021; (iii) has "nearly 99% monthly retention" of users; (iv) operates at "80%+" gross margin; and (v) is "[p]ositioned to address the unmet needs of the largest consumer market in the world."



**RESPONSE TO PARAGRAPH 54:**

**Defendants admit that the quoted language in Paragraph 54 of the Complaint appeared in a September 2021 Acorns Analyst Day presentation.  Defendants state that the allegations in Paragraph 54 of the Complaint characterize or describe publicly available documents or other sources, and Defendants deny any characterization or description that**

is inconsistent with the content of those materials.  Defendants otherwise deny the allegations contained in Paragraph 54 of the Complaint.

55.     The Transaction was expected to close in the second half of 2021 pending shareholder approval.  However, upon information and belief, at some point in late 2021 Acorns began to second guess the agreement.  It had apparently changed its mind about entering the public market at the negotiated price because of market conditions.

**RESPONSE TO PARAGRAPH 55:**

Defendants admit the allegation in the first sentence of Paragraph 55 of the Complaint.  Defendants state that they lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 55 of the Complaint.

56.     Despite that the Transaction Agreement did not permit Acorns to "discuss, negotiate or knowingly facilitate, directly or indirectly, any inquiry, proposal or offer (written or oral) with respect to [another] Company Acquisition Proposal," it appears that Acorns began to negotiate, during this period, a new round of private equity as an alternative to raising capital through the Transaction with Pioneer.

**RESPONSE TO PARAGRAPH 56:**

Defendants state that the allegations in Paragraph 56 of the Complaint characterize or describe provisions in the Business Combination Agreement, and Defendants deny any characterization or description that is inconsistent with the terms of the agreement.  Defendants further state that they lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 56 of the Complaint.

57.     Upon information and belief, in or around the end of 2021, Acorns informed Defendants that it would not proceed with the Transaction.

**RESPONSE TO PARAGRAPH 57:**

Defendants admit the allegations in Paragraph 57 of the Complaint.

### C.  Defendants Let Acorns Out Of The Deal In Exchange For A Termination Fee That Defendants Planned To Pocket

58.  Upon learning that Acorns wanted out of the Transaction, Defendants had a range of legal tools available to them to protect the interests of public stockholders, including forcing Acorns to close pursuant to the terms of the Transaction.

### RESPONSE TO PARAGRAPH 58:

**The allegations contained in Paragraph 58 of the Complaint set forth legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations contained in Paragraph 58 of the Complaint.**

59.  For example, the Transaction Agreement provided that "irreparable damage . . . would occur in the event that the [p]arties do not perform their respective obligations under the provisions of this Agreement (including failing to take such actions as are required of them hereunder to consummate the transactions contemplated by this Agreement)," and that the SPAC "shall be entitled to an injunction or injunctions, specific performance and other equitable relief to prevent breaches of this Agreement and to enforce specifically the terms and provisions of this Agreement... in addition to any other remedy to which they are entitled at law or in equity."

### RESPONSE TO PARAGRAPH 59:

**Defendants admit that the quoted language in Paragraph 59 of the Complaint appears in the Business Combination Agreement.  Defendants state that the allegations in Paragraph 59 of the Complaint characterize certain provisions of the Business Combination Agreement, and Defendants deny any characterization or description that is inconsistent with the terms of the agreement.  Defendants otherwise deny the allegations contained in Paragraph 59 of the Complaint.**

60.  Acorns expressly agreed in the Transaction Agreement "that it *will not oppose the granting of an injunction, specific performance and other equitable relief* when expressly available pursuant to the terms of this Agreement on the basis that the other parties have an adequate remedy at law or an award of specific performance is not an appropriate remedy for any reason at law or equity." (Emphasis added.)

**RESPONSE TO PARAGRAPH 60:**

Defendants admit that the quoted language in Paragraph 60 of the Complaint appears in the Business Combination Agreement.  Defendants state that the allegations in Paragraph 60 of the Complaint characterize certain provisions of the Business Combination Agreement, and Defendants deny any characterization or description that is inconsistent with the terms of the agreement.  Defendants otherwise deny the allegations contained in Paragraph 60 of the Complaint.

61.     Notwithstanding the SPAC's rights and remedies, Defendants decided to let Acorns off the hook.  Upon information and belief, the former fraternity brothers—Defendant Christodoro, on behalf of Pioneer, and Mr. Kerner, on behalf of Acorns—negotiated a deal that would allow Acorns out of the Transaction and enable it to pursue its now-desired private funding (at a higher valuation) in exchange for a cash payment that the Defendants *intended from the outset to pocket for themselves* as the holders of Class B Founder Shares.

