# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FUNICULAR FUNDS, LP, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>PIONEER MERGER CORP., PIONEER MERGER SPONSOR LLC, JONATHAN CHRISTODORO, RICK GERSON, OSCAR SALAZAR, RYAN KHOURY, SCOTT CARPENTER, MATTHEW COREY, MITCHELL CAPLAN, and TODD DAVIS,<br><br>    Defendants. | Civil Action No. 22-10986-JSR<br><br>**REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION** |

**MORRIS KANDINOV LLP**
Aaron T. Morris
Andrew W. Robertson
305 Broadway, 7th Floor
New York, NY 10007
(212) 431-7473

**AFN LAW, PLLC**
Angus F. Ni
506 2nd Ave., Suite 1400
Seattle, WA 98104
(646) 453-7294

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT .......................................................................................................................... 3

I. PUBLIC KNOWLEDGE OF DEFENDANTS'
   INTENTIONS IS IRRELEVANT TO THIS CASE ......................................................... 3

II. DEFENDANTS' TYPICALITY AND ADEQUACY ARGUMENTS FAIL .................... 4

   A. Failure To Mitigate Is Not Even A Defense, Much Less A Unique Defense ......... 4

   B. The Voluntary Payment Doctrine Has No Conceivable Application ...................... 6

   C. The Purported Defenses Do Not Make Funicular Atypical or Inadequate .............. 8

III. COMMON ISSUES OF LAW AND FACT PREDOMINATE ........................................ 9

# TABLE OF AUTHORITIES

**Cases**                                                                                                         **Page(s)**

*Axelrod v. Cities Service Co.*,
   1983 WL 1288 (S.D.NY. Mar. 17, 1983) ............................................................................... 3

*Baffa v. Donaldson, Lufkin & Jenrette Securities Corp.*,
   222 F.3d 52 (2d Cir. 2000) ............................................................................................... 3, 8

*Berwecky v. Bear, Stearns & Co.*,
   197 F.R.D. 65 (S.D.N.Y. 2000) ............................................................................................ 3

*Courtland v. Walston & Co.*,
   340 F. Supp. 1076 (S.D.N.Y. 1972) ..................................................................................... 5

*Deligiannis v. PepsiCo, Inc.*,
   757 F. Supp. 241 (S.D.N.Y. 1991) ....................................................................................... 5

*Dillon v. U-A Columbia Cablevision of Westchester, Inc.*,
   100 N.Y.2d 525 (2003) ......................................................................................................... 7

*Doe 1 v. JPMorgan Chase Bank, N.A.*,
   2023 WL 3945773 (S.D.N.Y. June 12, 2023) .................................................................... 10

*Dupler v. Costco Wholesale Corp.*,
   249 F.R.D. 29 (E.D.N.Y. 2008) ......................................................................................... 8-9

*Emilio v. Sprint Spectrum L.P.*,
   2017 WL 3208535 (S.D.N.Y. July 27, 2017) ....................................................................... 7

*In re Enron Corp.*,
   379 B.R. 425 (S.D.N.Y. 2007) ............................................................................................. 6

*Fort Worth Employees' Retirement Fund v. J.P. Morgan Chase & Co.*,
   301 F.R.D. 116 (S.D.N.Y. 2014) ......................................................................................... 4

*George v. China Automotive Systems, Inc.*,
   2013 WL 3357170 (S.D.N.Y. July 3, 2013) ......................................................................... 3

*Gimbel Brothers, Inc. v. Brook Shopping Centers, Inc.*,
   499 N.Y.S.2d 435 (2d Dept. 1986) ....................................................................................... 7

*Golbar Props., Inc. v. North American Mortgage Investors*,
   431 N.Y.S.2d 820 (1st Dept. 1980) ...................................................................................... 5

*Hamilton v. McPherson*,
  28 N.Y. 72 (1863) ................................................................................................................ 4

