UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------x

FUNICULAR FUNDS, LP,

       Plaintiff,

  -v-

PIONEER MERGER CORP., et al.,

       Defendants.

22-cv-10986 (JSR)

OPINION

JED S. RAKOFF, U.S.D.J.:

    Plaintiff Funicular Funds, LP ("Funicular") purchased Class A public shares of defendant Pioneer Merger Corp. ("Pioneer"), a special purpose acquisition company ("SPAC") organized under Cayman Islands law. ECF No. 9 ("Am. Compl."), ¶¶ 2, 19-20. This putative class action concerns whether Pioneer's insiders, also named as defendants, misappropriated a fee that Funicular alleges should have been doled out to public shareholders like itself. Funicular's Amended Complaint brings three causes of action that remained live before May 1, 2023: declaratory judgment (Count I), breach of contract (Count II), and breach of fiduciary duty (Count III).[1] Id. ¶¶ 89-109.

    On March 6, 2023, defendants moved to dismiss the Amended Complaint or otherwise stay this action for litigation relating to Pioneer's winding-up process in the Cayman Islands. See ECF No. 13 ("Mem."). Funicular filed opposition papers on March 20, 2023, see ECF

---

[1] The Amended Complaint also brought a fourth claim, for unjust enrichment, which Funicular has since agreed to withdraw. See Am. Compl. ¶¶ 110-14; ECF No. 15, at 4.

1

No. 15 ("Opp."), and defendants replied on March 27, 2023, see ECF No. 18 ("Reply"). After hearing oral argument on the motion on April 17, 2023, the Court issued a "bottom-line order" on May 1, 2023, denying the motion to dismiss Counts I and II but dismissing Count III without prejudice to pursuit of that claim in the Cayman Islands. See ECF No. 22. In that bottom-line order, the Court also dismissed Count IV without prejudice, because Funicular had agreed with defendants to withdraw that claim for the time being. Finally, the Court declined to stay this action for the pending Cayman Islands litigation. Id. This Opinion states the reasons for the bottom-line order.

I. Factual and Procedural Background

Like other SPACs, Pioneer was structured as a "blank check company." Id. ¶ 20. In other words, it was formed and managed by a Sponsor -- in this case, another Cayman Islands company -- "for the purpose of completing a business combination." Id. ¶¶ 20-21. The idea was that Pioneer, funded both by an initial public offering ("IPO") that raised $402.5 million from issuing and selling 40.25 million shares of Class A common stock and by an earlier private placement that "issued millions of Shares of Class B common stock ('Founder Shares') at less than a penny per share to the Sponsor and the SPAC's officers and directors," would search for a preexisting target company to acquire in the hopes of profit for its shareholders. Id. ¶¶ 3-5.

Those efforts were governed by a Sponsor Agreement between Pioneer, its Sponsor, and the Sponsor's insiders who managed Pioneer.

2

Id. ¶ 43; see ECF No. 14, Ex. 2 ("Sponsor Agreement").[2] If Pioneer completed a business combination within two years of its IPO, which occurred in January 2021, the "Founder Shares would convert to Public Shares and be worth more than $100 million." Am. Compl. ¶¶ 5-6. If not, Pioneer's "assets," held until then in a trust account, "would be returned to investors" (the Class A public shareholders) and "the Founder Shares . . . would become worthless." Id. ¶ 6. The Sponsor Agreement further provided that "[t]he Sponsor and each Insider . . . has no right, title, interest or claim of any kind in or to any monies held in the Trust Account or any other asset of [Pioneer] as a result of any liquidation." Sponsor Agreement § 4(b).

In May 2021, Pioneer announced an acquisition target, Acorns Grow Inc. ("Acorn"). Am. Compl. ¶ 9. But Acorns found a better deal. Id. ¶¶ 10-13. In January 2022, defendants reported that Pioneer and Acorns had mutually terminated the proposed business combination. Id. ¶ 12. Under an agreement that defendants had worked out with Acorns, Acorns paid a termination fee of $17.5 million upfront, to be followed by an additional $15 million if Pioneer had not found a replacement acquisition target before January 2023. Id. ¶ 12. Defendants further disclosed that the termination fee would be held outside of Pioneer's trust account. Id.

