UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FUNICULAR FUNDS, LP,

    Plaintiff,

-v-

PIONEER MERGER CORP., et al.,

    Defendants.

22-cv-10986 (JSR)

OPINION AND ORDER

JED S. RAKOFF, U.S.D.J.:

Funicular Funds, LP ("Funicular") argues that it and other former class A shareholders of defendant Pioneer Merger Corp. ("Pioneer") are entitled by contract to the pro rata distribution of a termination fee that Pioneer received from a company with whom a planned business combination went bust.[1] Although the class A shares have been redeemed and Pioneer is in the process of winding up in the Cayman Islands, the termination fee remains in an account that is still able to be distributed.

On September 27, 2023, Funicular moved to certify a class of "[a]ll persons who held Class A Public Shares of Pioneer as of the redemption date of January 13, 2023 whose shares were redeemed, including their legal representatives, heirs, successors-in-interest,

---

[1] On January 20, 2023, Funicular filed an Amended Complaint alleging four causes of action against Pioneer and its managing insiders: breach of contract, declaratory judgment of the breach of contract, breach of fiduciary duty, and unjust enrichment. See ECF No. 9. On May 1, 2023, the Court dismissed without prejudice the claims for breach of fiduciary duty and unjust enrichment. See ECF No. 22. Funicular continues to pursue the first two claims.

transferees, and assignees of all such holders, but excluding (i) Defendants in this action; (ii) any person who is, or was at the time of the redemption, a trustee, officer, director, or partner of Pioneer Merger Sponsor LLC, Alpha Wave Global, LP, Patriot Global Management, LP, or their affiliates; (iii) the immediate family members of any of the foregoing; (iv) the legal representatives, heirs, successors-in-interest, successors, transferees, and assigns of the foregoing; and (v) any trusts, estates, entities, or accounts that held Pioneer Class A Public Shares for the benefit of any of the foregoing." ECF No. 28 ("Mem."), at 2-3. Defendants filed opposition papers on October 11, 2023, see ECF No. 32 ("Opp."), and Funicular filed a reply on October 18, 2023, see ECF No. 36 ("Reply").

On October 27, 2023, the Court heard oral argument, at the conclusion of which it ruled that it would certify Funicular's proposed class, appoint Funicular as class representative, and appoint Funicular's counsel, Morris Kandinov LLP, as class counsel. This Opinion and Order reconfirms and explains those rulings.

I. Legal Standard

"[A] party seeking to maintain a class action must affirmatively demonstrate his compliance with Rule 23." Comcast Corp. v. Behrend, 569 U.S. 27, 33 (2013).[2] "Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 349 (2011).

---

[2] All internal alterations, citations, ellipses, and quotation marks have been omitted unless otherwise indicated.

That rule contains "four requirements -- numerosity, commonality, typicality, and adequate representation." Id. In particular, Rule 23(a) requires that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).[3]

Since adequacy is here in dispute, it is worth mentioning that "[t]he adequacy-of-representation requirement tends to merge with the commonality and typicality criteria of Rule 23(a), which serve as guideposts for determining whether maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 626 n.20 (1997).

Furthermore, "[w]hile it is settled that the mere existence of individualized factual questions with respect to the class representative's claim will not bar class certification, class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of

---

[3] In addition, the class members must be reasonably ascertainable. See In re Petrobras Sec., 862 F.3d 250, 260 (2d Cir. 2017) (explaining that the ascertainability requirement, though not explicitly stated in Rule 23, is "implied"). Here, because the owners of class A shares are a matter of record, ascertainability is not an issue.

the litigation." Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp., 222 F.3d 52, 59 (2d Cir. 2000). "The relevant inquiry at this stage is whether any unique defenses will unacceptably detract from the focus of the litigation to the detriment of absent class members." Bowling v. Johnson & Johnson, 2019 WL 1760162, at *4 (S.D.N.Y. Apr. 22, 2019).

A plaintiff seeking to certify a class "must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." Comcast Corp., 569 U.S. at 33. Rule 23(b) offers three possibilities, two of which Funicular advances as contenders for the class here. First, an action may proceed as a class if "prosecuting separate actions . . . would create a risk of: (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." Fed. R. Civ. P. 23(b)(1). The second possibility is that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Rule 23(b)(2).[4]

---

[4] Aside from those two possibilities, litigation may proceed as a class action if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other

## II. Analysis[5]

Defendants' challenges to class certification all rest on the argument that Funicular is subject to two unique defenses to breach of contract under New York law -- failure to mitigate damages and inability to recover under "the voluntary payment doctrine" -- because Funicular purchased its Pioneer shares only after defendants announced that the termination fee would not be distributed to class A shareholders.[6] As a result of those defenses, defendants' argument goes, Funicular is not a typical or adequate class representative and cannot show that the commonality requirement is met. Defendants' argument is unavailing for a simple reason: Both of its purported affirmative defenses are inapplicable as a matter of law.[7]

---

available methods for fairly and efficiently adjudicating the controversy." Rule 23(b)(3). Although Funicular's memorandum of law in support of class certification also argued that a class could be certified under Rule 23(b)(3), Funicular's counsel, at oral argument, expressly narrowed the certification request to proceed under either Rule 23(b)(1) or Rule 23(b)(2), but not Rule 23(b)(3). See Transcript of 10/27/23 Oral Argument.

