**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

FUNICULAR FUNDS, LP, individually and on
behalf of all others similarly situated,

               Plaintiff,

v.

PIONEER MERGER CORP., PIONEER MERGER
SPONSOR LLC, JONATHAN CHRISTODORO,
RICK GERSON, OSCAR SALAZAR, RYAN
KHOURY, SCOTT CARPENTER, MATTHEW
COREY, MITCHELL CAPLAN, and TODD
DAVIS,

               Defendants.

Civil Action No. 22-10986-JSR

---

### BRIEF IN SUPPORT OF PIONEER MERGER CORP.'S (IN OFFICIAL LIQUIDATION) MOTION FOR SUMMARY JUDGMENT

R. Craig Martin, SDNY Bar No. RCM1971
Gregory M. Juell
Malithi P. Fernando
Christine LiCalzi
**DLA Piper LLP (US)**
1251 Avenue of the Americas
New York, New York 10020
Telephone:    (212) 335-4500
Facsimile:    (212) 335-4501
Email: craig.martin@us.dlapiper.com
       gregory.juell@us.dlapiper.com
       malithi.fernando@us.dlapiper.com
       christine.licalzi@us.dlapiper.com

*Counsel for the Joint Official Liquidators*

## TABLE OF CONTENTS

<u>Page</u>

PRELIMINARY STATEMENT ...................................................................................................1

STATEMENT OF UNDISPUTED FACTS .................................................................................2

ARGUMENT ...............................................................................................................................5

     I.        STANDARD FOR SUMMARY JUDGMENT .......................................................5

     II.       NO GENUINE DISPUTE OF MATERIAL FACT AS TO COUNTS I
             AND II ....................................................................................................................5

           A.     The Complaint should be dismissed because it asserts claims against a
                company in a foreign insolvency proceeding ..................................................5

           B.     Pioneer Merger Corp did not breach the Sponsor Agremeent ......................10

CONCLUSION .............................................................................................................................15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allstate Life Ins. Co. v. Linter Grp. Ltd.*,
  994 F.2d 996 (2d Cir. 1993)...................................................................................6, 8

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986).................................................................................................5

*Cunard S.S. Co. v. Salen Reefer Servs. AB*,
  773 F.2d 452 (2d Cir. 1985)..................................................................................6, 7

*Daewoo Motor Am., Inc. v. General Motors Corp.*,
  315 B.R. 148, 160 (M. D. Fla. 2004)........................................................................6

*In re E. End Dev., LLC*,
  491 B.R. 633 (Bankr. E.D.N.Y. 2013)....................................................................14

*Finanz AG Zurich v. Banco Economico S.A.*,
  192 F.3d 240 (2d Cir. 1999)......................................................................................6

*Fletcher v. Atex, Inc.*,
  68 F.3d 1451 (2d Cir. 1995)......................................................................................5

*Graham v. Henderson*,
  89 F.3d 75 (2d Cir. 1996)..........................................................................................5

*Maxwell Comm. Corp. v. Société Generale (In re Maxwell Comm. Corp.)*,
  93 F.3d 1036 (2d Cir. 1996)......................................................................................6

*Royal and Sun Alliance Ins. Co. of Canada v. Century Int'l Arms, Inc.*,
  466 F.3d 88 (2d Cir. 2006)........................................................................................9

*Simsbury-Avon Pres. Club, Inc. v. Metacon Gun Club, Inc.*,
  575 F.3d 199 (2d Cir. 2009)......................................................................................5

**Statutes**

11 U.S.C. §§ 1506, 1517, 1519, 1520, 1522.................................................................10

**Other Authorities**

Fed. R. Civ. P. 56(a) ......................................................................................................4

Federal Rules of Civil Procedure Rule 56 .................................................................1, 2

Local Civil Rule 56.1 ..................................................................................................................2

Defendant, Pioneer Merger Corp. (In Official Liquidation) ("the Company" or "Pioneer Merger Corp."), by and through its undersigned counsel, respectfully submits this memorandum of law in support of its motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure as to the remaining Counts I and II of the Amended Complaint (ECF No. 9).

