# Exhibit 1

BETWEEN

**PIONEER MERGER CORP. (IN OFFICIAL LIQUIDATION)**

and

**PIONEER MERGER SPONSOR LLC**

and

**FUNICULAR FUNDS, LP on behalf of itself and the CLASS**

and

**JONATHAN CHRISTODORO**

and

**RICK GERSON**

and

**OSCAR SALAZAR**

and

**RYAN KHOURY**

and

**SCOTT CARPENTER**

and

**MATTHEW COREY**

and

**MITCHELL CAPLAN**

and

**TODD DAVIS**

---

**STIPULATION AND AGREEMENT OF SETTLEMENT, COMPROMISE, AND RELEASE (THE "SETTLEMENT AGREEMENT")**

---

# CONTENTS

1. INTERPRETATION .................................................................................................................... 4

2. CLASS ..................................................................................................................................... 6

3. SETTLEMENT AMOUNT ........................................................................................................... 7

4. SETTLEMENT FUND ................................................................................................................. 7

5. DISMISSAL OF PROCEEDINGS AND COURT APPROVAL OF SETTLEMENT; CONDITIONS OF SETTLEMENT ................................................................................................................................... 8

6. RELEASES ............................................................................................................................... 9

7. NO ADMISSION OF WRONGDOING ........................................................................................ 11

8. NOT A CLAIMS-MADE SETTLEMENT ...................................................................................... 12

9. SETTLEMENT ADMINISTRATOR ............................................................................................. 12

10. FEES AND COSTS ................................................................................................................... 13

11. WITHOUT PREJUDICE ............................................................................................................ 14

12. ROLE AND INDEMNIFICATION OF THE JOLS .......................................................................... 14

13. ENTIRE AGREEMENT .............................................................................................................. 15

14. WARRANTIES ........................................................................................................................ 15

15. VARIATION ........................................................................................................................... 16

16. WAIVER ................................................................................................................................ 16

17. SEVERANCE ........................................................................................................................... 16

18. GOVERNING LAW .................................................................................................................. 16

19. JURISDICTION ....................................................................................................................... 16

EXECUTION PAGE ........................................................................................................................... 17

**This Settlement Agreement is dated**    8 February 2024

**PARTIES**

(A)    Pioneer Merger Corp. (In Official Liquidation) (the "***Company***"), acting at all times by its Joint Official Liquidators, Alexander Lawson and Christopher Kennedy of Alvarez & Marsal Cayman Islands Limited

(B)    Pioneer Merger Sponsor LLC (the "***Sponsor***")

(C)    Funicular Funds, LP (the "***Lead Plaintiff***"), on behalf of itself and the Class

(D)    Jonathan Christodoro

(E)    Rick Gerson

(F)    Oscar Salazar

(G)    Ryan Khoury

(H)    Scott Carpenter

(I)    Matthew Corey

(J)    Mitchell Caplan

(K)    Todd Davis (collectively, the individuals identified in parts (D) through (K), the "***Individual Defendants***") (each separately a ***Party*** and collectively, the ***Parties***)

**WHEREAS**

A.    On 30 December 2022, the Lead Plaintiff filed a class action complaint on behalf of all Class A Shareholders against the Company, the Sponsor and the Individual Defendants (together, the ***U.S. Defendants***) in the United States District Court for the Southern District of New York (the "***U.S. Court***") in an action captioned *Funicular Funds, LP v. Pioneer Merger Corp. et al.*, 22-cv-10986 (JSR), (the "***New York Action***").

B.    On 12 January 2023, the Lead Plaintiff filed a petition for the winding up of the Company in the Cayman Court (the "***Cayman Petition***").

C.    On 6 March 2023, the U.S. Defendants filed a motion to dismiss (or alternatively, stay) the New York Action (the "***Motion to Dismiss***").

D.    On 20 March 2023, the Lead Plaintiff filed an opposition to the Motion to Dismiss.

E.    On 1 May 2023, the U.S. Court issued an order (i) denying the Motion to Dismiss as it relates to the Lead Plaintiff's breach of contract claims with respect to the Letter Agreement, (ii) denying the U.S. Defendants' request to stay the New York Action until the Cayman Petition is resolved, (iii) dismissing the Lead Plaintiff's breach of fiduciary duty claims without prejudice to such claims being pursued in the Cayman Islands, and (iv) confirming that Lead Plaintiff had withdrawn its claim for unjust enrichment and dismissing that claim without prejudice.

2

F.    Thereafter, the Parties conducted discovery, including non-party discovery, in the New York Action, which included production of documents, exchange of written discovery, taking of depositions, exchange of expert reports, and depositions of expert witnesses.

G.    On 22 May 2023, the Cayman Petition was dismissed by consent.

H.    On 11 August 2023, the Company was placed into voluntary liquidation and Alexander Lawson and Christopher Kennedy of Alvarez & Marsal Cayman Islands Limited were appointed as joint voluntary liquidators. On 27 September 2023, the Cayman Court appointed the joint voluntary liquidators as joint official liquidators of the Company (the "***JOLs***") and the liquidation of the Company was brought under the Cayman Court's supervision (the "***Cayman Liquidation***").

I.    On 27 September 2023, the Lead Plaintiff filed a motion for class certification in the New York Action, which was granted by the U.S. Court on 27 October 2023, and detailed in an order issued on 1 November 2023.

J.    On 29 September 2023, the JOLs filed a Summons for Directions, and, on 27 October 2023, an affidavit in support of that summons (together, the "***Sanction Application***") seeking that the Cayman Court determine to whom the JOLs are required to distribute the surplus assets held by the Company, resulting from the dispute as to the legal entitlement of such assets, by way of *inter partes* hearing.

K.    On 19 October 2023, the JOLs filed a petition for the recognition of a foreign proceeding under Chapter 15 of the United States Bankruptcy Code (i.e. the Chapter 15 Proceedings), which was opposed by Lead Plaintiff.

L.    On 31 October 2023, the Cayman Court ordered that the dispute be adjudicated as an *inter partes* proceeding between the Class B Shareholders and the former participating Class A Shareholders (the "***Cayman Action***") and listed the matter for hearing on 14 December 2023.

M.    On 7 November 2023, the Lead Plaintiff, the Company, the Sponsor and Individual Defendants, each filed summary judgment motions in the New York Action which were fully briefed and listed for hearing on 19 December 2023.