**RESPONSE TO PARAGRAPH 61:**

Defendants deny the allegations contained in Paragraph 61 of the Complaint.

62.     On January 3, 2022, Defendants disclosed to investors the Termination and the Termination Fee Agreement pursuant to which "the parties agreed to mutually terminate [the] Business Combination Agreement."

**RESPONSE TO PARAGRAPH 62:**

Defendants admit the allegations in Paragraph 62 of the Complaint.

63.     Acorns agreed to pay "an aggregate sum of $ 17,500,000 to the Company in monthly payments through December 15, 2022."  Further, if the SPAC failed to complete "an initial business combination on or before December 15, 2022," then Acorns would "pay to the [SPAC] $15,000,000 no later than December 22, 2022."

**RESPONSE TO PARAGRAPH 63:**

Defendants admit that the quoted language in Paragraph 63 of the Complaint is in the Termination Fee Agreement.  Defendants state that the allegations in Paragraph 63 of the Complaint characterize certain provisions of the Termination Fee Agreement, and

**Defendants deny any characterization or description that is inconsistent with the terms of the agreement.  Defendants otherwise deny the allegations contained in Paragraph 63 of the Complaint.**

64.     Thus, if the SPAC failed to complete a deal before its deadline, the Termination Fee from Acorns would total $32.5 million.

## RESPONSE TO PARAGRAPH 64:

**Defendants admit that the Termination Fee from Acorns would equal $32.5 million if Pioneer did not complete a business combination prior to December 15, 2022.  Defendants otherwise deny the allegations contained in Paragraph 64 of the Complaint.**

65.     In exchange for the Termination Fee, Pioneer agreed to release "all claims, actions, causes of action, demands and charges of whatever nature, known or unknown, arising out of, or relating to [the Transaction Agreement]" and also "not to bring any [r]eleased [c]laim before any court, arbitrator, or other tribunal in any jurisdiction"

## RESPONSE TO PARAGRAPH 65:

**Defendants admit that the quoted language in Paragraph 65 of the Complaint appears in the Termination Fee Agreement.  Defendants state that the allegations in Paragraph 65 of the Complaint characterize certain provisions of the Termination Fee Agreement, and Defendants deny any characterization or description that is inconsistent with the terms of the agreement.  Defendants otherwise deny the allegations contained in Paragraph 65 of the Complaint.**

66.     In the press release announcing the Termination, Defendants stated generally that if Pioneer does not complete a business combination, it will "redeem the Class A ordinary shares sold as part of the units in Pioneer's initial public offering, at a per-share price, payable in cash, *equal to the aggregate amount then on deposit in Pioneer's trust account* . . . divided by the number of the then-outstanding public shares of Pioneer, which redemption *will completely extinguish public shareholders' rights as shareholders (including the right to receive further liquidation distributions, if any)."*  Thereafter, the SPAC would "liquidate and dissolve" with a distribution of remaining assets, if any, to the "remaining shareholders" (*i.e.*, Defendants, as holders of the Class B Founder Shares).

**RESPONSE TO PARAGRAPH 66:**

**Defendants admit that the quoted language in Paragraph 66 of the Complaint appeared in its Form 8K filed on January 15, 2022 concerning the Termination. Defendants state that the allegations in Paragraph 66 of Complaint characterize or describe publicly available documents or other sources, and Defendants deny any characterization or description that is inconsistent with the content of those materials. Defendants otherwise deny the allegations contained in Paragraph 66 of the Complaint.**

67.   What was not clearly disclosed at the time was that the Termination Fee would *not be deposited into the SPAC 's trust account,* and thus would not be subject to distribution to public stockholders. Rather, Defendants planned from the outset to divert it into a separate account for distribution solely to themselves following the redemption of Class A Public Shares.

**RESPONSE TO PARAGRAPH 67:**

**Defendants deny the allegations contained in Paragraph 67 of the Complaint.**

68.   On March 9, 2022, Acorns completed a private fundraising round, which excluded the SPAC, at a $1.6 billion pre-money valuation—$100 million more than the valuation agreed with Pioneer—suggesting that the SPAC and its public stockholders lost out on a potentially valuable deal.

**RESPONSE TO PARAGRAPH 68:**

**Defendants state that they lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 68 of the Complaint.**

69.   On March 30, 2022, Defendants disclosed their plan to divert the Termination Fee outside of the trust account. In a Form 10-K, Defendants stated that "if we do not complete an initial Business Combination, any funds remaining . . . from *payments under the Termination Fee Agreement, are expected to remain outside of the trust account* and not be part of liquidating distributions with respect to the public shares."