*In re Hebron Tech. Co., Ltd. Securities Litigation*,
  2020 WL 5548856 (S.D.N.Y. Sept. 16, 2020) ..................................................................... 3

*Intermec, Inc. v. International Business Machines Corp.*,
  2012 WL 13020095 (W.D. Wash. Feb. 24, 2012) ................................................................ 6

*Meng v. New School*,
  2023 WL 5162181 (S.D.N.Y. Aug. 11, 2023) ....................................................................... 4

*Middle East Banking Co. v. State Street Bank International*,
  821 F.2d 897 (2d Cir. 1987) ............................................................................................. 4-5

*Newman v. RCN Telecom Services., Inc.*,
  238 F.R.D. 57 (S.D.N.Y. 2006) ............................................................................................ 7

*Ogilvy Group Sweden., AB v. Tiger Telematics, Inc.*,
  2006 WL 2473215 (S.D.N.Y. Aug. 28, 2006) ...................................................................... 4

*Parsons v. City of Philadelphia*,
  2014 WL 6973024 (E.D. Pa. Dec. 9, 2014) ......................................................................... 6

*In re Pfizer Inc. Securities Litigation*,
  282 F.R.D. 38 (S.D.N.Y. 2012) ........................................................................................ 4, 8

*Putnam v. Time Warner Cable of S.E. Wisconsin*,
  649 N.W.2d 626 (Wis. 2002) ............................................................................................... 7

*Public Employees' Retirement System of Mississippi v. Merrill Lynch & Co.*,
  277 F.R.D. 97 (S.D.N.Y. 2011) .......................................................................................... 10

*Rapcinsky v. Skinnygirl Cocktails, L.L.C.*,
  2013 WL 93636 (S.D.N.Y. Jan. 9, 2013) ............................................................................. 3

*Ridgeview Partners, LLC v. Entwistle*,
  354 F. Supp. 2d 395 (S.D.N.Y. 2005) .................................................................................. 4

*Rocco v. Nam Tai Electric, Inc.*,
  245 F.R.D. 131 (S.D.N.Y. 2007) .......................................................................................... 3

*Utica Mutual Insurance Co. v. Munich Reinsurance American, Inc.*,
  381 F. Supp. 3d 185 (N.D.N.Y. 2019) .................................................................................. 7

*SM Holding Ltd. v. Star Health Network, Inc.*,
  2017 N.Y. Slip Op. 31309 (N.Y. Sup. Ct. 2017) .................................................................... 6

*Steginsky v. Xcelera, Inc.*,
  2015 WL 1036985 (D. Conn. Mar. 10, 2015) ....................................................................... 3

*Sykes v. Mel S. Harris & Associates LLC*,
  780 F.3d 70 (2d Cir. 2015) ................................................................................................. 10

| **Rules** | **Page(s)** |
|---|---|
| Fed. R. Civ. P. 23(a) ............................................................................................ *passim* | |
| Fed. R. Civ. P. 23(b) ............................................................................................ *passim* | |

**PRELIMINARY STATEMENT**

Defendants' opposition to class certification[1] relies on a single nonsensical premise: that, by purportedly disclosing their planned misappropriation, Defendants have manufactured unique defenses applicable to all or most participants in the public markets. Those who held Pioneer before March 30, 2022 (when Defendants claim they began to disclose their intention to keep the money) are apparently barred from litigating because they should have sold their shares rather than enforce their rights; anyone who acquired Pioneer shares after March 30, 2022 are apparently also barred from litigation because they were on notice of Defendants' anticipated breach. To make this fly, Defendants have mangled beyond recognition two inapplicable contract doctrines—the "duty to mitigate" and the "voluntary payments doctrine"—despite that their own case law demonstrates the doctrines have no application to this case. This case presents quintessential circumstances for class litigation and Plaintiff's motion should be granted.