---

[2] The parties agree that the Sponsor Agreement is integral to the Amended Complaint and is thus properly considered on a motion to dismiss. See ECF No. 15, at 4 n.1; ECF No. 13, at 4; DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010).

In December 2022, defendants announced that Pioneer had failed to find a suitable target and would thus dissolve. Id. ¶ 14. As it had agreed, Acorns paid the remaining $15 million of the termination fee, for a total of $32.5 million. Id. Rather than distribute the $32.5 million to Pioneer's public shareholders alongside those shareholders' respective portions of the trust account, defendants stated that all Pioneer assets outside the trust account "would be distributed solely to Defendants as holders of the Class B Founder Shares." Id. ¶ 16. Funicular was "the largest disclosed holder of Class A Public Shares" before defendants redeemed the Class A shares for the contents of the trust account. Id. ¶¶ 17, 19.

Believing that it and other Class A shareholders were also entitled to the $32.5 million termination fee under the Sponsor Agreement, Funicular filed this putative class action on December 30, 2022. See ECF No. 1. As the Amended Complaint points out, see Am. Compl. ¶ 33, the Sponsor Agreement contains a forum-selection clause that lists "the courts of New York City" as the "exclusive jurisdiction and venue" for claims relating to the Agreement, Sponsor Agreement § 17. The clause also provides that the Agreement "shall be governed by and construed and enforced in accordance with the laws of the State of New York." Id.

On January 12, 2023, Funicular separately filed a petition in a Cayman Islands court, seeking the appointment of independent liquidators to facilitate Pioneer's winding-up process. Mem. 5-6; Opp.

9-10; ECF No. 14, Ex. 4.[3] Funicular then filed the Amended Complaint here on January 20, 2023. See Am. Compl. Defendants' motion to dismiss the Amended Complaint invokes Federal Rule of Civil Procedure 12(b)(6), the doctrine of forum non conveniens, and the doctrine of international comity abstention. See Mem. at 6-24.

II. Legal Standard

A. Rule 12(b)(6)

"To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).[4] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

B. Forum Non Conveniens

"[W]hen a defendant moves to dismiss on the ground of forum non conveniens, courts assess: (1) the deference to be accorded the plaintiff's choice of forum; (2) the adequacy of the alternative forum

---

[3] Both Funicular and defendants make ample reference to the Cayman Islands litigation in their briefing before this Court, and defendants have included Funicular's Cayman Islands petition as an exhibit in support of the motion to dismiss. See ECF No. 14, Ex. 4. Neither side contends that it is improper for the Court to take judicial notice of the Cayman Islands petition. Indeed, "[a] court may take judicial notice of a document filed in another court . . . to establish the fact of such litigation and related filings." Global Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 157 (2d Cir. 2006).

[4] Unless otherwise indicated, all alterations, citations, and internal quotation marks have been omitted here and elsewhere.

proposed by the defendants; and (3) the balance between the private and public interests implicated in the choice of forum." Fasano v. Yu Yu, 921 F.3d 333, 335 (2d Cir. 2019). "Where the parties have contractually selected a forum, however, the forum selection clause substantially modifies the forum non conveniens doctrine." Id.

"[A] district court must consider three factors in determining whether the presumption of enforceability applies to a forum selection clause: whether (1) the clause was reasonably communicated to the party resisting its enforcement; (2) the clause is mandatory or permissive; and (3) the claims and parties to the dispute are subject to the clause." Id. "If the district court concludes that the presumption applies, it must then consider a fourth factor -- whether the presumption of enforceability has been properly rebutted by a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching." Id. at 335-36. If the presumption holds, the court "must deem the private-interest factors to weigh entirely in favor of the preselected forum." Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex., 571 U.S. 49, 64 (2013). Although the "district court may consider arguments about public-interest factors, . . . the practical result is that forum-selection clauses should control except in unusual cases." Id.