[5] This Opinion and Order incorporates by reference, and draws on the factual background contained in, the Court's October 26, 2023 Opinion explaining the reasons for granting in part and denying in part defendants' motion to dismiss. ECF No. 42.

[6] The parties agree that New York law governs the breach of contract claim.

[7] The "rigorous analysis" that district courts must perform under Rule 23(a) will often "entail some overlap with the merits of the plaintiff's underlying claim." Wal-Mart, 564 U.S. at 351. "That cannot be helped." Id. "The class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." Id. "Nor is there anything unusual about that consequence: The necessity of touching aspects of the merits in order to resolve preliminary matters . . . is a familiar

Defendants first advance the affirmative defense of Funicular's failure to mitigate damages, which New York contract law requires a plaintiff to do. See APL Co. PTE Ltd. v. Blue Water Shipping U.S. Inc., 592 F.3d 108, 111 (2d Cir. 2010). That defense turns on whether a plaintiff incurred additional but avoidable damages after a defendant's breach. See Middle East Banking Co. v. State St. Bank Int'l, 821 F.2d 897, 902 (2d Cir. 1987); Ridgeview Partners, LLC v. Entwistle, 354 F. Supp. 2d 395, 403 (S.D.N.Y. 2005) ("The social policy behind the duty to mitigate damages stems from the desire to hold defendants liable for harms they cause but not also for damages the plaintiff could have reasonably avoided."). But Funicular neither alleges nor seeks any such additional damages. Rather, Funicular seeks only the pro rata distribution of the termination fee it contends that Pioneer owes to its former class A shareholders.

According to defendants, Funicular nevertheless "had every opportunity to reasonably mitigate its damages by refraining from purchasing shares given Defendants['] clear and unambiguous statement that the Termination Fee would not be distributed to the Class A shareholders." Opp. at 13. Defendants do not dispute, however, that Funicular's purchase of Pioneer shares merely reallocated entitlement to any damages from previous shareholders to Funicular. In no way did

---

feature of litigation." Id. at 351-52. Such is the case here, where defendants base the entirety of their opposition to class certification on the applicability of two particular affirmative defenses. Of course, the Court expresses no view on any other potential affirmative defenses that defendants may raise at summary judgment or trial.

Funicular's share purchase enhance defendants' total potential liability. Because defendants provide no authority that supports extending the affirmative defense of failure to mitigate damages to a plaintiff who, in effect, has merely purchased a claim from a preexisting holder, the defense fails as a matter of law.

Defendants' other affirmative defense -- that Funicular is barred from recovery by the voluntary payment doctrine -- is also inapposite. The voluntary payment doctrine "bars recovery of payments voluntarily made with full knowledge of the facts, and in the absence of fraud or mistake of material fact or law." Dillon v. U-A Columbia Cablevision of Westchester, Inc., 790 N.E.2d 1155, 1156 (N.Y. 2003). Funicular is not seeking the return of a payment, however. Indeed, Funicular never made any payment to Pioneer or any other defendant; it purchased its shares on the secondary market. What Funicular seeks is distribution of what it argues is a corporate asset -- a fee that a third party validly paid to Pioneer -- to it and other class A shareholders. The voluntary payment doctrine thus has no role to play in this case.

Moreover, even if (contrary to the above) the two affirmative defenses could somehow succeed here, they are not "unique defenses which threaten to become the focus of the litigation." Baffa, 222 F.3d at 59. In defendants' own telling, any investor "who purchased class A shares after March 30, 2022 . . . will be subject to similar defenses." Opp. at 19. Defendants freely admit that the "proposed class includes potential class members who purchased months after Pioneer disclosed that the Termination Fee . . . would not be

distributed to Class A shareholders." Id. at 20 (emphasis omitted). By defendants' own acknowledgment, then, the affirmative defenses are not "unique" to Funicular. Baffa, 222 F.3d at 59. Although no party identifies just how many potential class members are subject to those defenses, Funicular represents that Pioneer's "[a]ggregate trading volume after March 30, 2022 exceeded 34 million shares." Reply at 10 n.4. That figure strongly suggests that the alleged defenses apply to a significant portion of the potential class, not to an isolated few, and that the defenses are themselves susceptible of classwide resolution (though perhaps by breaking the class into two subclasses). See Wal-Mart, 564 U.S. at 350 ("[A] common contention . . . is capable of classwide resolution" if "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.").