## PRELIMINARY STATEMENT

The Joint Official Liquidators seek summary judgment because Second Circuit Case law provides that district court litigation that is parallel to a foreign insolvency proceeding must be dismissed. The only exceptions to this rule – lack of procedural fairness or violation of public policy – do not apply here. This Court rejected a similar, but different, argument in deciding a Motion to Dismiss on the ground that a then pending winding up petition filed by Plaintiff was not a sufficiently related proceeding that justified this Court not exercising its jurisdiction and dismissing the case at that time under the doctrine of international comity. The facts have changed as there is now a court-supervised foreign insolvency proceeding pending with respect to the Company. Joint Official Liquidators, Mr. Lawson and Mr. Kennedy, have been appointed to oversee this liquidation under Cayman Islands law, and the relevant facts on this point are undisputed. Second Circuit precedent thus requires dismissal of this case in deference to this foreign insolvency proceeding. It would be inconsistent with controlling precedent for the Court to enter an order requiring a foreign liquidator to distribute assets in a certain way, or otherwise enter relief like the injunctive relief sought in the Amended Complaint.

While the fact that there is a pending foreign liquidation proceeding dictates dismissal of this case, the facts also show that there is no breach of the Sponsor Agreement. Rather, the Company, and all parties, have complied with it. Thus, the breach of contract Count – Count II – should be dismissed and in the absence of a breach determination, Count I should also be dismissed.

1

## STATEMENT OF UNDISPUTED FACTS

In accordance with Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1, the Company has set forth the undisputed facts supporting this motion, with citations, in the accompanying Local Civil Rule 56.1 Statement of Undisputed Material Facts ("56.1 Statement"). Those facts and the corresponding paragraphs in the 56.1 Statement are summarized below.

Pioneer Merger Corp. is a special purpose acquisition company, organized as a Cayman Islands exempted company, for the purpose of completing a business combination.  56.1 Statement ¶ 1.  The Company is bound by its governing document—the Amended and Restated Memorandum and Articles of Association (the "Articles").  Also relevant to this litigation is a letter agreement, entered into prior to the initial public offering, between the Company, the Sponsor, and certain individuals—Rick Gerson, Ryan Khoury, Scott Carpenter, Matthew Corey, Mitchell Caplan, Todd Davis, Jonathan Christodoro and Oscar Salazar (the "Sponsor Agreement").  56.1 Statement ¶¶ 2–3.

At formation, the share capital of the Company comprised Class B ordinary shares, which were issued in a private placement in advance of the initial public offering, and which are held by the Sponsor and its Directors Oscar Salazar, Todd Davis, and Mitchell Caplan.  56.1 Statement ¶ 4.  Subsequently, the Company issued Class A shares to public shareholders in the Company's initial public offering on January 12, 2021.  56.1 Statement ¶ 5.

On May 27, 2021, the Company announced it had entered into a business combination agreement to acquire Acorns Grow Incorporated; however, the Company was unable to consummate the transaction.  56.1 Statement ¶ 7.  On January 3, 2022, the Sponsor entered into a mutual termination agreement (the "Termination Agreement") with Acorns under which Acorns agreed that, in the event the transaction was not completed by January 14, 2022, either party could terminate the business combination agreement in exchange for the following payments

from Acorns being made to the Company: US $17.5 million payable in monthly instalments through December 15, 2022; and US $15 million if the Company failed to complete a Business Combination on or before December 15, 2022 (together, the "Termination Fee").  56.1 Statement ¶ 8.

The Company disclosed that the Termination Fee was to be held outside of the Trust Account and was not to be part of liquidating distributions with respect to the public shares.  56.1 Statement ¶ 12.  On December 15, 2022, the Company resolved that it would not enter into a business combination, thus triggering the remaining $15 million payment from Acorns, and that it would be redeeming the Class A shares pursuant to the Articles (the "Class A Redemption") on January 12, 2023.  56.1 Statement ¶¶ 13-14.  To date, the Termination Fee has not been distributed and is held in Company bank accounts, controlled by the Joint Official Liquidators, in the United States and the Cayman Islands.   56.1 Statement ¶¶ 23–24 .