N.    On 24 November 2023, the Lead Plaintiff filed a summons for directions with respect to the Cayman Action, which was listed for hearing on 7 December 2023. At that hearing, the Cayman Court vacated the hearing listed for 14 December 2023 to allow time for certain issues relevant to both the Cayman Action and the New York Action to be first determined in the New York Action.

O.    On 7 December 2023, the U.S. Court entered an order withdrawing the reference to the United States Bankruptcy Court for the Chapter 15 proceedings "with respect to matters bearing on the outcome of" the New York Action.

P.    On 18 December 2023, after extensive arm's-length discussion, the Parties informed the U.S. Court that a settlement had been reached. The U.S. Court agreed to vacate the 19 December 2023 hearing and allowed the parties 30 days (subsequently, extended to 9 February 2024) to finalise a settlement agreement and file a motion for preliminary approval of a class settlement.

Q.      It is stipulated and agreed, between the Lead Plaintiff (individually and on behalf of all other members of the Class), the Company, the Sponsor and the Individual Defendants by, and through their respective undersigned attorneys that, in consideration of the benefits flowing to the Parties from the Settlement Agreement, all claims by and between the Parties are fully, finally, and forever released and the New York Action and the Cayman Action are both dismissed with prejudice.

**DEFINED TERMS**

**1.      INTERPRETATION**

**1.1     Definitions:**

*Cayman Action* means the *inter partes* proceedings in the Cayman Action including, but not limited, to the summons for directions filed by the JOLs dated 2 October 2023.

*Cayman Court* means the Grand Court of the Cayman Islands.

*Cayman Liquidation* means proceedings *In re Pioneer Merger Corp. (In Official Liquidation)*, FSD No. 258 Of 2023 (MRHCJ) before the Cayman Court.

*Cayman Petition* means proceedings *In re Pioneer Merger Corp. (In Official Liquidation)*, FSD No. 0006 of 2023 (DDJ) before the Cayman Court.

*Chapter 15 Proceeding* means proceedings *In re Pioneer Merger Corp. (In Official Liquidation)*, Case No. 23-11663 (DSJ) (Bankr. S.D.N.Y.).

*Class* has the meaning given in Clause 2.

*Class A Shareholders* means the holders of Class A Shares whose shares were redeemed as at the Redemption Date.

*Class A Shares* means the Class A shares which were beneficially issued to public shareholders in the Company's initial public offering.

*Class B Shareholders* means the Sponsor, Todd Davis, MHC 2021 Descendants Trust, and Oscar Salazar.

*Class B Shares* means the Class B shares which were issued to the Class B Shareholders.

*Class Member* means any member of the Class, as defined in Clause 2.

*Company* means Pioneer Merger Corp. (In Official Liquidation) and its heirs, legal representatives, attorneys, advisors, executors, administrators, predecessors, trusts, trustees, parents, affiliates, subsidiaries, officers, directors, partnerships, partners, agents, employees, immediate family members, successors, and assigns, in their capacities as such.

*Complaint* means the operative complaint filed by Lead Plaintiff in the New York Action.

*Continental Casualty Company Policy* means insurance policy No. 652304448.

**Individual Defendants** means the following individuals named as defendants in the New York Action: Jonathan Christodoro, Rick Gerson, Oscar Salazar, Ryan Khoury, Scott Carpenter, Matthew Corey, Mitchell Caplan, and Todd Davis, and their respective heirs, legal representatives, attorneys, advisors, executors, administrators, predecessors, trusts, trustees, parents, affiliates, subsidiaries, officers, directors, partnerships, partners, agents, employees, immediate family members, successors, and assigns, in their capacities as such.

**JOLs** means Alexander Lawson and Christopher Kennedy of Alvarez & Marsal Cayman Islands Limited in their capacity as Joint Official Liquidators of the Company.

**Lead Counsel** means Morris Kandinov LLP and Morrow Ni LLP.

**Lead Plaintiff** means Funicular Funds, LP and its heirs, legal representatives, attorneys, advisors, executors, administrators, predecessors, trusts, trustees, parents, affiliates, subsidiaries, officers, directors, partnerships, partners, agents, employees, immediate family members, successors, and assigns, in their capacities as such.

**Letter Agreement** means the 12 January 2021 agreement entered into among the Company, Sponsor, and the Individual Defendants.

**Motion to Dismiss** means the motion to dismiss (or alternatively, stay) that the U.S. Defendants filed in the New York Action on 6 March 2023.

**New York Action** means the case captioned *Funicular Funds, LP v. Pioneer Merger Corp., et al.*, No. 22-cv-10986-JSR (S.D.N.Y.) before the U.S. Court.

**Sanction Application** means the Summons for Directions filed by the JOLs on 29 September 2023 and the affidavit in support of that summons filed by the JOLs on 27 October 2023.

**Settlement Administrator** means the firm appointed and authorised by the U.S. Court to supervise and administer the settlement procedure.

**Redemption Date** means the date of the redemption of Class A Shares, which was effective as of 13 January 2023.

**Released Claims** means all claims and causes of action, rights, liabilities, suits, debts, obligations, objections, demands, damages, losses, judgments, matters, issues of every nature, and description whatsoever, including Unknown Claims, whether arising under federal law, state law, statutory law, common law, foreign law, or any other law, rule or regulation that: (i) relate to any of the facts or circumstances alleged in the Complaint, including but not limited to the Letter Agreement, the Termination Fee, the distribution of the Company's assets, and the decision to redeem the Class A Shareholders; (ii) were or could have been asserted by or against any Party or Class Member in the New York Action, Cayman Action, Cayman Liquidation, Cayman Petition, or Chapter 15 Proceedings; and/or relate to any actions or omissions by the Company, the Sponsor, and the Individual Defendants; or (iii) relate to or arise from the filing, prosecution, or defense of the New York Action, or the Cayman Action, Cayman Liquidation, Cayman Petition, or Chapter 15 Proceedings. For the avoidance of doubt, the Released Claims do not include any claims relating to the enforcement of this agreement or claims based on conduct that occurs after the Effective Date of the Settlement.

**Settlement Notice** means the Notice of (i) Proposed Settlement; (ii) Settlement Hearing; and (iii) Motion for Attorneys' Fees and Litigation Expenses.

**Settlement Fund** means the Settlement Amount, which has the meaning given in Clause 3, plus any and all interest earned thereon after the date hereof.