**RESPONSE TO PARAGRAPH 69:**

**Defendants admit that the quoted language in Paragraph 69 of the Complaint appeared in a Form 10-K filed by Pioneer with the SEC on March 30, 2022. Defendants state**

that the allegations in Paragraph 69 of the Complaint characterize or describe publicly available documents or other sources, and Defendants deny any characterization or description that is inconsistent with the content of those materials. Defendants otherwise deny the allegations contained in Paragraph 69 of the Complaint

70.     While Defendants stated that they "intend[ed] to continue our search for an initial [b]usiness [c]ombination," finding a new deal was against their economic interests.

RESPONSE TO PARAGRAPH 70:

Defendants admit that the quoted language in Paragraph 70 of the Complaint appeared in a Form 10-K filed by Pioneer with the SEC on March 30, 2022. Defendants state that the allegations in Paragraph 70 of the Complaint characterize or describe publicly available documents or other sources, and Defendants deny any characterization or description that is inconsistent with the content of those materials. Defendants otherwise deny the allegations contained in Paragraph 70 of the Complaint.

71.     They already had $17.5 million in their possession and $15 million more on the way so long as they avoided identifying a new transaction. The SPAC market was souring, and even if Defendants identified a potential acquisition target, they had no incentive to provide the deal to Pioneer rather than simply founding a new SPAC, given that they were already set to appropriate a profit from Pioneer regardless.

RESPONSE TO PARAGRAPH 71:

Defendants deny the allegations contained in Paragraph 71 of the Complaint.

D.     Defendants Announce That The SPAC Will Dissolve And They Will Keep The Termination Fee

72.     On December 15, 2022, Defendants announced that the SPAC would not "consummate an initial business combination within the time period required" and would dissolve.

RESPONSE TO PARAGRAPH 72:

Defendants admit the allegations in Paragraph 72 of the Complaint.

73.     The SPAC's determination to dissolve triggered Acorns' obligation to pay the

additional Termination Fee of $15 million, bringing the total payment to $32.5 million, which was stashed away by Defendants outside of the SPAC's trust account.

**RESPONSE TO PARAGRAPH 73:**

**Defendants admit that: (i) the additional Termination Fee to be paid by Acorns equaled $15 million, and (ii) Acorn's obligation to pay the additional Termination Fee was triggered when the SPAC failed to complete an initial business combination within the time specified.  Defendants otherwise deny the allegations contained in Paragraph 73 of the Complaint.**

74.    Defendants stated that, upon dissolution, the Class A Public Shares would be redeemed on January 13, 2023 and the SPAC would return to investors only the IPO proceeds held in the trust account with "no other amounts."  The Termination Fee would be distributed, per Defendants' original plan, to themselves as holders of Class B Founder Shares after the redemption of the Class A Public Shares.

**RESPONSE TO PARAGRAPH 74:**

**Defendants admit that Defendants stated in a Form 10-K filed by Pioneer with the SEC on December 15, 2022 that, upon dissolution, the Class A ordinary shares would be redeemed on January 13, 2023.  Defendants otherwise deny the allegations contained in Paragraph 74 of the Complaint.**

75.    Defendants had the power and obligation to distribute—whether through a redemption, dividend, or otherwise—the Termination Fee to public stockholders, but simply chose not to do so, despite having agreed in the Sponsor Agreement that they would have no "right, title, interest or claim of any kind in or to any monies held in the Trust Account *or any other asset of the [SPAC]* as a result of any liquidation."  (Emphasis added.)

**RESPONSE TO PARAGRAPH 75:**

**Defendants admit that the quoted language of Paragraph 75 of the Complaint is in the Sponsor Agreement.  Defendants state that the allegations in Paragraph 75 of the Complaint characterize or describe provisions in the Sponsor Agreement, and Defendants deny any characterization or description that is inconsistent with the terms of that**

**agreement.  The remaining allegations contained in Paragraph 75 of the Complaint contain**

**legal conclusions for which no response is required.  To the extent a response is required,**

**Defendants deny the remaining allegations contained in Paragraph 75 of the Complaint.**

76.     Defendants' conduct is particularly egregious given that the *Termination Fee was obtained in exchange for the SPAC 's waiver of its rights to enforce the terms of the Transaction.* While the SPAC and its public stockholders were forced to give up the value of the Transaction and any legal remedies, Defendants would pocket the monetary benefits of that waiver and effectively sold a corporate asset for their own profit.