First, Plaintiff's knowledge of what Defendants said publicly about their intent to abscond with the Termination Fee is utterly irrelevant to this action. This case turns on Defendants' contractual obligations, and their liability arises automatically from the plain language of the Sponsor Agreement. Defendants did not immunize themselves for breach of contract by announcing their intent to misappropriate the assets. Defendants' citations do not support such a theory, and largely consist of inapplicable securities cases where (unlike here) reasonable reliance is an element and matters.

Second, the "duty to mitigate" has no application to the facts of this case. The damages in this case consist of the SPAC's residual assets available for distribution to Class A stockholders,

---

[1] Defendants' Opposition to Plaintiff's Motion for Class Certification (ECF 32) is cited as "Opp. __."

which Defendants decided to keep for themselves. No member of the Class had the ability to alter the amount of that distribution (which Defendants exclusively controlled), and Plaintiff is pursuing the only form of mitigation available: this lawsuit. Defendants appear to suggest that Plaintiff should never have bought shares in the first place, but that would have *done nothing to mitigate* the damages at issue to Class A stockholders.

Third, the "voluntary payment" doctrine likewise has no conceivable application to these facts. Under black letter law, that doctrine applies where: (a) a plaintiff pays money to defendants; (b) willingly; and (c) with full knowledge of that payment being excessive or undue. The point is to prevent belated disputes over payments that the recipient has already utilized in its business. There were no payments by Plaintiff to Defendants in this case, and the doctrine otherwise has no application.

Fourth, even if the defenses above had any merit (they do not), they would not render Plaintiff atypical or inadequate. The defenses are likely to be resolved as a matter of law before trial, and even if they survive to trial, Defendants' evidence is so limited that the defenses will not be a central focus. Moreover, under Defendants' own (incorrect) conception of the defenses, they would have Class-wide application and thus would not render Plaintiff atypical or inadequate.

Finally, Defendants' commonality arguments fail for the same reasons. The central issues at trial will undoubtedly be the effect of the Sponsor Agreement, Defendants' breach and surrounding conduct, and the entitlement of Class A shareholders to the SPAC's assets. Defendants do not dispute that these core issues are common to the Class, and even a single common issue is sufficient to certify a class. Defendants' manufactured defenses will be ancillary at best.

Plaintiff respectfully requests that the Court grant class certification.

**ARGUMENT**

I.  **PUBLIC KNOWLEDGE OF DEFENDANTS'
    INTENTIONS IS IRRELEVANT TO THIS CASE**

Defendants base their arguments on the false premise that the conduct of Plaintiff and the Class, as public stockholders, could have any bearing on their contractual entitlement to the SPAC's residual assets. The record plainly rebuts that contention. It was Defendants who expressly agreed that they have "no right, title, interest or claim of any kind in or to any monies held in the Trust Account or any other asset of the [SPAC]" and would lose their "entire investment" if the SPAC failed to complete a transaction. (¶ 47)

Tellingly, Defendants largely cite federal securities cases where "non-reliance on the market has been held subject to a unique defense." *See In re Hebron Tech. Co., Ltd. Sec. Litig.*, 2020 WL 5548856, at *7 (S.D.N.Y. Sept. 16, 2020); *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 59 (2d Cir. 2000); *Steginsky v. Xcelera, Inc.*, 2015 WL 1036985, at *5 (D. Conn. Mar. 10, 2015) (claims were "subject to the unique defense of non-reliance").[2] But this is a breach of contract case, not a disclosure case under the federal securities laws. "[R]eliance is not