C. International Comity Abstention

International comity abstention "is not an imperative obligation of courts but rather is a discretionary rule of practice, convenience,

6

and expediency." Royal & Sun Alliance Ins. Co. v. Century Int'l Arms, Inc., 466 F.3d 88, 92 (2d Cir. 2006). "Generally, concurrent jurisdiction in United States courts and the courts of a foreign sovereign does not result in conflict." Id. "The mere existence of parallel foreign proceedings does not negate the district courts' virtually unflagging obligation to exercise the jurisdiction given them." Id. (ellipses omitted).

The Second Circuit has "recognized one discrete category of foreign litigation that generally requires the dismissal of parallel district court actions -- foreign bankruptcy proceedings." Id. at 92-93. "A foreign nation's interest in the equitable and orderly distribution of a debtor's property is an interest deserving of particular respect and deference, and accordingly" the Second Circuit has "followed the general practice of American courts and regularly deferred to such actions." Id. at 93.

"Outside the bankruptcy context, . . . only the clearest of justifications will warrant dismissal." Id. "The task of a district court evaluating a request for dismissal based on a parallel foreign proceeding is not to articulate a justification for the exercise of jurisdiction, but rather to determine whether exceptional circumstances exist that justify the surrender of that jurisdiction." Id. "The exceptional circumstances that would support such a surrender must, of course, raise considerations which are not generally present as a result of parallel litigation, otherwise the routine would be considered exceptional, and a district court's unflagging obligation

7

to exercise its jurisdiction would become merely a polite request." Id. "[A] district court should examine the totality of the circumstances to determine whether the specific facts before it are sufficiently exceptional to justify abstention." Id. at 94.

III. Analysis

Because they are antecedent to the merits, the Court begins with defendants' arguments for dismissal under forum non conveniens and international comity. See Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 431-32 (2007). Under those doctrines, the Court dismisses Count III, the claim for breach of fiduciary duty, without prejudice, but declines to dismiss Counts I and II, which allege breach of contract (Count II) and seek a related declaratory judgment (Count I).

A. Forum Non Conveniens

Defendants' headline argument is that the Court should dismiss the entire action under forum non conveniens. Defendants mobilize the traditional forum non conveniens analysis laid out by the Supreme Court in Piper Aircraft Co. v. Reyno, 454 U.S. 235 (1981) and by the Second Circuit in Iragorri v. United Technologies Corp., 274 F.3d 65 (2d Cir. 2001) (en banc). But, as Funicular points out, defendants' memorandum of law in support of the motion to dismiss fails to cite or describe the modified forum non conveniens framework that applies when there is a potentially applicable forum selection clause. See Atl. Marine, 571 U.S. at 62-65; Fasano, 921 F.3d at 335.

The Court must thus first determine whether the Sponsor Agreement's forum selection clause is presumptively enforceable. The clause states that "any action . . . arising out of, or relating in any way to, [the Sponsor] Agreement shall be brought and enforced in the courts of New York City" and that defendants "waive any objection to such exclusive jurisdiction and venue or [any objection] that such courts represent an inconvenient forum." Sponsor Agreement § 17. Defendants do not dispute that the Sponsor Agreement's forum selection provision "was reasonably communicated to" them or that "the clause is mandatory." Fasano, 921 F.3d at 335. Instead, they contest that "the claims and parties to the dispute are subject to the clause," id., because Funicular "is not itself a party to the Sponsor Agreement." Reply at 3.

All agree that Funicular is not a signatory of the Sponsor Agreement, but that is not the end of the matter. "In certain circumstances, the presumption of enforceability" of a forum selection clause "may apply to non-signatories." Fasano, 921 F.3d at 337. Funicular's claims for breach of contract, and for declaratory judgment of the same breach, are such a circumstance here because Funicular -- a public shareholder of Pioneer, itself a blank check company that existed for the sole purpose of completing a business combination for

its shareholders' profit -- is a third-party beneficiary of the Sponsor Agreement.[5]