Nor, instead, would the affirmative defenses defeat Funicular's typicality or adequacy, even if they hypothetically applied to just a handful of potential class members. Indeed, "it is settled that the mere existence of individualized factual questions with respect to the class representative's claim will not bar class certification." Baffa, 222 F.3d at 59. Defendants have not shown that any "individualized factual questions" about Funicular's knowledge or purchase date "threaten to become the focus of the litigation." Id. Although defendants' papers repeatedly emphasize the mere presence of the two affirmative defenses, they nowhere explain why or how those defenses would subsume other aspects of the litigation. By contrast, Funicular

8

contends that "[t]he defenses are based entirely on a handful of 'disclosures' in [Pioneer]'s SEC filings, and a few snippets of testimony by [Funicular]'s principal, which can be presented succinctly and without unduly distracting from the central issues of Defendants' breach of their contractual duties." Reply at 9.

As Funicular explains, "[t]he focus of the litigation will be on (a) the terms and meaning of the Letter Agreement in which Defendants disclaimed any right to the assets of [Pioneer]; and (b) Defendants' efforts to secure the Termination Fee for themselves." Id. at 8. Those common questions of law and fact are not scrubbed away simply because there are other questions that are not common to every member of the class, such as affirmative defenses that may stem from the date of a plaintiff's share purchase. "Even a single common question of law or fact may suffice to satisfy the commonality requirement." Public Emps. Ret. Sys. of Miss. v. Merrill Lynch & Co., Inc., 277 F.R.D. 97, 105 (S.D.N.Y. 2011).

Defendants do not argue that if the Court rejects their challenges to typicality, adequacy, and commonality, Funicular cannot satisfy Rule 23(b).[8] In fact, defendants' opposition papers made no arguments about Rule 23(b) at all, and at oral argument, defendants' counsel took no position on Rule 23(b) other than to agree that proceeding under Rule 23(b)(1) or 23(b)(2) would be more efficient than proceeding under Rule 23(b)(3). See Transcript of 10/27/23 Oral Argument. Although

---

[8] Defendants also do not contest that the class is sufficiently numerous and ascertainable.

Funicular contends that its proposed class satisfies either Rule 23(b)(1) or Rule 23(b)(2), its counsel, also at oral argument, ultimately requested to proceed under Rule 23(b)(1). Id.

The Court agrees that Rule 23(b)(1) is met because "prosecuting separate actions by or against individual class members would create a risk of . . . inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class." Fed. R. Civ. P. 23(b)(1)(A). So too, there is a risk that "adjudications with respect to individual class members . . . would be dispositive of the interests of the other members not parties to the individual adjudications." Rule 23(b)(1)(B). This suit involves whether Funicular and other class A shareholders are entitled to a limited pot of funds. If individual shareholders were to bring distinct suits based on that same alleged entitlement, a possible outcome is an adjudication to distribute the funds in one suit, but a ruling that the funds need not be distributed in another suit. By proceeding as a class action under Rule 23(b)(1), such "inconsistent or varying adjudications" will be avoided. Rule 23(b)(1)(A); see In re Simon II Litig., 407 F.3d 125, 133 (2d Cir. 2005) (describing, as examples of when Rule 23(b)(1) applies, "a suit by shareholders to compel declaration of a dividend or to compel proper recognition and handling of redemption and preemption rights").

The Court thus certifies Funicular's proposed class and appoints Funicular as class representative. Because Funicular's counsel, Morris Kandinov LLP, has been ably and diligently litigating this suit, the

Court also grants Funicular's motion to appoint Morris Kandinov LLP as class counsel.

III. Conclusion

The Court grants Funicular's motion to certify a class, defined as follows: All persons who held Class A Public Shares of Pioneer as of the redemption date of January 13, 2023 whose shares were redeemed, including their legal representatives, heirs, successors-in-interest, transferees, and assignees of all such holders, but excluding (i) Defendants in this action; (ii) any person who is, or was at the time of the redemption, a trustee, officer, director, or partner of Pioneer Merger Sponsor LLC, Alpha Wave Global, LP, Patriot Global Management, LP, or their affiliates; (iii) the immediate family members of any of the foregoing; (iv) the legal representatives, heirs, successors-in-interest, successors, transferees, and assigns of the foregoing; and (v) any trusts, estates, entities, or accounts that held Pioneer Class A Public Shares for the benefit of any of the foregoing. The Court appoints Funicular as class representative and Funicular's counsel, Morris Kandinov LLP, as class counsel. The Clerk is respectfully directed to close document number 27 on the docket of this case.

SO ORDERED.

New York, NY
November 1, 2023

JED S. RAKOFF, U.S.D.J.