On January 13, 2023, pursuant to the Articles, the Company effected the Class A redemption.  56.1 Statement ¶ 16.  At such time, under Article 49.7, the redemption "completely extinguish[ed]" the Class A shareholders' rights, "including the right to receive further liquidation distributions, if any."  56.1 Statement ¶ 2.d.i.  Also pursuant to the Articles, the Company resolved to place the Company into voluntary liquidation on August 11, 2023, and appointed Alexander Lawson and Christopher Kennedy of Alvarez & Marsal Cayman Islands Limited as joint voluntary liquidators (the "JVLs").   56.1 Statement ¶ 18.  Thereafter, on August 28, 2023, the JVLs applied for an order that the winding up of the Company continue under the supervision of the Grand Court of the Cayman Islands (the "Cayman Court") and that the JVLs be appointed as the Joint Official Liquidators (the "JOLs") of the Company, in accordance with sections 131(1)(b) and 132 of the Companies Act (2023 Revision), respectively.  56.1 Statement

¶ 19.  The Cayman Court granted this request and entered a Supervision Order on September 27, 2023, which appointed the JVLs as Joint Official Liquidators of the Company.  56.1 Statement ¶ 22.

In their role, the Joint Official Liquidators conducted a conciliation between the Plaintiff and the defendants in an attempt to find a commercial resolution to the ongoing dispute in relation to the Termination Fee.  56.1 Statement ¶ 25.  However, the conciliation has since broken down, and as matters stand, there does not appear to be a realistic prospect of the dispute being resolved via conciliation.  *Id*.  Accordingly, on October 2, 2023, the Joint Official Liquidators filed a summons seeking directions from the Cayman Court with respect to whom the Termination Fee should be distributed, in the absence of a negotiated settlement.  56.1 Statement ¶ 26.

At a hearing held on October 31, 2023, the Cayman Court ruled that the hearing of the Termination Fee dispute shall be adjudicated as an *inter partes* proceeding as between the Plaintiff and the Class B shareholders (the "Inter Partes Hearing") on or after 14 December 2023.   56.1 Statement ¶ 30.

The Class A shareholders have been redeemed and their rights as shareholders have been completely extinguished as a result thereof.  The only remaining shareholders of the Company are the Class B shareholders. Therefore, at present, absent an order from the Cayman Court to contrary, the Joint Official Liquidators would distribute the Company's assets pursuant to the legal requirements set forth under the laws of the Cayman Islands to satisfy any creditors with the surplus to Class B shareholders, as the only remaining shareholders.  56.1 Statement ¶ 27.

## ARGUMENT

### I.     STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A material fact is one that "can affect the outcome under the applicable substantive law." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996).  A genuine dispute is one that can "reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

When the non-moving party bears the burden of proof, "it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim." *Simsbury-Avon Pres. Club, Inc. v. Metacon Gun Club, Inc.*, 575 F.3d 199, 204 (2d Cir. 2009).  The non-moving party must then "come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Id.*  The non-moving party cannot, however, "rest on mere allegations or denials of his pleadings," *Anderson,* 477 U.S. at 259, or "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995).

### II.     NO GENUINE DISPUTE OF MATERIAL FACT AS TO COUNTS I AND II

####      A.     The Complaint should be dismissed because it asserts claims against a company in a foreign insolvency proceeding.

In the Counts of the Amended Complaint that remain – Counts I and Counts II – the Plaintiff seeks a determination that all Defendants have breached the Sponsor Agreement because "Defendants' intent to distribute the Termination Fee to themselves is a breach of the Sponsor Agreement." Am. Compl. ¶ 99.  As an initial matter, this Count does not assert a breach by Pioneer Merger Corp. as it does not seek to distribute the Termination Fee to "itself."  The

Joint Official Liquidators will seek to distribute the Termination Fee according to Cayman Islands law, and as so ordered by the Cayman Court following the Inter Partes Hearing.

In Count I, however, the Plaintiff contends, using the passive voice, that "the Termination Fee must be distributed equitably to holders of Class A Public Shares." *Id*. ¶ 91. Plaintiff then seeks entry of an injunction to prohibit distribution of the Termination Fee in any other manner. *Id*. ¶ 92. Taken together, Plaintiff seeks entry of an injunction prohibiting the Joint Official Liquidators in a foreign bankruptcy proceeding from distributing the Termination Fee in accordance with Cayman Islands law. This relief is unprecedented, as U.S. courts do not order or enjoin foreign liquidators to distribute assets in some specific order irrespective of the requirements of a foreign insolvency liquidation.