**Sponsor** means Pioneer Merger Sponsor LLC and its heirs, legal representatives, attorneys, advisors, executors, administrators, predecessors, trusts, trustees, parents, affiliates, subsidiaries, officers, directors, partnerships, partners, agents, employees, immediate family members, successors, and assigns, in their capacities as such, including, but not limited to, Alpha Wave Global LP and Patriot Global Management, LP.

**Unknown Claims** means (i) any Released Claims that the Lead Plaintiff or any other Class Member does not know or suspect to exist in his, her, or its favour at the time of the Settlement, which, if known by him, her, or it, might have affected his, her, or its decision(s) with respect to the Settlement, or (ii) any Released Claims that any U.S. Defendant does not know or suspect to exist in his, her, or its favour at the time of the release of the Released Plaintiff's Persons, which, if known by him, her, or it, might have affected his, her, or its decision(s) with respect to the Settlement.

**U.S. Court** means the United States District Court for the Southern District of New York.

**U.S. Defendants** means the Defendants in the New York Action—specifically, the Company, the Sponsor, and the Individual Defendants.

## 2.    CLASS

2.1    In accordance with the U.S. Court's Opinion and Order dated 1 November 2023 granting class certification, the Class means all persons who held a legal or beneficial interest in Class A Shares of the Company as at the Redemption Date, whose shares were redeemed, including their legal representatives, heirs, successors-in-interest, transferees, and assignees of all such holders, and which for the avoidance of doubt includes any legal and natural persons who held a legal or beneficial interest in such shares, but excluding:

(a)    the Company;

(b)    the Sponsor;

(c)    the Individual Defendants;

(d)    any person who is, or was at the Redemption Date a trustee, officer, director, or partner of either the Sponsor, Alpha Wave Global, LP, Patriot Global Management, LP, or their affiliates;

(e)    the immediate family members, legal representatives, heirs, successors-in-interest, successors, transferees, or assignees, of any of the persons listed in Clause 2.1(a) to (d); and

(f)     any trusts, estates, entities, or accounts that held Class A Shares for the benefit of any of the persons listed in Clause 2.1(a) to (d) (each separately an ***Excluded Party*** and collectively, the ***Excluded Parties***).

**3.     SETTLEMENT AMOUNT**

3.1     The Settlement Amount shall be:

(a)     US$13,000,000; and

(b)     the additional amount, if any, consisting of 80% of all proceeds received by the Sponsor or the Individual Defendants or any of their affiliates pursuant to the terms of Continental Casualty Company Policy No. 652304448.

3.2     The Company, pursuant to 3.1(a), and the Sponsor and the Individual Defendants, pursuant to 3.1(b), respectively, shall set aside the Settlement Amount and ensure it is held in an interest-bearing account for the benefit of the Class. The Company, not the Sponsor or Individual Defendants, shall have the responsibility or liability to pay that portion of the Settlement Amount set forth in 3.1(a).  For the avoidance of doubt, the Company shall not pay any portion of the Settlement Amount set forth in 3.1(b), such amounts being payable by the Sponsor or the Individual Defendants from the proceeds of Continental Casualty Company Policy No. 652304448 when and if such proceeds of Continental Casualty Company Policy No. 652304448 are received (if ever).  All amounts so set aside, plus any and all interest earned thereon, shall be paid directly into the Settlement Fund.

3.3     The Settlement Amount is an all-in settlement number, meaning that it includes an award by the U.S. Court of fees, expenses, costs, or other amounts to Lead Counsel and/or Lead Plaintiff, as well as any other administrative costs and expenses associated with the dealing with or administrating the Class.

3.4     The Settlement Agreement, including the Settlement Amount, requires the approval of the Cayman Court and the U.S. Court.

**4.     SETTLEMENT FUND**

4.1     The Settlement Fund shall be used to pay:

(a)     any taxes owed with respect to the Settlement Fund;

(b)     any notice and administration costs;

(c)     any litigation expenses awarded by the U.S. Court;

(d)     any attorneys' fees awarded by the U.S. Court; and

(e)     any other costs and fees approved by the U.S. Court.

4.2     The balance in the Settlement Fund, that is, the "Net Settlement Fund," shall be distributed to Class Members on a pro-rata basis.

4.3    The Parties agree that the Settlement Fund is intended to be a Qualified Settlement Fund within the meaning of applicable Treasury Regulations and that Lead Counsel, as administrators of the Settlement Fund, shall be solely responsible for filing or causing to be filed all informational and other tax returns as may be necessary or appropriate for the Settlement Fund. Lead Counsel shall also be responsible for causing payment to be made from the Settlement Fund of any taxes owed with respect to the Settlement Fund. The Company, the Sponsor, and the Individual Defendants shall not have any liability or responsibility for any such taxes.

4.4    All notice and administration costs will be paid from the Settlement Fund. Notice and administration costs shall include, without limitation, the actual costs of distributing the Class notice and Settlement Agreement notice, publishing the summary notices, and the administrative expenses incurred and fees charged by a Settlement Administrator, if any, in connection with providing notice and administering the Settlement Fund.

4.5    If the proceeds of Continental Casualty Company Policy No. 652304448 are received following the Effective Date, an additional Settlement Fund shall be established to receive such proceeds and the provisions of this Section 4 shall apply to such proceeds, *mutatis mutandis*.

## 5.    DISMISSAL OF PROCEEDINGS AND COURT APPROVAL OF SETTLEMENT; CONDITIONS OF SETTLEMENT

5.1    **Cayman Action**

(a)    Within ten (10) Business Days from the date of execution by the Parties of this agreement, the JOLs shall file a sanction application with the Cayman Court seeking approval of the Settlement in the terms set out in this agreement.

(b)    The Parties shall not oppose the JOLs' sanction application referred to in Clause 5.1(a).

(c)    This agreement shall not in any way impact, limit, or impose any restriction on the JOLs' capacity to exercise their powers and carry out their duties as JOLs of the Company in the Cayman Liquidation Proceedings or in any other proceeding.

5.2    **New York Action**

(a)    By any deadline established by the U.S. Court, and no later than ten (10) Business Days from the execution by the Parties of this agreement, the Lead Plaintiff shall move for approval by the U.S. Court of the Settlement and upon such approval (and approval of the Settlement by the Cayman Court), the New York Action and all claims asserted therein shall be dismissed with prejudice.