## RESPONSE TO PARAGRAPH 76:

**Defendants deny the allegations contained in Paragraph 76 of the Complaint.**

77.     This rendered the Termination nothing more than a disloyal scheme to exchange rights belonging to the SPAC and its public stockholders for personal financial benefits realized solely by Defendants.

## RESPONSE TO PARAGRAPH 77:

**Defendants deny the allegations contained in Paragraph 77 of the Complaint.**

78.     On January 17, 2023, Defendants distributed the assets held in the SPAC's trust account to holders of Class A Public Shares, but retained all remaining assets, including the Termination Fee.  The SPAC has stated that it will not distribute any remaining assets, including the Termination Fee, until the resolution of this litigation.

## RESPONSE TO PARAGRAPH 78:

**Defendants admit that on January 17, 2023, Pioneer distributed the assets held in its**

**trust account to holders of its Class A ordinary shares.  Defendants admit the allegations in**

**the second sentence of Paragraph 78 of the Complaint.  Defendants deny the remaining**

**allegations in Paragraph 78 of the Complaint.**

79.     Defendants have no legal, equitable, fiduciary, contractual or other basis to misappropriate the Termination Fee, and this Court should order Defendants to distribute the Termination Fee and any other remaining corporate assets to holders of Class A Public Shares.

**RESPONSE TO PARAGRAPH 79:**

The allegations contained in Paragraph 79 of the Complaint are legal conclusions for which no response is required. To the extent a response is required, Defendants deny the allegations contained in Paragraph 79 of the Complaint.

## CLASS ACTION ALLEGATIONS

80.    Plaintiff brings this Action pursuant to Rule 23 of the Federal Rules of Civil Procedure individually and as a class action on behalf of all holders of Class A Public Shares as of January 13, 2023 or otherwise on the date of Pioneer's redemption of the Public Shares (the "Class").

**RESPONSE TO PARAGRAPH 80:**

Defendants admit that Plaintiff purports to bring this Action pursuant to Rule 23 of the Federal Rules of Civil Procedure, and otherwise deny the allegations in Paragraph 80 of the Complaint.

81.    The Class does not include Defendants named herein, and any person, firm, trust, corporation, or other entity related by blood or marriage to or affiliated or associated with any of the Defendants or their successors in interest.

**RESPONSE TO PARAGRAPH 81:**

Defendants admit that Plaintiff purports to exclude from the class the persons described in Paragraph 81 of the Complaint, and otherwise deny the allegations in Paragraph 81 of the Complaint.

82.    The members of the Class are so numerous that joinder of all members is impracticable. Upon information and belief, the SPAC's shares are beneficially owned by thousands of geographically dispersed stockholders.

**RESPONSE TO PARAGRAPH 82:**

The allegations contained in the first sentence of Paragraph 82 of the Complaint are legal conclusions for which no response is required. To the extent a response is required,

**Defendants deny the allegations in the first sentence of Paragraph 82 of the Complaint.**

**Defendants state that they lack knowledge or information sufficient to form a belief as to the**

**truth of the allegations contained in the second sentence of Paragraph 82 of the Complaint.**

83.    There are questions of law and fact common to the Class, which predominate over questions affecting any individual Class member.  These common questions include, *inter alia*:

- Whether the Termination Fee is a corporate asset of the SPAC and rightfully belongs to, and should be distributed to, holders of Class A Public Shares;
- Whether Defendants breached their contractual and fiduciary duties to stockholders, and will be unjustly enriched, through their scheme to misappropriate the Termination Fee; and
- The existence and extent of injury to Plaintiff and the Class caused by such breaches, violations and misconduct.

## RESPONSE TO PARAGRAPH 83:

**The allegations contained in Paragraph 83 of the Complaint are legal conclusions for**

**which no response is required.  To the extent a response is required, Defendants deny the**

**allegations contained in Paragraph 83 of the Complaint.**

84.    No difficulties are likely to be encountered in the management of this case as a class action.

## RESPONSE TO PARAGRAPH 84:

**The allegations contained in Paragraph 84 of the Complaint are legal conclusions for**

**which no response is required.  To the extent a response is required, Defendants deny the**

**allegations contained in Paragraph 84 of the Complaint.**

85.    Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## RESPONSE TO PARAGRAPH 85:

**The allegations contained in Paragraph 85 of the Complaint are legal conclusions for**

**which no response is required.  To the extent a response is required, Defendants deny the**

**allegations contained in Paragraph 85 of the Complaint.**

86.    Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.  Plaintiff's claims are typical of the claims of other Class members and Plaintiff has the same interests as other Class members.  Accordingly, Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