---

[2] *See also, e.g.*, *Axelrod v. Cities Service Co.*, 1983 WL 1288, at *4 (S.D.NY. Mar. 17, 1983) (plaintiffs' investments "raise[] atypical and arcane questions of reliance," and "[d]etermining which of many possible factors [they] relied on will be difficult indeed"); *Rocco v. Nam Tai Elecs., Inc.*, 245 F.R.D. 131, 136 (S.D.N.Y. 2007) (in a securities fraud case, noting that "[the proposed class representative's] post-class purchases indicate, if anything, that he was relying not on the market, but on his own assessment of the value of the stock"); *Berwecky v. Bear, Stearns & Co.*, 197 F.R.D. 65, 69 (S.D.N.Y. 2000) (in a securities fraud case, concluding that finding atypicality where "[the proposed] purchased stock … after the allegations of fraudulent behavior [] became public knowledge."); *George v. China Auto. Sys., Inc.*, 2013 WL 3357170, at *6–7 (S.D.N.Y. July 3, 2013) (in a securities fraud case, concluding that finding atypicality and inadequacy where "[a]s in-and-out traders, the named plaintiffs again subject themselves to unique inquiries regarding their trading patterns and why they made investment decisions, whether the fraud was in fact irrelevant to their purchasing and sale decisions."); *Rapcinsky v. Skinnygirl Cocktails, L.L.C.*, 2013 WL 93636, at *8 (S.D.N.Y. Jan. 9, 2013) (on the breach of warranty claim where reliance is an element, concluding that "[Defendants'] defenses are unique to [the proposed class representative]'s claims and underscore the atypicality of [] alleged reliance.").

a necessary element of a breach of contract claim," *Ogilvy Grp. Swed., AB v. Tiger Telematics, Inc.*, 2006 WL 2473215, at *1-2 (S.D.N.Y. Aug. 28, 2006); *see also Meng v. New School*, 2023 WL 5162181, at *2 (S.D.N.Y. Aug. 11, 2023) (stating elements of breach of contract). Defendants cannot escape their contractual obligations by simply announcing an intent to disregard them.

## II. <u>DEFENDANTS' TYPICALITY AND ADEQUACY ARGUMENTS FAIL</u>

"[T]he unique defense rule 'is intended to protect [the] plaintiff class—not to shield defendants from a potentially meritorious suit.'" *Fort Worth Employees' Ret. Fund v. J.P. Morgan Chase & Co.*, 301 F.R.D. 116, 132-33 (S.D.N.Y. 2014). "Courts rarely deny class certification on the basis of the inadequacy of class representatives, doing so only in flagrant cases, where the putative class representatives display an alarming unfamiliarity with the suit, display an unwillingness to learn about the facts underlying their claims, or are so lacking in credibility that they are likely to harm their case." *In re Pfizer Inc. Sec. Litig.*, 282 F.R.D. 38, 45-51 (S.D.N.Y. 2012).

### A. <u>Failure To Mitigate Is Not Even A Defense, Much Less A Unique Defense</u>

Defendants' own case citations recognize that the duty to mitigate means that the non-breaching party must minimize the *amount of new and additional damages* against the breaching party after the breach. *See Ridgeview Partners, LLC v. Entwistle*, 354 F. Supp. 2d 395, 403 (S.D.N.Y. 2005) ("The social policy behind the duty to mitigate damages stems from the desire to hold defendants liable for harms they cause but not also for damages the plaintiff could have reasonably avoided."); *Middle East Banking Co. v. State Street Bank Int'l*, 821 F.2d 897, 902 (2d Cir. 1987) (applying "the well-established duty to minimize losses upon notice of defendant's breach"); *see also Hamilton v. McPherson*, 28 N.Y. 72, 76-77 (1863) ("The law, for wise reasons, imposes upon a party subject to injury from a breach of contract the active duty of making reasonable exertions to render the injury as light as possible . . . if the injured party, through

negligence or willfulness, allows the damages to be unnecessarily enhanced, the increased loss justly falls upon him."); *Golbar Props., Inc. v. N. Am. Mortg. Investors*, 431 N.Y.S.2d 820, 822 (1st Dept. 1980) ("Any award of damages should be reduced by any unnecessary increase in damages due to the failure of the plaintiff to avoid them.") (Fein, J., concurring).