"The third-party beneficiary concept arises from the notion that it is just and practical to permit the person for whose benefit the contract is made to enforce it against one whose duty it is to pay or perform." Fourth Ocean Putnam Corp. v. Interstate Wrecking Co., Inc., 485 N.E.2d 208, 211 (N.Y. 1985). If "the circumstances indicate that the promisee intends to give the [purported] beneficiary the benefit of the promised performance," id. at 212 (quoting Restatement (Second) of Contracts § 302), then that purported beneficiary may bring a claim under the contract at issue so long as "recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties," Restatement (Second) of Contracts § 302(1). Defendants misstate New York law by contending "that a contract does not permit third-party enforcement absent express contractual language providing for third-party beneficiaries." Reply at 6. The case defendants cite for that proposition specifically explains that "express contractual language stating that the contracting parties intended to benefit a third party" is only required "[w]ith respect to construction contracts." Dormitory Auth. of N.Y. v. Samson Constr. Co., 94 N.E.3d 456, 460 (N.Y. 2018); see id. ("This rule reflects the particular nature of construction contracts.").

---

[5] The parties agree that the Sponsor Agreement is "governed by and construed and enforced in accordance with the laws of the State of New York." Sponsor Agreement § 17.

10

Defendants insist that "the promised performance was intended to benefit the corporation, not the shareholders." Reply at 8. It is true that, in general under New York law, "shareholders of a corporation or partnership are not third-party beneficiaries of contracts entered into by that corporation or partnership." Matana v. Merkin, 989 F. Supp. 2d 313, 319 (S.D.N.Y. 2013). But the Sponsor Agreement is not a typical contract that a corporation enters, for instance, in service of its own business operations. It is an agreement between a SPAC -- a blank check company with no affiliation to any operating company, no employees, no personnel, and no interests other than those of its shareholders -- and its Sponsor and the insiders of the Sponsor. It is not even clear what it would mean for the Agreement to benefit the SPAC, as opposed to its shareholders.

Among Pioneer's shareholders were those who held Class A public shares and those who held Class B Founder Shares. The latter category consisted of the insiders of the Sponsor, the very same people who managed Pioneer in its search for an acquisition target. Defendants have identified no basis in law or logic to view the Class B shareholders as the only beneficiaries of an agreement between themselves and Pioneer itself. Class A shareholders -- who stood to profit from successful management by the Sponsor in closing a business combination with a target company -- must also have been intended beneficiaries of the Sponsor Agreement.

Indeed, the terms of the Sponsor Agreement plainly obligate the Sponsor and its insiders to take certain actions for the benefit of

11

Class A shareholders. For instance, "[t]he Sponsor and each Insider . . . agree[d]" that if Pioneer did not complete a business combination within two years of its IPO, "the Sponsor and each Insider shall take all reasonable steps to . . . redeem 100% of the Public Shares, at a per-share price . . . equal to the aggregate amount then on deposit in the Trust Account, including interest earned on the funds held in the Trust Account . . . divided by the number of then outstanding Public Shares." Sponsor Agreement § 4(a).

Moreover, the very provision that Funicular has sued to enforce states that "[t]he Sponsor and each Insider . . . has no right, title, interest or claim of any kind in or to any monies held in the Trust Account or any other asset of the Company as a result of any liquidation of the Company." Id. § 4(b). In other words, the Sponsor Agreement obligated defendants to maintain the trust account and other assets of Pioneer, even though defendants themselves had no right to those assets upon liquidation. And because the Class B Founder Shares expired if no business combination took place, only the class A shareholders were left as recipients and beneficiaries of the trust account "or any other asset" of Pioneer. Id. The Court thus predicts, as it must do when sitting in diversity, that New York's highest court would hold that Funicular and other Class A public shareholders were intended third-party beneficiaries of the Sponsor Agreement. See Lelchook v. Société Générale de Banque au Liban SAL, 67 F.4th 69, 76 (2d Cir. 2023).