The Second Circuit has "repeatedly noted the importance of extending comity to foreign bankruptcy proceedings. Since '[t]he equitable and orderly distribution of a debtor's property requires assembling all claims against the limited assets in a single proceeding,' American courts regularly defer to such actions." *See Finanz AG Zurich v. Banco Economico S.A.,* 192 F.3d 240, 246 (2d Cir. 1999) (citing *Victrix S.S. Co. S.A. v. Salen Dry Cargo A.B.*, 825 F.2d 709, 713 (2d Cir. 1987); *Maxwell Comm. Corp. v. Société Generale (In re Maxwell Comm. Corp.)*, 93 F.3d 1036, 1048 (2d Cir. 1996); *Allstate Life Ins. Co. v. Linter Grp. Ltd.*, 994 F.2d 996, 999 (2d Cir. 1993); *Cunard S.S. Co. v. Salen Reefer Servs. AB*, 773 F.2d 452, 458 (2d Cir. 1985). This is because, for among other reasons, a foreign country has a special interest in regulating the business activity on its shores, including the liquidation of companies formed in those foreign countries. *See generally Daewoo Motor Am., Inc. v. General Motors Corp.,* 315 B.R. 148, 160 (M. D. Fla. 2004).

The Second Circuit has long noted that, as instructed by the Supreme Court, "every person who deals with a foreign corporation impliedly subjects himself to such laws of the foreign government, affecting the powers and obligations of the corporation with which he voluntarily contracts, as the known and established policy of that government authorizes" and that while a foreign court might not be able to render a binding money judgment against a person over whom it possesses no jurisdiction, "based solely on that persons dealings with a foreign corporation[,]" it does mean that "creditors of an insolvent foreign corporation may be required to assert their claims against a foreign bankrupt before a duly convened foreign bankruptcy tribunal." *Cunard*, 773 F.2d at 458-59 (citing *Canada Southern Ry. v. Gebhard*, 109 U.S. 527 (1883)).

As a general rule in the Second Circuit, "[c]omity will be granted" where "it is shown that the foreign court is a court of competent jurisdiction, and that the laws and public policy of the forum state and the rights of its residents will not be violated." *Cunard* 773 F.2d at 457. In determining whether foreign insolvency proceedings warranted comity, the law of this Circuit, focuses on several factors as indicia of procedural fairness. These factors included:

(1) whether creditors of the same class are treated equally in the distribution of assets;[1]

(2) whether the liquidators are considered fiduciaries and are held accountable to the court;[2]

(3) whether creditors have the right to submit claims which, if denied, can be submitted to a bankruptcy court for adjudication;[3]

---

[1]     56.1 Statement ¶ 31, McKie Report at ¶ 67.

[2]     *Id*. at ¶¶ 68—69.

[3]     *Id*. at ¶¶ 51—55.

(4) whether the liquidators are required to give notice to the debtors' potential claimants;[4]

(5) whether there are provisions for creditors' meetings;[5]

(6) whether a foreign country's insolvency laws favor its own citizens;[6]

(7) whether all assets are marshalled before one body for centralized distribution;[7] and

(8) whether there are provisions for an automatic stay and for the lifting of such stays to facilitate the centralization of claims.[8]

*See Allstate Life Ins. Co.*, 994 F.2d at 999 (citing *Cunard*, 773 F.2d at 459–60; *In re Gee*, 53 B.R. 891, 903 (Bankr.S.D.N.Y.1985)).

Each of these factors is satisfied in a Cayman Islands liquidation as indicated in each footnote reference to the Company's expert on foreign law.  Plaintiff has not rebutted these contentions in the Expert Report of Colin Douglas McKie, and have not even submitted any expert evidence on the law of liquidations in the Cayman Islands.

The Cayman liquidation is procedurally fair and does not violate any policy of the United States.  Both the Plaintiff and the Class B shareholders will have the opportunity to present their legal arguments, as to whom should receive the Termination Fee, at the Inter Partes Hearing. Additionally, this Court, rightly so, dismissed the breach of fiduciary duty claims without prejudice to those claims being pursued in the Cayman Islands.  Pursuant to Cayman Islands law, breach of fiduciary duty claims are actionable by or on behalf of the Company; therefore, in this case, these are claims to be brought by the Joint Official Liquidators.  The Joint Official

---

[4]     *Id.*

[5]     *Id.* at ¶¶ 47, 70, 71, and 79.

[6]     This is a negative; however, as indicated in *id.* at ¶ 67 equal claims are treated equally.

[7]     *Id.* at ¶ 31.

[8]     *Id.* at ¶¶ 41 and 43.