5.3    The Effective Date of the Settlement shall be deemed to occur on the occurrence or written waiver of all of the following events, which events the Parties shall use their best efforts to achieve:

(a)    the U.S. Court's final approval of the Settlement Agreement;

(b)    the U.S. Court's entry of a judgment (substantially in the form attached hereto as Exhibit A), including releases materially in the form set out in Clause 6, and the dismissal with

prejudice of the New York Action as to all U.S. Defendants, without the award of any damages, costs, or fees, except as provided for in this Settlement Agreement;

(c)    the judgment referenced in Clause 5.3(b) becoming final after the expiration of any right of any Party or Class Member to appeal any judgment in the New York Action, or after approval of this Settlement Agreement and corresponding judgment have been affirmed in their entirety by the court of last resort to which appeal has been taken and such affirmance is no longer subject to further appeal or review;

(d)    final approval of the Settlement Agreement by the Cayman Court;

(e)    the execution and filing of consent orders in connection with the Cayman Action and the Cayman Islands proceedings FSD 6 of 2023 (DDJ), in both cases to the effect that there shall be no order as to the costs of both proceedings; and

(f)    authorisation has been obtained from those who have been excluded from the Class for their accounts to be suppressed from the distribution of the Net Settlement Fund.

5.4    The releases set forth in Clause 6 below shall be given full effect upon the occurrence of the Effective Date.

5.5    In the event that, despite the good faith efforts of the Parties, the Effective Date fails to occur, the Class Representative and the Class shall have no right to the Settlement Amount or the Settlement Fund. The New York Action and the Cayman Action shall proceed in accordance with the guidance provided by the respective courts in those actions, and the Parties shall revert to their respective positions as of 17 December 2023.

(a)    In the event that the Effective Date fails to occur, any Notice and Administration Costs, taxes, or tax expenses paid or incurred, including any related fees, shall not be returned or repaid.

5.6    The U.S. Court's approval of the Settlement Agreement shall be required to bind the Class to the terms of this agreement.

5.7    The Parties agree that, save for this clause 5 and clauses 1, 7, 11, 12, 14.1, 15 and 19, in order for this Settlement Agreement to be binding and effective, approval of the settlement in the terms set out in this clause must be obtained by both the U.S. Court and the Cayman Court.

## 6.    RELEASES

6.1    **Lead Plaintiff and the Class**

(a)    Lead Plaintiff, and each of the other members of the Class, on behalf of themselves and their respective heirs, legal representatives, attorneys, advisors, executors, administrators, predecessors, trusts, trustees, parents, affiliates, subsidiaries, officers, directors, partnerships, partners, agents, employees, immediate family members, successors, and assigns, in their capacities as such, shall be deemed to have, and by operation of law shall have, fully, finally and forever compromised, settled, released, resolved, relinquished, waived, and discharged each and every Released Claim against the Company, the Sponsor, the Individual Defendants, National Union Fire Insurance

Company of Pittsburgh, PA, with respect to its obligations under Policy No. 03-588-22-88, and Endurance American Insurance Company, with respect to its obligations under Policy No. DOX30002882300, including any Unknown Claims, as defined above, and shall forever be barred and enjoined from prosecuting any or all of Released Claims against the Company, the Sponsor, and the Individual Defendants in any forum, and in any jurisdiction. Lead Plaintiff and Class Counsel represent and warrant that none of Lead Plaintiff's or the Class Members' Released Claims have been assigned, encumbered, or in any manner transferred in whole or in part.

6.2    **The Company, the Sponsor, and the Individual Defendants**

(a)    The Company, the Sponsor, and the Individual Defendants on behalf of themselves, and their respective heirs, legal representatives, attorneys, advisors, executors, administrators, predecessors, trusts, trustees, parents, affiliates, subsidiaries, officers, directors, partnerships, partners, agents, employees, immediate family members, and assigns, in their capacities as such, shall be deemed to have, and by operation of law shall have, fully, finally and forever compromised, settled, released, resolved, relinquished, waived, and discharged each and every Released Claim against the Lead Plaintiff and all members of the Class, and shall forever be barred and enjoined from prosecuting any or all of claims against the Lead Plaintiff and all members of the Class in any forum, in any jurisdiction.

(b)    The Company on behalf of itself and its respective heirs, legal representatives, attorneys, advisors, executors, administrators, predecessors, trusts, trustees, parents, affiliates, subsidiaries, officers, directors, partnerships, partners, agents, employees, immediate family members, executors, administrators, predecessors, successors, and assigns, in their capacities as such, shall be deemed to have, and by operation of law shall have, fully, finally and forever compromised, settled, released, resolved, relinquished, waived and discharged each and every claim against, and discharged each and every Released Claim against the Sponsor and the Individual Defendants, and shall forever be barred and enjoined from prosecuting any or all of claims against the Sponsor and the Individual Defendants in any forum, in any jurisdiction.

(c)    The Sponsor and Individual Defendants, on behalf of themselves and their respective heirs, legal representatives, attorneys, advisors, executors, administrators, predecessors, trusts, trustees, parents, affiliates, subsidiaries, officers, directors, partnerships, partners, agents, employees, immediate family members, and assigns, in their capacities as such, shall be deemed to have, and by operation of law shall have, fully, finally and forever compromised, settled, released, resolved, relinquished, waived, and discharged each and every Released Claim against the Company, and shall forever be barred and enjoined from prosecuting any or all of claims against the Company in any forum, in any jurisdiction. For the avoidance of doubt, the releases in this Clause do not apply to claims explicitly preserved by the terms of the Settlement Agreement, including, without limitation, any rights or claims arising under Clause 6.5.

6.3 **Release of Unknown Claims**

(a) With respect to any and all Released Claims of Lead Plaintiff, any Class Member, or the U.S. Defendants, the Parties stipulate and agree that Lead Plaintiff and the U.S. Defendants shall expressly waive, and each of the other Class Members by operation of law shall be deemed to have waived, any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States or other jurisdiction, or principle of common law or foreign law, which is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

6.4 Lead Plaintiff and the U.S. Defendants acknowledge, and each of the other Class Members by operation of law are deemed to acknowledge, that they may discover facts in addition to or different from those now known or believed to be true with respect to the Parties' Released Claims, but that it is the intention of the Parties, and by operation of law the other Class Members, to completely, fully, finally, and forever extinguish any and all Released Claims of any Party or Class Member, known or unknown, suspected or unsuspected, which now exist, or heretofore existed, or may hereafter exist, and without regard to the subsequent discovery of additional or different facts. The Parties also acknowledge, and each of the other Class Members by operation of law are deemed to acknowledge, that the inclusion of "Unknown Claims" in the definition of Released Claims is separately bargained for and is a key element of the Settlement.