**RESPONSE TO PARAGRAPH 86:**

**The allegations contained in Paragraph 86 of the Complaint are legal conclusions for which no response is required.  To the extent a response is required, Defendants deny the allegations contained in Paragraph 86 of the Complaint.**

87.    The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendants or adjudications with respect to individual members of the Class that would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

**RESPONSE TO PARAGRAPH 87:**

**The allegations contained in Paragraph 87 of the Complaint are legal conclusions for which no response is required.  To the extent a response is required, Defendants deny the allegations contained in Paragraph 87 of the Complaint.**

88.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

**RESPONSE TO PARAGRAPH 88:**

**The allegations contained in Paragraph 88 of the Complaint are legal conclusions for which no response is required.  To the extent a response is required, Defendants deny the allegations contained in Paragraph 88 of the Complaint.**

## CAUSES OF ACTION

### COUNT I
**Declaratory Judgment**

89.    Plaintiff repeats and realleges the allegations set forth in the paragraphs above as if fully set forth herein.

**RESPONSE TO PARAGRAPH 89:**

**Defendants repeat and incorporate their responses to Paragraphs 1 through 88 of the Complaint as though fully set forth herein.**

90.     As set forth in detail above, pursuant to the Charter, Sponsor Agreement, and Defendants' public representations, Defendants have no right, claim or other entitlement to the Termination Fee in connection with the SPAC's dissolution.  The Termination Fee is a corporate asset of the SPAC and rightfully belongs to, and should be distributed to, holders of Class A Public Shares.

**RESPONSE TO PARAGRAPH 90:**

**The allegations contained in Paragraph 90 of the Complaint are legal conclusions for which no response is required.  To the extent a response is required, Defendants deny the allegations contained in Paragraph 90 of the Complaint.**

91.     Plaintiff is entitled to a declaratory judgment that Defendants have no entitlement to the Termination Fee and that the Termination Fee must be distributed equitably to holders of Class A Public Shares.

**RESPONSE TO PARAGRAPH 91:**

**The allegations contained in Paragraph 91 of the Complaint are legal conclusions for which no response is required.  To the extent a response is required, Defendants deny the allegations contained in Paragraph 91 of the Complaint.**

92.     Plaintiff seeks all appropriate injunctive relief necessary to enforce the declaratory judgment entered by this Count.  In the absence of such injunctive relief, stockholders will incur significant monetary and non-monetary harm.

**RESPONSE TO PARAGRAPH 92:**

**Defendants admit that Plaintiff seeks such injunctive relief from this Court as described in Paragraph 92 of the Complaint but deny that Plaintiff is entitled to such relief.  Defendants otherwise deny the allegations contained in Paragraph 92 of the Complaint.**

<u>**COUNT II**</u>
**Claim For Breach Of The Sponsor Agreement**

93.     Plaintiff repeats and realleges all of the allegations set forth in the paragraphs above as if fully set forth herein.

<u>**RESPONSE TO PARAGRAPH 93:**</u>

**Defendants repeat and incorporate their responses to Paragraphs 1 through 92 of the Complaint as though fully set forth herein.**

94.     Each Defendant is a party to the Sponsor Agreement.

<u>**RESPONSE TO PARAGRAPH 94:**</u>

**Defendants admit the allegations in Paragraph 94 of the Complaint.**

95.     Plaintiff and the Class are third-party beneficiaries of the Sponsor Agreement because the contract intended that public stockholders of the SPAC would benefit from its provisions, including the provisions at issue.  Indeed, the Sponsor Agreement was executed in connection with, and enabled, the IPO—*i.e.,* the SPAC's effort to raise funds from public stockholders—and included a range of provisions protecting stockholders, including that Defendants would abide by the Charter and would not misappropriate the SPAC's assets in connection with a dissolution.

<u>**RESPONSE TO PARAGRAPH 95:**</u>

**The allegations contained in Paragraph 95 of the Complaint are legal conclusions for which no response is required.  To the extent a response is required, Defendants deny the allegations contained in Paragraph 95 of the Complaint.**

96.     The Sponsor Agreement does not disclaim third-party beneficiaries and Plaintiff is entitled to enforce the Sponsor Agreement on behalf of itself and the Class.