The damages in this case arise solely from Defendants' decision to take the Termination Fee for themselves; the amount of damages is equal to the Termination Fee proceeds that should have been distributed pro rata to Class A stockholders when the shares were redeemed on January 13, 2023. No action or inaction by Plaintiff or any member of the Class could have increased or decreased that amount, which was entirely under Defendants' control.

Defendants focus on purchases by Class members after Defendants purportedly announced their intention to keep the Termination Fee. But those transactions had no effect on the amount of damages that Defendants would owe as a result of their breach, nor did they affect the entitlement of Class A shares to receive the Termination Fee proceeds upon redemption. At most, they impacted the pro rata allocation of those proceeds among Class A shareholders, which has no bearing on Defendants' liability or class certification.

Defendants' citations are distinguishable on their face because each involved circumstances (unlike in this case) where the plaintiff's action or inaction directly resulted in increased damages attributable to defendants. *See, e.g.*, *Courtland v. Walston & Co.*, 340 F. Supp. 1076, 1079-80 (S.D.N.Y. 1972) (plaintiff failed to purchase securities elsewhere after broker refused to process the trades); *Middle East Banking Co.*, 821 F.2d at 902 (reducing recovery by amount of withdrawals made after plaintiff was aware transactions were unauthorized); *Deligiannis v. PepsiCo, Inc.*, 757 F. Supp. 241, 259 (S.D.N.Y. 1991) (plaintiff failed to accept reasonable offers from alternative buyers causing its own "financial decline"). Defendants do not

identify even one case where a failure to mitigate defense was applied to a fixed liability that was not altered by, or attributable to, the plaintiff's action or inaction.

Defendants' theory of mitigation is unsupported and simply illogical. On one hand, it would strip millions of Class A shares exchanged in the market *after* March 30, 2022 of their distribution rights, despite black letter law that "the assignee stands in the shoes of the assignor, possessing the same rights and remaining subject to the same defenses as the assignor." *In re Enron Corp.*, 379 B.R. 425, 436 (S.D.N.Y. 2007); *see also SM Holding Ltd. v. Star Health Network, Inc.*, 2017 N.Y. Slip Op. 31309, at 7 (N.Y. Sup. Ct. 2017) (same). On the other hand, it would suggest that Class A shareholders who held *before* March 30, 2022, but failed to sell their shares after Defendants' purported disclosures, likewise failed to mitigate their damages and have no distribution rights. The duty to mitigate may be, in some cases, a shield to reduce damages, but never a sword to vanquish legitimate liability in its entirety.

### B. The Voluntary Payment Doctrine Has No Conceivable Application

Equally groundless and far-fetched is Defendants' invocation of the voluntary payment doctrine. As an initial matter, the voluntary payment doctrine is an affirmative defense that must be plead in the defendant's responsive pleading, else it is waived. *See, e.g.*, *Intermec, Inc. v. Int'l Bus. Machines Corp.*, 2012 WL 13020095, at *1 (W.D. Wash. Feb. 24, 2012); *Parsons v. City of Philadelphia*, 2014 WL 6973024, at *2 (E.D. Pa. Dec. 9, 2014). Here, Defendants plead several affirmative defenses, but they did not plead the voluntary payment doctrine. *See* Answer to Am. Compl. (Dkt. No. 23) at 38-40. As a result, Defendants waived the voluntary payment doctrine defense, and they cannot rely on it to defeat class certification.

In any event, as with Defendants' mitigation of damages defense, the voluntary payment doctrine cannot be contorted to fit this case. The doctrine "bars recovery of payments voluntarily made with full knowledge of the facts, and in absence of fraud or mistake of material fact or law."