Because Funicular is a third-party beneficiary of the Sponsor Agreement, and defendants are parties to the Agreement, the Court has no trouble concluding that the Sponsor Agreement's forum selection clause is presumptively enforceable for Counts I and II. See Fasano, 921 F.3d at 335. Indeed, Count II brings a claim for breach of the Sponsor Agreement and Count I brings a claim for declaratory judgment of that same breach.[6] And defendants make no argument that the forum selection clause is not enforceable for those claims even if Funicular is a third-party beneficiary. Nor do defendants argue that "the presumption of enforceability has been properly rebutted by a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching." Fasano, 921 F.3d at 336. In fact, at oral argument, defense counsel told the Court "[i]ts argument is not that New York is an unfair place to be for the defendants in this case." ECF No. 20, at 19. Instead, defendants argue only that the forum selection clause does not govern because Funicular is not a third-party beneficiary to the Sponsor Agreement, and that under the traditional forum non conveniens analysis, this action should be in the Cayman Islands. Because the Court has already rejected defendants' starting premise, and defendants have provided no basis to conclude that this is an

---

[6] The Court pauses to emphasize that "[d]eclaratory judgments," like injunctions, "are remedies, not causes of action." Chiste v. Hotels.com L.P., 756 F. Supp. 2d 382, 406 (S.D.N.Y. 2010). That said, defendants have not moved to dismiss Count I on that basis, nor do they argue that Funicular would not be entitled to a declaratory judgment as a remedy for the breach of contract alleged in Count II.

"unusual case[]" in which a valid, fair, and reasonable forum selection clause should not govern, Atl. Marine, 571 U.S. at 51, the Court denies the motion to dismiss Counts I and II under forum non conveniens.

The analysis differs, however, for the claim for breach of fiduciary duty, which is distinct from breach of contract. See Am. Compl. ¶¶ 101-09. Indeed, Funicular brought that claim under Cayman Islands law, not New York law, and makes no attempt to explain why it is covered by the forum selection clause in the Sponsor Agreement. See Opp. at 12-16, 22-25. The breach of fiduciary duty claim must thus be assessed under the traditional forum non conveniens analysis, rather than the modified framework that applies "[w]here the parties have contractually selected a forum." Fasano, 921 F.3d at 335. The Court need not reach whether to dismiss that claim under forum non conveniens, however, because -- as the Court next explains -- the Court dismisses the fiduciary duty claim without prejudice under the doctrine of international comity abstention.

B. International Comity Abstention

Defendants also argue that this action should be dismissed under the doctrine of international comity abstention because of the pending winding-up proceeding for Pioneer, a Cayman Islands company, in Cayman Islands court. "The mere existence of parallel foreign proceedings does not negate" the Court's "virtually unflagging obligation to exercise the jurisdiction" it possesses over this action. Royal & Sun Alliance Ins. Co., 466 F.3d at 92. But the Second Circuit has held that "one discrete category of foreign litigation . . . generally

14

requires the dismissal of parallel district court actions -- foreign bankruptcy proceedings." Id. at 92-93 (emphasis added). That is so because "[a] foreign nation's interest in the equitable and orderly distribution of a debtor's property is an interest deserving of particular respect and deference." Id. at 93.

"Outside the bankruptcy context," the Court must "examine the totality of the circumstances" in assessing a motion for dismissal under international comity. Id. at 93-94. Those circumstances may include "the similarity of the parties, the similarity of the issues, the order in which the actions were filed, the adequacy of the alternate forum, the potential prejudice to either party, the convenience of the parties, the connection between the litigation and the United States, and the connection between the litigation and the foreign jurisdiction." Id. at 94. Ultimately, the Court's analysis "should be guided by the principles upon which international comity is based: the proper respect for litigation in and the courts of a sovereign nation, fairness to litigants, and judicial efficiency." Id.

The Court agrees with defendants that the ongoing winding-up proceeding for Pioneer in the Cayman Islands is sufficiently analogous to "foreign bankruptcy proceedings" to warrant dismissal of the fiduciary breach claim under international comity. Id. at 93. Funicular's petition before the Cayman court, which it filed within weeks of beginning litigation before this Court, seeks the appointment of two joint official liquidators to oversee Pioneer's winding up and dissolution of its assets. See ECF No. 14, Ex. 4. The petition argues

that such an appointment is "just and equitable" under Cayman law because, inter alia, Pioneer's managers -- the Sponsor and its insiders who are defendants in this action -- engaged in "serious breaches of their duties," under Cayman law, as fiduciaries. Id.