Liquidators are continuing to assess the viability of these claims.  Therefore, this action should be dismissed in deference to the determination of the Termination Fee dispute by the Cayman Court and the Joint Official Liquidators' assessment of the breach of fiduciary duty claims.

It should be noted that the argument regarding the Joint Official Liquidators is different than those made by the Defendants in support of their motion to dismiss or stay (ECF No. 13) where Defendants argued that this action was related to a pending foreign proceeding commenced by Plaintiff, namely a winding up petition that the Plaintiff had filed in the Cayman Islands.  In addressing that motion, the Court relied on *Royal and Sun Alliance Ins. Co. of Canada v. Century Int'l Arms, Inc.*, 466 F.3d 88 (2d Cir. 2006), for the proposition that a pending winding up petition filed by Plaintiff in the Cayman Islands did not warrant dismissal.  The Court noted that the winding up petition was "sufficiently analogous" to a foreign bankruptcy proceeding, not that it was a foreign insolvency proceeding at the time the decision was made on March 1, 2023.  *See* ECF No. 42 at 14–15 (explaining decision at ECF No. 22).  The Court further noted that since the Sponsor Agreement is governed by New York law, it was likely to resolve the contract claim and the related claim for declaratory judgment before the Cayman Court could decide the winding up petition.  *Id*. at 16.

Since March 1, 2023, the facts have changed.  It is undisputed that the winding up petition filed by the Plaintiff was dismissed.  Since then, Pioneer Merger Corp. was placed into liquidation in the Cayman Islands in August 2023, which resulted in the appointment of the JVLs.  On September 27, 2023, the Cayman Court entered a supervision order appointing the then-JVLs as the Joint Official Liquidators.  Thus, as noted in the *Royal and Sun Alliance* case, the Second Circuit requires dismissal of parallel district court case as it falls into the "one

discrete category of foreign litigation" that requires dismissal—foreign bankruptcy proceedings. 466 F.3d. at 92–93.

Because Pioneer Merger Corp. is now formally in a court supervised liquidation proceeding in a foreign jurisdiction, unlike when this Court ruled on the issue in March 2023, the Second Circuit precedent requires this Court to dismiss this case in deference to those proceedings. The Joint Official Liquidators have, however, filed a case under Chapter 15 of the United States Bankruptcy Code so that any distributions or other orders of the court in the Cayman Islands can be submitted to the Bankruptcy Court on notice to U.S.-based creditors and other interest holders, who will then have the right to address whether those proceedings complied with the public policy of the United States or whether they are otherwise entitled to sufficient protection within the territorial jurisdiction of the United States. *See, e.g.*, 11 U.S.C. §§ 1506, 1517, 1519, 1520, 1522; *see also* 56.1 Statement ¶ 28.

**B.     Pioneer Merger Corp. did not breach the Sponsor Agreement.**

Plaintiff contends in Count II that the Company's "intent to distribute the Termination Fee to themselves is a breach of the Sponsor Agreement." *See* Am. Compl. ¶ 99. Plaintiff, however, concedes that the Company has not distributed any remaining assets, including the Termination Fee. *See id.* ¶ 18.

The Sponsor Agreement specifically provided that if a defined Business Combination did not occur, that the Sponsor and each insider shall cease all operations except for the purpose of winding up, and within ten business days, "redeem 100% of the of the Public Shares" and that this redemption "will completely extinguish Public Shareholders' rights as shareholders (***including the right to receive further liquidation distributions, if any***) and then promptly and reasonably following the redemption, liquidate and dissolve. *See* 56.1 Statement ¶ 3.a.i.

This provision of the Sponsor Agreement is similar to Section 47.9 of the Amended and Restated Memorandum and Articles of Association (the "Articles"), which provide (with emphasis added):

> 49.7 In the event that the Company does not consummate a Business Combination by 24 months from the consummation of the IPO, or such later time as the Members may approve in accordance with the Articles, the Company shall:
>
> (a) cease all operations except for the purpose of winding up;
>
> (b) as promptly as reasonably possible but not more than ten business days thereafter, redeem the Public Shares, at a per-Share price, payable in cash, equal to the aggregate amount then on deposit in the Trust Account, including interest earned on the funds held in the Trust Account and not previously released to the Company (less taxes payable and up to US$100,000 of interest to pay dissolution expenses), divided by the number of then Public Shares in issue, *which redemption will completely extinguish public Members' rights as Members (including the right to receive further liquidation distributions, if any)*; and
>
> (c) as promptly as reasonably possible following such redemption, subject to the approval of the Company's remaining Members and the Directors, liquidate and dissolve, subject in each case to its obligations under Cayman Islands law to provide for claims of creditors and other requirements of Applicable Law.