6.5 By this agreement, any and all Released Claims that the Parties may have in connection with the assets of the Company or by virtue of their status as former shareholders of the Company are fully, finally, and forever released. Notwithstanding any of the above releases or any other provision of this Settlement Agreement, the Parties (including the Lead Plaintiff, on behalf of itself and the Class), acknowledge and agree that any and all surplus assets of the Company (which for the avoidance of doubt shall not include the Settlement Fund), net of any creditor claims and costs and expenses of the liquidation of the Company, shall be distributed to the Class B Shareholders.

6.6 The releases referred to in Clauses 6.1 and 6.2 above do not cover any claims by the Parties in relation to the enforcement of this agreement or conduct occurring after this agreement.

**7.    NO ADMISSION OF WRONGDOING**

7.1 The Company, the Sponsor, and Individual Defendants deny liability and maintain that they have meritorious defenses in the New York Action and the Cayman Action.

7.2 This agreement, the communications and/or discussions leading to its execution shall not be used against:

(a)    The Company, the Sponsor, or the Individual Defendants in the New York Action, Chapter 15 Proceedings, Cayman Action, Cayman Liquidation, Cayman Petition, or any other proceeding, in any jurisdiction, as evidence of, or construed as, or deemed to be evidence of, any presumption, concession, or admission by the Company, the Sponsor, and any of the Individual Defendants with respect to the truth of any fact alleged by the Lead Plaintiff or the validity of any claim that was or could have been asserted or the deficiency of any defense that has been or could have been asserted in any of the foregoing proceedings, or in any litigation, or of any liability, fault or wrongdoing of any kind of the Company, the Sponsor, and any of the Individual Defendants; and

(b)    The Lead Plaintiff in the New York Action, Chapter 15 Proceedings, Cayman Action, Cayman Liquidation, Cayman Petition, or any other proceeding, in any jurisdiction, as evidence of, or construed as, or deemed to be evidence of, any presumption, concession, or admission by Lead Plaintiff with respect to the truth of any fact alleged by the Company, the Sponsor, and any of the Individual Defendants or the validity of any defense that was or could have been asserted or the deficiency of any claim that has been or could have been asserted in any of the foregoing proceedings, or in any litigation, or of any liability, fault or wrongdoing of any kind of Lead Plaintiff or any Class Member.

## 8.    NOT A CLAIMS-MADE SETTLEMENT

8.1    The Parties agree that the Settlement is not a claims-made settlement. The Company shall have no right to the return of the Settlement Amount, or any portion thereof, for any reason whatsoever other than those set forth herein.

## 9.    SETTLEMENT ADMINISTRATOR

9.1    The Lead Plaintiff, in consultation with the JOLs, may but is not required to appoint a Settlement Administrator.

9.2    Neither the Company, the Sponsor, nor any other Individual Defendants, shall have any involvement in or any responsibility, authority, or liability whatsoever for the selection of the Settlement Administrator, the administration of the Settlement Fund, or disbursement of the Net Settlement Fund, and shall have no liability whatsoever to any person or entity, including, but not limited to, the Lead Plaintiff, any other members of the Class, or Lead Counsel in connection with the foregoing. The Company shall cooperate in the administration of the Settlement Amount to the extent reasonably necessary to effectuate its terms.

9.3    To the largest extent practical, Lead Counsel will utilize the Depository Trust Company ("**DTC**") to effect the distribution of the Net Settlement Fund to the Class in the same manner as the prior distribution payments to Class A Shareholders. No claim form will be required in order for a member of the Class to receive payment from the Net Settlement Fund. The Net Settlement Fund shall be distributed pro rata to Class Members.

9.4    The Parties acknowledge that the DTC will not distribute the Net Settlement Fund to the Class without authorization from those who have been excluded from the Class, for their accounts to

be suppressed from the distribution of the Net Settlement Fund. Such authorization shall not be unreasonably withheld or delayed. The Company, the Sponsor, and/or Individual Defendants represent that they have information sufficient to identify such persons and accounts, and shall cooperate to provide such authorizations no later than 10 business days after execution of this agreement.

9.5    Lead Counsel shall be responsible for supervising the administration of the Settlement Fund and the disbursement of the Net Settlement Fund subject to U.S. Court approval. Neither the Company, the Sponsor, nor any of the Individual Defendants shall be permitted to review, contest, or object to any decision of Lead Counsel or, if applicable, the Settlement Administrator with respect to the distribution of the Net Settlement Fund.

## 10.    FEES AND COSTS

10.1    **Lead Counsel and Lead Plaintiff's Attorneys' Fees and Expenses**

(a)    Lead Counsel shall apply to the U.S. Court for an award of attorney's fees, costs and expenses, which shall be paid solely from the Settlement Fund. Lead Counsel's application for attorneys' fees and/or litigation expenses is not the subject of agreement between the Company or the Lead Plaintiff. In addition, Lead Plaintiff shall apply to the U.S. Court for an incentive award.

(b)    Any attorneys' fees, incentive award, and litigation expenses that are awarded by the U.S. Court shall be paid immediately upon award, notwithstanding the existence of any timely filed objections thereto, or potential for appeal therefrom, or collateral attack on the Settlement Agreement or any part thereof, subject to Lead Counsel's obligation to make appropriate refunds or repayments to the Settlement Fund, plus accrued interest at the same net rate as is earned by the Settlement Fund, if the Settlement is terminated pursuant to the terms of this Settlement Agreement or if, as a result of any appeal or further proceedings on remand, or successful collateral attack, the award of attorneys' fees and/or litigation expenses is reduced or reversed and such order reducing or reversing the award has become final. Lead Counsel shall make the appropriate refund or repayment in full no later than thirty (30) days after receiving from a court of appropriate jurisdiction notice of any such reduction of the award of attorneys' fees and/or litigation expenses by a non-appealable order, or notice of the termination of the Settlement Agreement. Any disapproval or modification of an application for an award of attorneys' fees and/or litigation expenses by the U.S. Court shall not affect the enforceability of this Settlement Agreement, nor provide any of the Parties with the right to cancel or terminate the Settlement Agreement, nor impose an obligation on the Company to increase the compensation paid in connection with the settlement. Any appeal relating to an award of attorneys' fees or expenses will not affect the finality of the Settlement Agreement, or the Releases provided herein.