<u>**RESPONSE TO PARAGRAPH 96:**</u>

**Defendants state that the allegations in Paragraph 96 of the Complaint characterize or describe provisions in the Sponsor Agreement, and Defendants deny any characterization or description that is inconsistent with the terms of that agreement.  Defendants further state that the allegations contained in Paragraph 96 of the Complaint are legal conclusions for**

which no response is required.  To the extent a response is required, Defendants deny the

allegations contained in Paragraph 96 of the Complaint.

97.    The Sponsor Agreement provides that: "The Sponsor and each Insider [*i.e.*, the Defendants], with respect to itself, herself or himself, acknowledges that it, she or he has no right, title, interest or claim of any kind in or to any monies held in the Trust Account or any other asset of the Company as a result of any liquidation of the Company with respect to the Founder Shares held by it, her or him, if any."

## RESPONSE TO PARAGRAPH 97:

Defendants admit that the quoted language in Paragraph 97 of the Complaint is in

the Sponsor Agreement.  Defendants state that the allegations in Paragraph 97 of Complaint

characterize or describe provisions in the Sponsor Agreement, and Defendants deny any

characterization or description that is inconsistent with the terms of that agreement.

98.    The Termination Fee is an amount payable "as a result of [a] liquidation" and thus Defendants disclaimed any entitlement to that asset, which must be distributed to Plaintiff and the Class.

## RESPONSE TO PARAGRAPH 98:

Defendants state that the allegations contained in Paragraph 98 of the Complaint are

legal conclusions for which no response is required.  To the extent a response is required,

Defendants deny the allegations contained in Paragraph 98 of the Complaint.

99.    Defendants' intent to distribute the Termination Fee to themselves is a breach of the Sponsor Agreement.

## RESPONSE TO PARAGRAPH 99:

The allegations contained in Paragraph 99 of the Complaint are legal conclusions for

which no response is required.  To the extent a response is required, Defendants deny the

allegations contained in Paragraph 99 of the Complaint.

100.    Defendants are personally liable to Plaintiff and the Class for the breach alleged herein.

**RESPONSE TO PARAGRAPH 100:**

The allegations contained in Paragraph 100 of the Complaint are legal conclusions for which no response is required.  To the extent a response is required, Defendants deny the allegations contained in Paragraph 100 of the Complaint.

<u>**COUNT III**</u>
**Claim For Breach Of Fiduciary Duty**

101.    Plaintiff repeats and realleges the allegations set forth in the paragraphs above as if fully set forth herein.

**RESPONSE TO PARAGRAPH 101:**

Defendants repeat and reallege their responses to Paragraphs 1 through 100 of the Complaint as though fully set forth herein.  Defendants state that Plaintiff's breach of fiduciary duty claim was dismissed, and Defendants deny any factual allegations set forth in support of that claim.  Defendants otherwise deny the allegations contained in Paragraph 101 of the Complaint.

102.    Defendants owe fiduciary duties to Pioneer stockholders by virtue of their control of the SPAC and their positions as officers and/or directors of the SPAC.

**RESPONSE TO PARAGRAPH 102:**

Defendants state that Plaintiff's breach of fiduciary duty claim was dismissed, and Defendants deny any factual allegations set forth in support of that claim.  Defendants further state that the allegations contained in Paragraph 102 of the Complaint are legal conclusions for which no response is required.  To the extent a response is required, Defendants deny the remaining allegations contained in Paragraph 102 of the Complaint.

103.    Defendants breached their fiduciary duties by intentionally negotiating the Termination, and waiving the SPAC's rights and claims with respect to the Transaction, in exchange for the Termination Fee which Defendants planned to appropriate for themselves as the holders of Class B Founder Shares.

**RESPONSE TO PARAGRAPH 103:**

Defendants state that Plaintiff's breach of fiduciary duty claim was dismissed, and Defendants deny any factual allegations set forth in support of that claim. Defendants further state that the allegations contained in Paragraph 103 of the Complaint are legal conclusions for which no response is required. To the extent a response is required, Defendants deny the remaining allegations contained in Paragraph 103 of the Complaint.

104.    Defendants are each self-interested in the Termination and the distribution of the Termination Fee because each is a holder and/or has a direct financial interest in the Class B Founder Shares. Each participated in this concerted scheme to exchange corporate rights and assets for monetary benefits solely to themselves.

**RESPONSE TO PARAGRAPH 104:**

Defendants state that Plaintiff's breach of fiduciary duty claim was dismissed, and Defendants deny any factual allegations set forth in support of that claim. Defendants further state that the allegations contained in Paragraph 104 of the Complaint are legal conclusions for which no response is required. To the extent a response is required, Defendants deny the remaining allegations contained in Paragraph 104 of the Complaint.