Opp. at 14 (quotations omitted). As illustrated by Defendants' cases, courts typically apply the doctrine where a party voluntarily makes payments, such as service charges or late fees, but later seeks to recover those payments from the recipient. *See, e.g.*, *Newman v. RCN Telecom Servs., Inc.*, 238 F.R.D. 57, 66 (S.D.N.Y. 2006) (internet service fees); *Emilio v. Sprint Spectrum L.P.*, 2017 WL 3208535, at *1-*3 (S.D.N.Y. July 27, 2017) (cellular phone service fees and surcharges); *Dillon v. U-A Columbia Cablevision of Westchester, Inc.*, 100 N.Y.2d 525, 526 (2003) (late fees for cable television service); *Utica Mut. Ins. Co. v. Munich Reinsurance Am., Inc.*, 381 F. Supp. 3d 185, 222 (N.D.N.Y. 2019) (insurance premiums); *Gimbel Bros., Inc. v. Brook Shopping Centers, Inc.*, 499 N.Y.S.2d 435, 438 (2d Dept. 1986) (lease payments).

Here, in contrast, Plaintiff does not seek to recover any payments it or any member of the Proposed Class made to Defendants, voluntarily or otherwise. Defendants seemingly suggest that the "payment" giving rise to the voluntary payment defense is the purchase price of Plaintiff's Class A shares, but Plaintiff did not make that payment *to Defendants*. Plaintiff purchased its Class A shares on the open market from the prior holders of the shares. The recipients of the purchase price are the former shareholders, not any Defendant. Nor does Plaintiff seek to recover the purchase price of the Class A shares through this litigation (on behalf of itself or any Class member). Instead, Plaintiff seeks to recover the Termination Fee proceeds Class A shareholders should have received if Defendants had abided by their contractual obligations. The doctrine simply has no application here.[3]

---

[3] Indeed, the voluntary payment doctrine was developed to promote economic certainty and prompt dispute resolution by discouraging parties from belatedly challenging a voluntary payment after the receiving party had utilized the funds in their business. *See Gimbel Brothers*, 499 N.Y.S.2d at 439; *see also Putnam v. Time Warner Cable of S.E. Wisconsin*, 649 N.W.2d 626, 633 (Wis. 2002) (discussing origins and purpose of doctrine). Application of the doctrine here would do nothing to further that purpose because Defendants received no payments, did not rely on

7

## C. The Purported Defenses Do Not Make Funicular Atypical or Inadequate

"[A]dequacy under Rule 23(a) requires only that . . . the proposed class representatives' interests not be antagonistic to those of other class members." *Pfizer*, 282 F.R.D. at 50. Defendants fail to identify any antagonism between Funicular and the other Class members, nor do they attempt to explain how the mitigation of damages or voluntary payment defenses, even if they had merit, would create any such antagonism.

Moreover, supposed unique defenses do not render a proposed lead plaintiff atypical as long as the plaintiff "alleges injury resulting from the same course of conduct that injured the absent class members and [asserts claims] based on the same theories of recovery." *Id.* at 47 (quoting *In re Crazy Eddie Sec. Litig.*, 135 F.R.D. 39, 40 (E.D.N.Y. 1991)). As Defendants' cases acknowledge, a unique defense cannot defeat class certification unless it "threaten[s] to become the focus of the litigation." *Baffa*, 222 F.3d at 52; *see also Dupler v. Costco Wholesale Corp.*, 249 F.R.D. 29, 39 (E.D.N.Y. 2008) (rejecting argument that voluntary payment doctrine defense did not render plaintiff's claim atypical where "her claims are based on the same legal theory as the Proposed Class and arise from the same course of conduct or practice").

Here, Plaintiff's claims are typical of the Proposed Class: the claims all arise from Defendants' intent to take the Termination Fee for themselves in breach of their contractual obligations, and Plaintiff seeks to recover the Termination Fee proceeds on behalf of all Class A shareholders. The focus of the litigation will be on (a) the terms and meaning of the Letter Agreement in which Defendants disclaimed any right to the assets of the SPAC; and (b) Defendants' efforts to secure the Termination Fee for themselves.

---

Plaintiff or the Class in any way, and Plaintiff's challenge to Defendants' malfeasance was not belated and has not caused any prejudice.