Although Funicular contends that "[t]he Cayman winding up proceeding is not a lawsuit and [Funicular] does not assert the 'claims' set forth in this action for a Cayman court's resolution," Opp. at 16 n.5, Funicular does not contest that "[t]he liquidators could also resolve [the] breach of fiduciary duty" claim and that any such claim may affect the distribution of Pioneer's assets, Mem. at 13. Because the Cayman Islands' "interest in the equitable and orderly distribution of a debtor's property is an interest deserving of particular respect and deference," Royal & Sun Alliance Ins. Co., 466 F.3d at 93, the Court dismisses Count III, the claim for breach of fiduciary duty, without prejudice for Funicular or the joint liquidators to assert it in the Cayman Islands.

The Cayman proceeding is not, however, a basis to also dismiss the contract claim under international comity. Unlike the fiduciary duty claim, the contract claim and the related claim for declaratory judgment involve only questions of New York law. See Sponsor Agreement § 17. This Court is likely to resolve those questions before a Cayman court does so. Funicular does not meaningfully dispute that it would be more convenient and efficient for the joint liquidators or a Cayman court to look to this Court for the answers to those questions, rather than for those adjudicators to decide what would, for them, be a

16

question of the local law of a foreign nation. See Opp. at 16 n.5. The "totality of the circumstances" thus do not present "exceptional circumstances" that support surrendering this Court's "unflagging obligation to exercise its jurisdiction" over Counts I and II of the Amended Complaint, for breach of contract and declaratory judgment. Royal & Sun Alliance Ins. Co., 466 F.3d at 93. Nor is there reason to stay this action. To the contrary, efficient resolution of the contract claims in this Court will only benefit the Cayman proceedings.

D. Rule 12(b)(6)

The Court does not address defendants' alternative argument for dismissal of Count III, the claim for breach of fiduciary duty, under Rule 12(b)(6) because the Court has dismissed that claim under the doctrine of international comity.[7] Similarly, the Court does not pass upon defendants' argument for dismissal of the unjust enrichment claim

---

[7] A word about terminology is in order, however. Defendants argue that Funicular lacks "standing" for its breach of fiduciary duty claim because "[u]nder Cayman law, directors of Cayman Island companies generally owe fiduciary duties of loyalty, honesty and good faith to the company, not to shareholders." Mem. at 19. Despite invoking the term "standing," that argument does not implicate the requirements for standing under Article III or otherwise concern the Court's subject matter jurisdiction. Rather, an argument that a defendant did not owe a duty to the plaintiff is merely an argument that one of the elements of the cause of action, breach of fiduciary duty, is not satisfied. And "[i]t is firmly established . . . that the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, i.e., the courts' statutory or constitutional power to adjudicate the case." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998). Instead, that absence would be grounds to dismiss the claim under Rule 12(b)(6). See id. at 89-95. Moreover, even if defendants' argument were truly jurisdictional, the Court is free to dismiss under forum non conveniens or international comity without considering other threshold arguments, even jurisdictional arguments, for dismissal. See Sinochem, 549 U.S. at 431-32.

under Rule 12(b)(6), because both parties have consented to dismissal without prejudice of that claim. The Court thus dismisses Count IV, for unjust enrichment, without prejudice.

The Court also denies defendants' motion to dismiss Counts I and II -- for breach of contract and declaratory judgment for that breach -- under Rule 12(b)(6). Defendants merely reprise their argument that Funicular is not a third-party beneficiary of the Sponsor Agreement, and contend that, as a result, Funicular has not stated a claim for Counts I and II. But, as Section III.A, supra, explains, the Court holds that Funicular is indeed a third-party beneficiary of the Sponsor Agreement and may thus sue to enforce it.

IV. Conclusion

For the reasons explained above, the Court, on May 1, 2023, denied the motion to dismiss Counts I and II of the Amended Complaint, or, alternatively, to stay this litigation, but the Court granted the motion to dismiss Counts III and IV of the Amended Complaint, both without prejudice.

SO ORDERED.

New York, NY
October 26, 2023

_____
JED S. RAKOFF, U.S.D.J.