After the ceasing of operations and redeeming the Class A Shares, then Pioneer Merger Company is to liquidate and dissolve under both the Sponsor Agreement and the Articles and the holders of Class A Shares are extinguished and only the Class B Shares of the Company remain. Then, the Articles provide that:

> 44 Winding Up
>
> 44.1 If the Company shall be wound up, the liquidator shall apply the assets of the Company in satisfaction of creditors' claims in such manner and order as such liquidator thinks fit. Subject to the rights attaching to any Shares, in a winding up:
>
> (a) if the assets available for distribution amongst the Members shall be insufficient to repay the whole of the Company's issued

share capital, such assets shall be distributed so that, as nearly as may be, the losses shall be borne by the Members in proportion to the par value of the Shares held by them; or

(b) if the assets available for distribution amongst the Members shall be more than sufficient to repay the whole of the Company's issued share capital at the commencement of the winding up, the surplus shall be distributed amongst the Members in proportion to the par value of the Shares held by them at the commencement of the winding up subject to a deduction from those Shares in respect of which there are monies due, of all monies payable to the Company for unpaid calls or otherwise.

44.2 If the Company shall be wound up the liquidator may, subject to the rights attaching to any Shares and with the approval of a Special Resolution of the Company and any other approval required by the Statute, divide amongst the Members in kind the whole or any part of the assets of the Company (whether such assets shall consist of property of the same kind or not) and may for that purpose value any assets and determine how the division shall be carried out as between the Members or different classes of Members. The liquidator may, with the like approval, vest the whole or any part of such assets in trustees upon such trusts for the benefit of the Members as the liquidator, with the like approval, shall think fit, but so that no Member shall be compelled to accept any asset upon which there is a liability.

Both the Sponsor Agreement and the Articles required that the Class A Shares be redeemed *prior* to the liquidation/winding up of the company on January 13, 2023.  That was the day the Class A Shares were redeemed.  The Plaintiff's expert has testified that, as a matter of Cayman Islands law, since it was apparent that a Business Combination would not occur in December 2022, that the Class A Shares should not have been redeemed as required by Section 49.7 of the Articles, but rather that all the assets of the Company should have been distributed under Section 44.1 of the Articles.  *See* Exhibit 23 to Martin Declaration, Rodrigues Report at pp. 25-27.  This approach is incorrect.

First, of course, there was no winding up until August 11, 2023, so the idea that section 44.1 should apply in advance of that date is wrong – indeed, it could not have been applied in

January 2023 when the Company was not in liquidation.   Upon passing a resolution on August 11, 2023, the Company went into voluntary liquidation and appointed joint voluntary liquidators. 56.1 Statement ¶¶ 17–18.  It was the joint voluntary liquidators who sought voluntary supervision of which was filed with the Grand Court of the Cayman Islands (the "Cayman Court") on August 17, 2023, and which the Cayman Court granted on September 27, 2023.  56.1 Statement ¶¶ 19–22.  And based on this background, Mr. McKie has stated that under Cayman Islands law, the liquidation commenced on August 11, 2023.  56.1 Statement ¶ 31, McKie Report at ¶ 30.  Thus, the Sponsor Agreement terminated on August 11, 2023, as the expert testifies.  The termination of the Sponsor Agreement therefore occurred prior to the distribution of Termination Fee.

Second, Professor Rodrigues has no basis to testify regarding the application of Cayman Islands law to the way shares should be redeemed or liquidation should occur. Professor Rodrigues readily admitted in her deposition that she is not a qualified Cayman Islands lawyer and has no expertise on Cayman Islands law.  *See* Exhibit 23 to Martin Declaration, Rodrigues Tr. 72:21-73:10; 103:13-104:7; 108:5-111:8.  The only Cayman Islands law expert, Mr. McKie, explained that the Articles required that in the absence of a Business Combination, Pioneer Merger Corp would cease operations, then redeem the Class A Shareholders, and then liquidate and dissolve.  And that liquidation, after redemption, would then be subject to section 44.1 of the Articles. As noted above, the date of redemption was January 13, 2023, and the date that liquidation commenced was August 11, 2023.