(c)    Lead Counsel shall allocate any attorneys' fees awarded amongst themselves. The Company, the Sponsor, and the Individual Defendants shall have no responsibility for or liability whatsoever with respect to the allocation or award of attorneys' fees or litigation

expenses. For the avoidance of doubt, the attorneys' fees and litigation expenses that are awarded to Lead Counsel shall be payable solely from the Settlement Fund.

10.2    **Parties to Otherwise Bear their Own Costs**

(a)    Subject to Clauses 4.1 and 10.1, the Parties shall bear their own costs, including without limitation in connection with this Settlement Agreement, the Cayman Action, the Chapter 15 Proceedings, and the Cayman Liquidation generally.

(b)    Upon the Settlement Agreement becoming effective, the Parties shall cause their attorneys to execute and file consent orders in connection with the Cayman Action and the Cayman Petition, in both cases to the effect that there shall be no order as to the costs of those proceedings.

**11.    WITHOUT PREJUDICE**

11.1    All documents produced and any discussions or oral presentations that occur, for the purposes of the Settlement, shall be strictly confidential as between the Parties and shall:

(a)    be conducted on a "without prejudice" basis, confidential, for settlement purposes only and subject to U.S. Federal Rule of Evidence 408;

(b)    be privileged;

(c)    be inadmissible in any proceedings, whether in the Cayman Islands, the U.S. Court, or in any other court in any other jurisdiction;

(d)    not subject to use in any other proceeding for cross examination;

(e)    not be subject to disclosure in any other proceedings whatsoever;

(f)    not subject to production in any other proceeding whatsoever;

(g)    not constitute any waiver of privilege whether between the Parties or between any of them and a third party; and

(h)    not form the basis of, or any representation in relation to, any potential, current or future legal claim or proceedings.

**12.    ROLE AND INDEMNIFICATION OF THE JOLS**

12.1    The JOLs are not parties to this agreement.

12.2    The JOLs, solely in their capacity as joint official liquidators of the Company and without personal liability, acknowledge the Settlement in the terms of this agreement and approve the Company executing this agreement.

12.3    The Parties agree not to call the JOLs as a witness to give evidence regarding the settlement. If any of the Parties act in breach of this Clause, that Party will fully indemnify the JOLs in respect of reasonable costs incurred in such legal proceedings.

14

**13.    ENTIRE AGREEMENT**

13.1    This agreement is intended by the Parties to be a binding agreement that sets forth all material terms and obligations of the Parties in connection with the settlement, and the Parties shall use their best efforts to consummate the settlement contemplated herein.

13.2    This agreement constitutes the entire agreement between the Parties and supersedes and extinguishes all previous agreements, promises, assurances, warranties, representations and understandings between them, whether written or oral, relating to the settlement.

**14.    WARRANTIES**

14.1    Each Party and their legal representatives warrant and represent that they have authority to enter into this agreement on behalf of the Party and/or their respective clients, respectively, subject only to the approval of the U.S. Court and the Cayman Court.

14.2    Each Party agrees that it shall have no remedies in respect of any statement, representation, assurance or warranty (whether made innocently or negligently) that is not set out in this agreement.

14.3    Each Party agrees that it shall have no claim for innocent or negligent misrepresentation or misstatement based on any statement in this agreement.

14.4    The Parties warrant and represent that they have complied fully with the strictures of Rule 11 of the U.S. Federal Rules of Civil Procedure.

14.5    The Sponsor and Individual Defendants warrant and represent that, until the Effective Date, they will use commercially reasonable efforts to obtain all available coverage, proceeds and/or other payments available under the Continental Casualty Company Policy for the benefit of the Class, which efforts shall not be interpreted to require the Sponsor and/or the Individual Defendants to retain independent coverage counsel or initiate litigation against the insurer. The Parties acknowledge that the Company is not an "Insured Person" as that term is defined in the Continental Casualty Company Policy, and that neither the Company, the Sponsor, nor the Individual Defendants have made any representations as to the availability of coverage under the Continental Casualty Company Policy.

14.6    The Parties intend this Settlement Agreement to be a final and complete resolution of all disputes asserted or which could be asserted by the Lead Plaintiff and any other Class Members against the Company, the Sponsor, and the Individual Defendants with respect to the Lead Plaintiff's Released Claims. Accordingly, Lead Plaintiff and its counsel and the Company, Sponsor, and the Individual Defendants and their counsel agree not to assert in any forum that the New York Action, the Cayman Action or the Cayman Petition were brought by Lead Plaintiff or defended by the Company, the Sponsor, and the Individual Defendants in bad faith.  Lead Plaintiff, the Company, the Sponsor, and the Individual Defendants represent and agree that the terms of the Settlement Agreement were negotiated at arm's-length and in good faith by the Parties, and reflect a settlement that was reached voluntarily based upon adequate information and sufficient discovery and after consultation with experienced legal counsel.

**15.    VARIATION**

15.1    No variation or modification of this agreement shall be effective unless it is in writing and signed by the Parties (or their legal representatives), which have executed this agreement.

**16.    WAIVER**

16.1    No failure or delay by a Party to exercise any right or remedy provided under this agreement or by law shall constitute a waiver of that or any other right or remedy, nor shall it prevent or restrict the further exercise of that or any other right or remedy. No single or partial exercise of such right or remedy shall prevent or restrict the further exercise of that or any other right or remedy.

**17.    SEVERANCE**

17.1    If any provision or part-provision of this agreement is determined by a final judgment of a court of competent jurisdiction to be invalid, illegal or unenforceable, that provision or part-provision shall be deemed deleted, but that shall not affect the validity and enforceability of the rest of this agreement.

17.2    If any provision or part-provision of this agreement is deemed deleted under Clause 17.1, the Parties shall have 10 business days from the date of such determination to negotiate in good faith to agree to a replacement provision that, to the greatest extent possible, achieves the intended commercial result of the original provision.

**18.    GOVERNING LAW**

18.1    This agreement and any dispute or claim (including non-contractual disputes or claims) arising out of or in connection with it, shall be governed by and construed in accordance with New York law.

**19.    JURISDICTION**

19.1    Each Party irrevocably and unconditionally consents to the exclusive jurisdiction of the U.S. District Court for the Southern District of New York for any dispute or claim arising out of or relating to the subject matter, formation, or enforcement of this agreement, and agrees not to commence any action, suit or proceeding except in such court.