105.    Under the Sponsor Agreement, Defendants waived any entitlement to the SPAC's assets in a dissolution—as a necessary condition to raise public funds in the first place—and therefore there are no circumstances under which Defendants may make a claim on those assets. Indeed, Defendants repeatedly acknowledged through the SPAC's public filings that they would not be entitled to receive any payments if they failed to complete a business combination and would lose their entire investments.

**RESPONSE TO PARAGRAPH 105:**

Defendants state that Plaintiff's breach of fiduciary duty claim was dismissed, and Defendants deny any factual allegations set forth in support of that claim. Defendants further state that the allegations contained in Paragraph 105 of the Complaint are legal

conclusions for which no response is required.   To the extent a response is required, Defendants deny the remaining allegations contained in Paragraph 105 of the Complaint.

106.   Defendants have no legal, equitable or contractual entitlement, or business purpose, or any other legitimate reason, to appropriate the Termination Fee for their own benefit.  They plan to do so solely to advance their own financial interests at the expense of the public stockholders.

**RESPONSE TO PARAGRAPH 106:**

Defendants state that Plaintiff's breach of fiduciary duty claim was dismissed, and Defendants deny any factual allegations set forth in support of that claim.  The allegations contained in the first sentence of Paragraph 106 of the Complaint are legal conclusions for which no response is required.  To the extent a response is required, Defendants deny the remaining allegations contained in Paragraph 106 of the Complaint.

107.   Defendants' actions are not entitled to business judgment protection because of their conflicting financial self-interests, and thus their decision must be weighed under the entire fairness standard.  The contemplated distribution of assets is unfair on its face.

**RESPONSE TO PARAGRAPH 107:**

Defendants state that Plaintiff's breach of fiduciary duty claim was dismissed, and Defendants deny any factual allegations set forth in support of that claim.  The allegations contained in the first sentence of Paragraph 107 of the Complaint are legal conclusions for which no response is required.  To the extent a response is required, Defendants deny the remaining allegations contained in Paragraph 107 of the Complaint.

108.   The Court should order Defendants to equitably distribute the Termination Fee and any other remaining assets of the SPAC to Plaintiff and the Class.

**RESPONSE TO PARAGRAPH 108:**

Defendants state that Plaintiff's breach of fiduciary duty claim was dismissed, and Defendants deny any factual allegations set forth in support of that claim.  The allegations contained in the first sentence of Paragraph 108 of the Complaint are legal conclusions for

which no response is required.  To the extent a response is required, Defendants deny the remaining allegations contained in Paragraph 108 of the Complaint.

109.    In the absence of such injunctive relief, Plaintiff and the Class will incur significant monetary and non-monetary harm.

**RESPONSE TO PARAGRAPH 109:**

**Defendants state that Plaintiff's breach of fiduciary duty claim was dismissed, and Defendants deny any factual allegations set forth in support of that claim.  The allegations contained in the first sentence of Paragraph 109 of the Complaint are legal conclusions for which no response is required.  To the extent a response is required, Defendants deny the remaining allegations contained in Paragraph 109 of the Complaint.**

**COUNT IV**
**Unjust Enrichment**

110.    Plaintiff repeats and realleges all of the allegations set forth in the paragraphs above as if fully set forth herein.

**RESPONSE TO PARAGRAPH 110:**

**Defendants repeat and reallege their responses to Paragraphs 1 through 109 of the Complaint as though fully set forth herein.  Defendants state that Plaintiff's unjust enrichment claim was dismissed, and Defendants deny any factual allegations set forth in support of that claim.  Defendants otherwise deny the allegations contained in Paragraph 110 of the Complaint.**

111.    By their self-interested and wrongful acts, Defendants are attempting to unjustly enrich themselves at the expense of Plaintiff and the Class.

**RESPONSE TO PARAGRAPH 111:**

**Defendants state that Plaintiff's unjust enrichment claim was dismissed, and Defendants deny any factual allegations set forth in support of that claim.  The allegations**

contained in the first sentence of Paragraph 111 of the Complaint are legal conclusions for which no response is required.  To the extent a response is required, Defendants deny the remaining allegations contained in Paragraph 111 of the Complaint.

112.    Defendants have no legal or equitable entitlement to the Termination Fee and are attempting to divert that asset solely for their own unjust personal benefit and to the detriment of public stockholders.