8

While Defendants apparently plan to raise "failure to mitigate" and "voluntary payment" defenses to distract from their own misconduct, those defenses will not become a focus of this proceeding. First, both are likely to be dispensed with easily as a matter of law for the reasons discussed above. Second, even if the defenses survive to trial, they will require little attention or trial time. The defenses are based entirely on a handful of "disclosures" in the SPAC's SEC filings, and a few snippets of testimony by Plaintiff's principal, which can be presented succinctly and without unduly distracting from the central issues of Defendants' breach of their contractual duties. Finally, Defendants appear to assert (incorrectly) that the defenses have general application to all or a large portion of the Class, and thus by Defendants' own conception they are not unique to Plaintiff and do not render it atypical or inadequate. *See Dupler*, 249 F.R.D. at 39 (E.D.N.Y. 2008) (a defense that would apply to "most if not all of the class members' claims" is not unique).

Defendants undoubtedly hope that litigating their defenses will "drain [Plaintiff's] energies and resources [and] damage their ability to represent the proposed class" (Opp. at 10), but Funicular and its counsel have already proven that they will invest the time and resources to zealously represent the interests of the Class through trial. Defendants' professed concern for Plaintiff's "effectiveness" and "ability to represent the proposed class" must be viewed with skepticism, given that their preference is that no claims are pursued at all. *Id.*

### III. COMMON ISSUES OF LAW AND FACT PREDOMINATE

In contesting commonality, Defendants argue that hundreds, if not thousands, of members of the Proposed Class who purchased after March 2022 are subject to the same "unique" defenses as Plaintiff. For all the reasons discussed above, Defendants' liability for breach of contract has nothing to do with their purported public statements, and neither the duty to mitigate nor the voluntary payment doctrine has any application here.

9

Indeed, even if the defenses had merit, the mere possibility that there may be *some* individualized issues does not defeat commonality. "Even a single common question of law or fact may suffice to satisfy the commonality requirement." *Pub. Employees' Ret. Sys. of Mississippi v. Merrill Lynch & Co.*, 277 F.R.D. 97, 105 (S.D.N.Y. 2011); *see also Doe 1 v. JPMorgan Chase Bank, N.A.*, 2023 WL 3945773, at *4 (S.D.N.Y. June 12, 2023). There can be no serious dispute that the class claims in this action involve common issues, such as the meaning of the Letter Agreement, whether Defendants breached their duties under that agreement, and the entitlement of Class A shareholders to the SPAC's residual assets. These core issues are common to *all* Class A shareholders, whenever they purchased their stock, and they predominate over any individualized issues that Defendants believe they have manufactured. At best, Defendants' purported defenses pertain to the calculation of "individualized damage issues," which courts consistently recognize do not defeat class certification where "when liability can [still] be determined on a class-wide basis." *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 81 (2d Cir. 2015).

At bottom, Defendants' commonality argument is merely an effort to reduce their potential liability in the class case by excluding thousands of open market trades after their self-serving and misleading disclosures beginning on March 30, 2022.[4] But excluding those investors, who are otherwise entitled to a pro rata share of the assets in dispute, and requiring them to bring individual actions to make a recovery, will create enormous complexity and administrative difficulty. The Court should resolve this dispute now as to all investors with claims on this common asset.

---

[4] Aggregate trading volume after March 30, 2022 exceeded 34 million shares.

Dated: October 18, 2023		Respectfully submitted,

By: /s/ Aaron T. Morris

**MORRIS KANDINOV LLP**
Aaron T. Morris
Andrew W. Robertson
305 Broadway, 7th Floor
New York, NY 10007
(212) 431-7473
aaron@moka.law
andrew@moka.law

**AFN LAW, PLLC**
Angus F. Ni
506 2nd Ave., Suite 1400
Seattle, WA 98104
(646) 453-7294
angus@afnlegal.com

*Attorneys for Plaintiff*