Thus, on January 13, 2023, the Class A Shares were redeemed in accordance with the Sponsor Agreement and the Articles.  Both documents provide that the consequence of that redemption was that the Class A Shares were extinguished, leaving the sole shareholders of

13

Pioneer Merger Corp. as the holders of Class B shares. We seek to clarify that this is the case, notwithstanding, this Court's prior Opinion (ECF No. 42 at 12) that the Class B Shares expired if there was no Business Combination – rather, the Class A Shares were extinguished on redemption, as was expressly written in the Sponsor Agreement, and the Class B Shares remain outstanding.  Thereafter, Pioneer Merger Corp. was to be liquidated.  Surplus assets of the Company will be distributed in the liquidation, which is what the Joint Official Liquidators intend to do as required by Cayman Islands law.  Unless, of course, the Cayman Court that supervises the Joint Official Liquidators' conduct orders otherwise.

Plaintiff makes a failed argument that the Termination Fee should never have been subject to the liquidation.  From this argument, it follows that the Plaintiff is suggesting that the Termination Fee should be have been put into the Trust Account, but no party has identified any legal obligation from the relevant documents that required this.

Finally, upon that winding up or liquidation, the Sponsor Agreement terminates.  *Id*. § 9. As a matter of New York law, "[t]he terms 'liquidation' and 'dissolution' refer to transactions which are 'statutory in nature, and typically have a precise statutory meaning under the applicable corporation law of a particular jurisdiction.'"  *In re E. End Dev., LLC*, 491 B.R. 633, 640 (Bankr. E.D.N.Y. 2013) (*citing Prescott, Ball & Turben v. LTV Corp.*, 531 F. Supp. 213, 219 (S.D.N.Y. 1981)).  As stated in the unrebutted testimony of the only testifying expert on Cayman Islands law, the liquidation of Pioneer Merger Corp commenced on August 11, 2023, and thus the Sponsor Agreement, by its terms, terminated on that date.  Since Pioneer Merger Corp. had not distributed the Termination Fee as of August 11, 2023, and has not done so as of the date of this Motion, it had not breached any provision of the Sponsor Agreement prior to its termination.

And its distribution of those remaining assets by the Company in accordance with the Articles and Cayman Islands law cannot result in a breach of the now terminated agreement.

One additional consequence to the change in circumstances from when the Court denied the Motion to Dismiss in March, is that there are now court-supervised and appointed Joint Official Liquidators who have an independent obligation to evaluate how the Company should be liquidated. Those decisions will be made independent of the Sponsor, thus creating a level of independence that has not been present in prior motions and able to be considered by this Court.

For these reasons, Count II of the Complaint should be dismissed.

Now that Pioneer Merger Corp. is in liquidation and its remaining assets will be distributed in accordance with Cayman Islands law (or as ordered by the Cayman Court), this Court should not order the Joint Official Liquidators to distribute the Termination Fee as requested in Count I (or enjoin them from a contrary distribution).

since doing so would not only be unprecedented, but the Sponsor Agreement has terminated, the Termination Fee has not been distributed, and therefore the Company has not breached the Sponsor Agreement.

## **<u>CONCLUSION</u>**

For the reasons set forth above, Pioneer Merger Corp. respectfully requests that the Court grant this motion for summary judgment as to Counts One and Two of the Complaint.

Dated: New York, New York
      November 7, 2023

Respectfully submitted,

  */s/ R. Craig Martin*
R. Craig Martin, SDNY Bar No. RCM1971
Gregory M. Juell
Malithi P. Fernando
Christine LiCalzi
**DLA Piper LLP (US)**
1251 Avenue of the Americas
New York, New York 10020
Telephone:    (212) 335-4500
Facsimile:     (212) 335-4501
Email: craig.martin@us.dlapiper.com
       gregory.juell@us.dlapiper.com
       malithi.fernando@us.dlapiper.com
       christine.licalzi@us.dlapiper.com

*Counsel for the Joint Official Liquidators*

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on this 7th day of November 2023, a copy of the foregoing

*Brief in Support of Pioneer Merger Corp.'s (In Official Liquidation) Motion For Summary*

*Judgment* was served on all parties receiving CM/ECF notices in this case.

 */s/ R. Craig Martin*        
R. Craig Martin