**EXECUTION PAGE**

---
For and on behalf of Pioneer Merger
Corp. (In Official Liquidation)

---
Name

---
For and on behalf of Pioneer Merger
Sponsor LLC

---
Name

---
For and on behalf of Funicular Funds, LP,
as representative of the Class

Jacob Ma-Weaver
---
Name

---
For and on behalf of Jonathan
Christodoro

---
Name

---
For and on behalf of Rick Gerson

---
Name

---
For and on behalf of Oscar Salazar

---
Name

---
For and on behalf of Ryan Khoury

---
Name

**EXECUTION PAGE**

_____
For and on behalf of Pioneer Merger
Corp. (In Official Liquidation)

Alexander Lawson
_____
Name

_____
For and on behalf of Pioneer Merger
Sponsor LLC

Rick Gerson
_____
Name

_____
For and on behalf of Funicular Funds, LP,
as representative of the Class

_____
Name

_____
For and on behalf of Jonathan
Christodoro

_____
Name

_____
For and on behalf of Rick Gerson

Rick Gerson
_____
Name

_____
For and on behalf of Oscar Salazar

_____
Name

_____
For and on behalf of Ryan Khoury

_____
Name

**EXECUTION PAGE**

_____
For and on behalf of Pioneer Merger
Corp. (In Official Liquidation)

_____
Name

_____
For and on behalf of Pioneer Merger
Sponsor LLC

_____
Name

_____
For and on behalf of Funicular Funds, LP,
as representative of the Class

_____
Name

_____
For and on behalf of Jonathan
Christodoro

Jonathan Christodoro
_____
Name

_____
For and on behalf of Rick Gerson

_____
Name

_____
For and on behalf of Oscar Salazar

Oscar Salazar
_____
Name

_____
For and on behalf of Ryan Khoury

Ryan Khoury
_____
Name

17

**EXECUTION PAGE CONTINUED.**

_____            Scott Carpenter
_____
For and on behalf of Scott Carpenter        Name


_____            Matthew Corey
_____
For and on behalf of Matthew Corey          Name


_____            Mitchell Caplan
_____
For and on behalf of Mitchell Caplan        Name


_____            Todd Davis
_____
For and on behalf of Todd Davis             Name

18

**EXHIBIT A**

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

FUNICULAR FUNDS, LP, individually and
on behalf of all others similarly situated,

                     Plaintiff,

        v.

PIONEER MERGER CORP., PIONEER
MERGER SPONSOR LLC, JONATHAN
CHRISTODORO, RICK GERSON, OSCAR
SALAZAR, RYAN KHOURY, SCOTT
CARPENTER, MATTHEW COREY,
MITCHELL CAPLAN, and TODD DAVIS,

                     Defendants.

Civil Action No. 22-10986-JSR

## [PROPOSED] JUDGMENT APPROVING CLASS ACTION SETTLEMENT

WHEREAS, a consolidated securities class action entitled *Funicular Funds, LP v. Pioneer Merger Corp.*, et al. (the "Action") is pending in this Court;

WHEREAS, (a) lead plaintiff Funicular Funds, LP ("Lead Plaintiff"), on behalf of itself and the Class (as defined below); and (b) Pioneer Merger Corp., (In Official Liquidation) ("Pioneer"), acting through its Joint Official Liquidators ("JoLs"), Pioneer Merger Sponsor LLC, Jonathan Christodoro, Rick Gerson, Oscar Salazar, Ryan Khoury, Scott Carpenter, Matthew Corey, Mitchell Caplan, and Todd Davis (the "Defendants") have determined to settle and dismiss with prejudice all claims asserted in this Action on the terms and conditions set forth in the Stipulation and Agreement of Settlement, dated as of February 8, 2024 (the "Stipulation"), subject to approval of this Court (the "Settlement");

WHEREAS, unless otherwise defined in this Judgment, the capitalized terms herein shall have the same meaning as they have in the Stipulation;

WHEREAS, by Order of November 1, 2023 (ECF 43), the Court previously certified a class (the "Class") of the following persons (the "Class Members"): All persons who held Class A Public Shares of Pioneer as of the redemption date of January 13, 2023 whose shares were redeemed, including their legal representatives, heirs, successors-in-interest, transferees, and assignees of all such holders, but excluding (i) Defendants in this action; (ii) any person who is, or was at the time of the redemption, a trustee, officer, director, or partner of Pioneer Merger Sponsor LLC, Alpha Wave Global, LP, Patriot Global Management, LP, or their affiliates; (iii) the immediate family members of any of the foregoing; (iv) the legal representatives, heirs, successors-in interest, successors, transferees, and assigns of the foregoing; and (v) any trusts, estates, entities, or accounts that held Pioneer Class A Public Shares for the benefit of any of the foregoing;

WHEREAS, by Order dated _____, 2024 (the "Preliminary Approval Order"), this Court: (a) found, pursuant to Rule 23(e)(1)(B) of the Federal Rules of Civil Procedure, that it would likely be able to approve the Settlement as fair, reasonable, and adequate under Rule 23(e)(2); (b) ordered that notice of the proposed Settlement be provided to Class Members; (c) provided Class Members with the opportunity to object to the proposed Settlement; and (d) scheduled a hearing regarding final approval of the Settlement;

WHEREAS, due and adequate notice has been given to the Class regarding the Settlement;

WHEREAS, the Court conducted a hearing on _____ _____, 2024 (the "Settlement Fairness Hearing"), to consider, among other things, (a) whether the terms and conditions of the Settlement are fair, reasonable, and adequate to the Class, and should therefore be approved; and (b) whether a judgment should be entered dismissing the Action with prejudice as against the Defendants; and

WHEREAS, the Court has reviewed and considered the Stipulation, all papers filed and proceedings held herein in connection with the Settlement, all oral and written comments received regarding the Settlement, and the record in the Action;

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED:

1.      **Jurisdiction:** The Court has jurisdiction over the subject matter of the Action, and all matters relating to the Settlement, as well as personal jurisdiction over all of the Parties and each of the Class Members for purposes of the Settlement.

2.      **Incorporation of Settlement Documents:** This Judgment incorporates and makes a part hereof: (a) the Stipulation filed with the Court on February 8, 2024; and (b) the Notice and the Summary Notice, both of which were filed with the Court on February 8, 2024.