**RESPONSE TO PARAGRAPH 112:**

Defendants state that Plaintiff's unjust enrichment claim was dismissed, and Defendants deny any factual allegations set forth in support of that claim.  The allegations contained in the first sentence of Paragraph 112 of the Complaint are legal conclusions for which no response is required.  To the extent a response is required, Defendants deny the remaining allegations contained in Paragraph 112 of the Complaint.

113.    This Count seeks the same injunctive relief against Defendants described above in Count II.

**RESPONSE TO PARAGRAPH 113:**

Defendants state that Plaintiff's unjust enrichment claim was dismissed, and Defendants deny any factual allegations set forth in support of that claim.  The allegations contained in the first sentence of Paragraph 113 of the Complaint are legal conclusions for which no response is required.  To the extent a response is required, Defendants deny the remaining allegations contained in Paragraph 113 of the Complaint.

114.    Plaintiff and the Class have no adequate remedy at law.

**RESPONSE TO PARAGRAPH 114:**

Defendants state that Plaintiff's unjust enrichment claim was dismissed, and Defendants deny any factual allegations set forth in support of that claim.  The allegations contained in the first sentence of Paragraph 114 of the Complaint are legal conclusions for

which no response is required. To the extent a response is required, Defendants deny the remaining allegations contained in Paragraph 114 of the Complaint.

## **PRAYER FOR RELIEF**

The remaining Paragraphs of the Complaint consist of Plaintiff's prayer for relief, to which no response is required.

## SEPARATE DEFENSES

Without assuming any burden of proof that they would not otherwise bear, Defendants assert the following defenses.  These defenses are pleaded in the alternative and do not constitute an admission that Defendants are in any way liable to Plaintiff, that Plaintiff has been or will be injured or damaged in any way, or that Plaintiff is entitled to any relief whatsoever.  Defendants assert these defenses without prejudice to the denials set forth in their Answer and without admitting any allegations of the Complaint not expressly admitted.

In addition to the defenses below, Defendants reserve and assert all defenses available under any applicable federal or state law.  Defendants presently have insufficient knowledge or information upon which to form a belief as to whether they may have other, as yet unstated, defenses available.  Therefore, Defendants reserve their rights to assert additional defenses, counterclaims, crossclaims and third-party claims in the event that discovery indicates that such additional defenses or claims would be appropriate.

### First Defense

The Complaint fails to state a claim upon which relief can be granted against Defendants.

### Second Defense

Plaintiff's claims are barred, in whole or in part, because Plaintiff and/or the putative class lacks standing to sue for breaches of the Sponsor Agreement, including because neither Plaintiff, nor any other Class A shareholder, is a third-party beneficiary of the Agreement.

### Third Defense

Plaintiff's claims are barred, in whole or in part, because they are speculative, uncertain, and/or contingent, which is in violation of applicable law(s).

### Fourth Defense

Plaintiff's claims are barred, in whole or in part, because Plaintiff has not suffered, and will not suffer, any injury-in-fact or damages as a result of any alleged actions by Defendants.

### Fifth Defense

If and to the extent Plaintiff has been damaged, which Defendants deny, Plaintiff's claims are barred, in whole or in part, because the damages allegedly suffered by Plaintiff are too remote, speculative, and uncertain to be recoverable.

### Sixth Defense

Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands, *in pari delicto*, acquiescence and/or confirmation, and assumption of risk.

### Seventh Defense

Plaintiff's claims are barred, in whole or in part, because Defendants' conduct was justified or privileged under the applicable agreements.

### Eighth Defense

Plaintiff's claims are barred, in whole or in part, by the doctrines of waiver, estoppel, ratification, merger and laches, and by its failure to exercise reasonable care and diligence to mitigate its alleged damages.

### Ninth Defense

Plaintiff's claims are barred, in whole or in part, because any recovery would result in unjust enrichment to Plaintiff.

### Tenth Defense

Plaintiff's claims are barred, in whole or in part, because this action does not satisfy the requirements for certification as a class pursuant to Fed. R. Civ. P. 23.

**<u>Eleventh Defense</u>**

Plaintiff's claims are barred, in whole or in part, because Plaintiff's alleged injuries and damages were not caused by any acts or omissions of Defendants and/or were caused, if at all, by the conduct of Plaintiff and/or third parties.

Dated: New York, New York
      May 15, 2023

Kirkland & Ellis LLP

*/s/ Stefan Atkinson*
Stefan Atkinson
Kyla Jackson
Amanda Lamothe-Cadet
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
United States
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
stefan.atkinson@kirkland.com
kyla.jackson@kirkland.com
amanda.lamothecadet@kirkland.com

*Attorneys for Defendants*