3.      **Notice:** The Court finds that the dissemination of the Notice and the publication of the Summary Notice: (a) were implemented in accordance with the Preliminary Approval Order; (b) constituted the best notice practicable under the circumstances; (c) constituted notice that was reasonably calculated, under the circumstances, to apprise Class Members of (i) the pendency of the Action; (ii) the effect of the Settlement (including the releases to be provided thereunder); (iii) Lead Counsel's motion for an award of attorneys' fees, incentive award and litigation expenses; (iv) their right to object to any aspect of the Settlement, the Plan of Allocation, and/or Lead Counsel's motion for attorneys' fees, incentive award and litigation expenses; and (v) their right to appear at the Settlement Fairness Hearing; (d) constituted due, adequate, and sufficient notice to all persons and entities entitled to receive notice of the proposed Settlement; and (e) satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), as amended, and all other applicable law and rules.

4. **Final Settlement Approval and Dismissal of Claims:** Pursuant to, and in accordance with, Rule 23(e)(2) of the Federal Rules of Civil Procedure, this Court hereby fully and finally approves the Settlement set forth in the Stipulation in all respects, and finds that the Settlement is, in all respects, fair, reasonable, and adequate to the Class. Specifically, the Court finds that: (a) Lead Plaintiff and Lead Counsel have adequately represented the Class; (b) the Settlement was negotiated by the Parties at arm's length; (c) the relief provided for the Class under the Settlement is fair, reasonable, and adequate taking into account the costs, risks, and delay of litigating this action through summary judgment, trial, and appeal, the proposed means of distributing the Fund to the Settlement Class, and the proposed attorneys' fee award, incentive award, and litigation expenses; and (d) the Settlement treats members of the Class equitably relative to each other. The Parties are directed to implement, perform, and consummate the Settlement in accordance with the terms and provisions contained in the Stipulation.

5. The Action and all of the claims asserted against Defendants in the Action by Lead Plaintiff and the other Class Members are hereby dismissed with prejudice. The Parties shall bear their own costs and expenses, except as otherwise expressly provided in the Stipulation.

6. **Binding Effect:** The terms of the Stipulation and of this Judgment shall be forever binding on Defendants, Lead Plaintiff, and all other Class Members, as well as their respective successors and assigns.

7. **Releases:** The releases set forth in the Stipulation are expressly incorporated herein in all respects, including with respect to the Lead Plaintiff, Defendants and Class Members. The releases are effective as of the Effective Date (as defined by the Stipulation). Accordingly, this Court orders that:

a.      Without further action by anyone, and subject to Paragraph 8 below, upon the Effective Date of the Settlement, Lead Plaintiff, and Class Members, on behalf of themselves and their respective predecessors, successors, assigns, heirs, representatives, administrators, executors, devisees, legatees, and estates in their capacities as such only, shall be deemed to have, and by operation of law and of this Judgment shall have, fully, finally, and forever compromised, settled, released, resolved, relinquished, waived, discharged, and dismissed with prejudice any or all of the Released Claims, and shall forever be barred and enjoined from directly or indirectly commencing, instituting, participating in, prosecuting, or continuing to prosecute any action or other proceeding in any court of law or equity, arbitration, tribunal, administrative forum, or any other forum, asserting any or all of the Released Claims.

b.      Without further action by anyone, and subject to Paragraph 8 below, upon the Effective Date of the Settlement, Defendants, on behalf of themselves and their respective predecessors, successors, assigns, heirs, representatives, administrators, executors, devisees, legatees, and estates in their capacities as such only, shall be deemed to have, and by operation of law and of this Judgment shall have, fully, finally, and forever compromised, settled, released, resolved, relinquished, waived, and discharged any or all of the Released Claims, and shall forever be barred and enjoined from directly or indirectly commencing, instituting, participating in, prosecuting, or continuing to prosecute any action or other proceeding in any court of law or equity, arbitration, tribunal, administrative forum, or any other forum, asserting any or all of the Released Claims.

8.      Notwithstanding the above, nothing in this Judgment shall bar any action by any of the Parties to enforce or effectuate the terms of the Stipulation or this Judgment.

9.      **Rule 11 Findings:** The Court finds and concludes that the Parties and their respective counsel have complied in all respects with the requirements of Rule 11 of the Federal Rules of Civil Procedure in connection with the institution, prosecution, defense, and settlement of the Action.

10.      **Plan of Allocation:** The Court hereby authorizes and approves the Plan of Allocation set forth in the Notice.

11.      **Retention of Jurisdiction:** Without affecting the finality of this Judgment in any way, this Court retains continuing and exclusive jurisdiction over: (a) the Parties for purposes of the administration, interpretation, implementation, and enforcement of the Settlement; (b) the disposition of the Settlement Fund; (c) any motion for an award of attorneys' fees, incentive award and/or litigation expenses by Lead Counsel in the Action that will be paid from the Settlement Fund; and (e) the Class Members for all matters relating to the Settlement. Such orders shall in no way affect or delay the finality of this Judgment and shall not affect or delay the Effective Date of the Settlement.

12.      **Modification of the Agreement of Settlement:** Without further approval from the Court, Lead Plaintiff and Defendants are hereby authorized to agree to and adopt such amendments or modifications of the Stipulation or any exhibits attached thereto to effectuate the Settlement that: (a) are not materially inconsistent with this Judgment; and (b) do not materially limit the rights of Class Members in connection with the Settlement. Without further order of the Court, Lead Plaintiff and Defendants may agree to reasonable extensions of time to carry out any provisions of the Settlement.

13.      **Termination of Settlement:** If the Settlement is terminated as provided in the Stipulation or if the Effective Date of the Settlement otherwise fails to occur, this Judgment shall

be vacated and rendered null and void, and shall be of no further force and effect, except as otherwise provided by the Stipulation, and this Judgment shall be without prejudice to the rights of Lead Plaintiff, the other Class Members, and Defendants, and Lead Plaintiff and Defendants shall revert to their respective positions in the Action as of immediately prior to December 18, 2023.

14.     **<u>Entry of Final Judgment</u>:** There is no just reason to delay the entry of this Judgment as a final judgment in this Action. Accordingly, the Clerk of the Court is expressly directed to immediately enter this final judgment in this Action.

SO ORDERED this _____ day of _____ 2024.

_____
The Honorable Jed S. Rakoff
United States District Judge