**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| FUNICULAR FUNDS, LP, individually and on behalf of all others similarly situated,<br><br>              Plaintiff,<br><br>      v.<br><br>PIONEER MERGER CORP., PIONEER MERGER SPONSOR LLC, JONATHAN CHRISTODORO, RICK GERSON, OSCAR SALAZAR, RYAN KHOURY, SCOTT CARPENTER, MATTHEW COREY, MITCHELL CAPLAN, and TODD DAVIS,<br><br>              Defendants. | Civil Action No. 22-10986-JSR<br><br>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND APPROVAL OF CLASS NOTICE** |

**MORRIS KANDINOV LLP**
Aaron T. Morris
Andrew W. Robertson
305 Broadway, 7th Floor
New York, NY 10007
(212) 431-7473
aaron@moka.law
andrew@moka.law

**MORROW NI LLP**
Angus F. Ni
506 2nd Ave., Suite 1400
Seattle, WA 98104
(646) 453-7294
angus@moni.law

*Attorneys for Plaintiff and the Class*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. iii

PRELIMINARY STATEMENT ........................................................................................... 1

RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ..................................... 2

     A.     The Parties ............................................................................................... 2

     B.     The SPAC's IPO ...................................................................................... 2

     C.     The SPAC's Failed Business Combination Results In A Termination Fee ........... 3

     D.     Pioneer Announces That Class A Shares Will Be
              Redeemed Without Distribution Of The Termination Fee ...................................... 3

     E.     Lead Plaintiff Files This Action On Behalf Of Class A Shareholders ................... 4

     F.     Denial Of Defendants' Motion to Dismiss .............................................................. 4

     G.     Fact And Expert Discovery ..................................................................................... 4

     H.     The Court's Certification Of The Class And
              Appointment Of Class Representative And Class Counsel ..................................... 5

     I.     The Parties' Summary Judgment Motions .............................................................. 6

     J.     The Cayman Proceedings And Petition For Chapter 15 Recognition ..................... 6

     K.     Settlement Negotiations And The Terms Of The Proposed Settlement ................... 8

ARGUMENT ......................................................................................................................... 9

I.     THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL ........... 9

     A.     Standard for Preliminary Approval Of Class Action Settlements ......................... 9

     B.     The Court Likely Will Be Able To Approve
              The Proposed Settlement Under Rule 23(e)(2) ...................................................... 10

          1.     Lead Plaintiff and Class Counsel Zealously Represented the Class ......... 10

          2.     The Settlement Is The Result Of Arm's-Length
                  Negotiations At An Advanced Stage Of Litigation ................................... 12

          3.     The Settlement Provides Adequate Relief ................................................. 13

4.      The Court Has Already Certified The Class,
        And Its Members Will Be Treated Equitably ...........................................17

II.     NOTICE TO THE CLASS SHOULD BE APPROVED ...................................................18

III.    PROPOSED SCHEDULE OF SETTLEMENT EVENTS................................................19

CONCLUSION ...........................................................................................................................20

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                                              **Page(s)**

*In re Austrian & German Bank Holocaust Litigation,*
   80 F. Supp. 2d 164 (S.D.N.Y. 2000) ........................................................................12

*City of Detroit v. Grinnell Corp.,*
   495 F.2d 448 (2d Cir. 1974) ...................................................................10, 13, 15

*City of Providence v. Aeropostale, Inc.,*
   No. 11 Civ. 7132, 2014 WL 1883494 (S.D.N.Y. May 9, 2014) ...............................19

*Cordes & Co. Financial Services v. A.G. Edwards & Sons, Inc.,*
   502 F.3d 91 (2d Cir. 2007) .....................................................................................11

*In re Credit Default Swaps Antitrust Litigation,*
   No. 13md2476, 2016 WL 2731524 (S.D.N.Y. 2016) ..................................................16

*In re Currency Conversion Fee Antitrust Litigation,*
   No. 01-CV-1409, 2006 WL 3247396 (S.D.N.Y. Nov. 8, 2006) .................................14

*D'Amato v. Deutsche Bank,*
   236 F.3d 78 (2d Cir. 2001) .....................................................................................12

*Dial Corp. v. News Corp.,*
   317 F.R.D. 426 (S.D.N.Y. 2016) ............................................................................17

*Denny v. Deutsche Bank AG,*
   443 F.3d 253 (2d Cir. 2006) ...................................................................................11

*Doe 1 v. JPMorgan Chase Bank N.A.,*
   No. 22-cv-10019, 2023 WL 3945773 (S.D.N.Y. June 12, 2023)...............................11

*In re Facebook, Inc. IPO Securities & Derivative Litigation,*
   343 F. Supp. 3d 394 (S.D.N.Y. 2018) ....................................................................10

*Gordon v. Vanda Pharm. Inc.,*
   No. 19 CV 1108, 2022 WL 4296092 (E.D.N.Y. Sept. 15, 2022)........................ 15-17

*In re GSE Bonds Antitrust Litigation,*
   414 F. Supp. 3d 686 (S.D.N.Y. 2019) ...............................................................9-10, 15

*Menkes v. Stolt-Nielsen S.A.,*
   270 F.R.D. 80 (D. Conn. 2010) ...............................................................................19

*In re Merrill Lynch Tyco Research Securities Litigation*,
  249 F.R.D. 124 (S.D.N.Y. 2008) .................................................................................... 18

*In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*,
  330 F.R.D. 11 (E.D.N.Y. 2019) ................................................................................... 9, 16

*Rosenfeld v. Lenich*,
  No. 18-CV-6720, 2021 WL 508339 (E.D.N.Y. Feb. 11, 2021) ................................... 16

*Simerlein v. Toyota Motor Corp.*,
  No. 17-CV-1091, 2019 WL 1435055 (D. Conn. Jan. 14, 2019) .................................. 13

*In re Telik, Inc. Securities Litigation*,
  576 F. Supp. 2d 570 (S.D.N.Y. 2008) .......................................................................... 12

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005) ............................................................................................ 19

*In re Warner Chilcott Ltd. Securities Litigation*,
  No. 06 Civ. 11515, 2008 WL 5110904 (S.D.N.Y. Nov. 20, 2008) ............................. 19

## **Rules**             **Page(s)**

Fed. R. Civ. P. 23 ......................................................................................................... *passim*

## PRELIMINARY STATEMENT

As the Court well knows, this litigation was a dispute over the distribution of the residual assets of Pioneer Merger Corp. ("Pioneer" or the "SPAC") between public stockholders, who held Class A common stock ("Public Shares"), and the SPAC's insiders, who held Class B common stock ("Founder Shares"). After a year of personalized, contentious litigation and months of extensive multi-party negotiations among Funicular Funds LP ("Lead Plaintiff"), the SPAC by and through its Joint Official Liquidators (the "JOLs"), the SPAC's sponsor Pioneer Merger Sponsor LLC (the "Sponsor"), and the SPAC's officers and directors (the "Individual Defendants"), the parties reached a resolution that returns substantial value to public stockholders (the "Settlement"). Under the terms of the Settlement, the SPAC will distribute (a) $13,000,000 to public stockholders, representing approximately 65% of its available cash, as well as (b) a contingent additional amount consisting of 80% of any proceeds received from the Defendants' Side A Policy (defined below). The amount equates to an approximately $0.36 per share recovery before expenses and an anticipated minimum recovery of $0.23, net of costs, which may be increased by a recovery under the Side A Policy.

The Settlement is a tremendous outcome that expeditiously returns capital to stockholders, avoids the otherwise certain depletion of the SPAC's resources through defense costs, and provides certainty with respect to strong, but novel claims by public stockholders to which Defendants had numerous untested defenses. It will also send a clear message to market participants as to the entitlement of public stockholders to SPAC assets, and it came at great risk, burden and expense to Lead Plaintiff, which pioneered an arduous journey to recovery on behalf of its fellow Pioneer stockholders.

For the reasons set forth below, Lead Plaintiff respectfully requests that the Court grant preliminary approval of the Settlement as fair and adequate and permit Notice to be directed to the Class in advance of final approval.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Parties

Lead Plaintiff is a private investment fund that was, prior to the redemption, the largest holder of Pioneer Class A Public Shares. It is represented in this matter by Morris Kandinov LLP and Morrow Ni LLP ("Class Counsel").

Pioneer is a SPAC organized as a Cayman Islands exempted company and formed to make a business combination. It was managed by the Sponsor and Individual Defendants.[1]

### B.    The SPAC's IPO

Pioneer completed its IPO in January 2021. Through the IPO, Pioneer issued 40.25 million Class A Shares and raised $402.5 million in proceeds, which were placed in a trust account pending completion of a business combination. If Pioneer failed to consummate a business combination within two years after completing its IPO, it was required to liquidate and distribute its assets (including the IPO proceeds) to public shareholders.

In connection with the IPO, the SPAC also issued to the Sponsor and Individual Defendants approximately 10 million Founder Shares for less than a penny per share. If Pioneer successfully completed a business combination, the Class B Shares would convert into Class A Shares, giving holders of Class B Shares approximately 20% of the SPAC's equity ownership of the combined entity. If it failed to complete a business combination, however, the Founder Shares would be

---

[1]    The Individual Defendants are Jonathan Christodoro, Chairman; Rick Gerson, co-President; Oscar Salazar, co-President and director; Ryan Khoury, Chief Executive Officer; Scott Carpenter, Chief Operating Officer; Matthew Corey, Chief Financial Officer; Mitchell Caplan, director; and Todd Davis, director.

"worthless" (as stated in the IPO prospectus) and the Sponsor and Individual Defendants would "lose their entire investment."

**C.      The SPAC's Failed Business Combination Results In A Termination Fee**

On May 27, 2021, Pioneer announced that it had entered into a Business Combination Agreement with Acorns Grow Incorporated ("Acorns"), a financial-technology company (the "Transaction"). The Transaction with Acorns was expected to close in the second half of 2021, pending shareholder approval.

In late 2021, Acorns informed Pioneer that it would not proceed with the transaction. In January 2022, Pioneer announced that it had entered into a Termination Fee Agreement with Acorns, pursuant to which Acorns agreed to pay Pioneer a fee (the "Termination Fee") of up to $32.5 million in exchange for Pioneer agreeing to release any rights to enforce, and any claims arising out of, the Business Combination Agreement. The $32.5 million Termination Fee was paid in full by December 2022.

**D.      Pioneer Announces That Class A Shares Will Be
          Redeemed Without Distribution Of The Termination Fee**

On December 15, 2022, Pioneer announced that it failed to consummate a business combination within the allowed period and would wind up.

Pioneer further disclosed that, under its governing documents, it would redeem all outstanding Class A Shares, but that the redemption payments to public stockholders would not include any portion of the Termination Fee. Rather, the payments would be limited only to the SPAC's assets held in trust (*i.e.*, the IPO proceeds, plus interest), which would be distributed pro rata, "and no other amounts."

**E.**      **Lead Plaintiff Files This Action On Behalf Of Class A Shareholders**

On December 30, 2022, Lead Plaintiff filed this action seeking to recover the Termination Fee on behalf of a class of the SPAC's Class A shareholders (subject to certain exclusions). Lead Plaintiff alleged, among other things, that the Sponsor and the Individual Defendants had disclaimed any right to the Termination Fee in a letter agreement entered in connection with the SPAC's IPO (the "Sponsor Agreement"), and that their plan to arrogate the Termination Fee for themselves was a breach of their fiduciary duties as well as of the Sponsor Agreement. Lead Plaintiff asserted claims for breach of contract, breach of fiduciary duty, declaratory judgment, and unjust enrichment.

**F.**      **Denial Of Defendants' Motion to Dismiss**

On March 6, 2023, Defendants filed a Motion to Dismiss or to Stay the action, and a hearing on that motion was held April 17, 2023. (ECF 12-19.) By Order dated May 1, 2023, this Court denied Defendants' motion as to Plaintiff's claims for breach of contract and declaratory judgment, while dismissing Plaintiff's claim for breach of fiduciary duty (without prejudice to that claim being pursued in the Cayman Islands) and its claim for unjust enrichment (which Plaintiff had agreed to withdraw). *See* ECF 22, 42. The Court also refused to stay the action in favor of liquidation proceedings in the Cayman Islands (as discussed further below).

**G.**      **Fact And Expert Discovery**

The parties conducted discovery for six months. Lead Plaintiff's discovery included document requests resulting in the production of nearly 37,000 pages of documents, extensive written discovery requests, and depositions of Defendants Christodoro, Corey, Caplan, and Davis, as well as a 30(b)(6) representative of the SPAC. In addition, Defendants conducted significant discovery of Lead Plaintiff, including document requests, written discovery requests, and depositions of Lead Plaintiff's principal in his personal capacity and as a 30(b)(6) designee, as

well as multiple non-party subpoenas for depositions of several of Lead Plaintiff's clients, associates, and acquaintances.

Expert discovery included the exchange of expert reports and depositions of two expert witnesses on behalf of Plaintiff—Professors Usha Rodrigues and Michael Stegemoller—and two expert witnesses on behalf of Defendants—Professor Steven Davidoff Solomon and Colin McKie, K.C., a Cayman-admitted attorney testifying as an expert on Cayman law. All discovery, including expert discovery, was completed by November 2, 2023.

**H.    The Court's Certification Of The Class And
        Appointment Of Class Representative And Class Counsel**

On September 27, 2023, Lead Plaintiff filed a Motion for Class Certification and Appointment of Class Representative and Class Counsel, which was opposed by the Sponsor and the Individual Defendants. ECF 27-29, 32-33, 36. A hearing was held on October 27, 2023. The Court ruled from the bench that Lead Plaintiff's motion would be granted, and thereafter issued an Order dated November 1, 2023, which certified the class as follows (the "Class"):

> All persons who held Class A Public Shares of Pioneer as of the redemption date of January 13, 2023 whose shares were redeemed, including their legal representatives, heirs, successors-in-interest, transferees, and assignees of all such holders, but excluding (i) Defendants in this action; (ii) any person who is, or was at the time of the redemption, a trustee, officer, director, or partner of Pioneer Merger Sponsor LLC, Alpha Wave Global, LP, Patriot Global Management, LP, or their affiliates; (iii) the immediate family members of any of the foregoing; (iv) the legal representatives, heirs, successors-in-interest, successors, transferees, and assigns of the foregoing; and (v) any trusts, estates, entities, or accounts that held Pioneer Class A Public Shares for the benefit of any of the foregoing.

(ECF 43.) The Court also appointed Lead Plaintiff as Class Representative and appointed the undersigned as Class Counsel.

I.      **The Parties' Summary Judgment Motions**

The parties filed their respective motions for summary judgment on November 7, 2023, and those motions were fully briefed on December 4, 2023. ECF 48-79. A hearing on the motions was scheduled for December 19, 2023. However, in the weeks leading up to the hearing, Lead Plaintiff, Defendants, and the JOLs engaged in extensive settlement discussions in an effort to obtain a resolution that would provide significant value to the Class and avoid depletion of the SPAC's available assets through continued litigation. The day before the scheduled hearing, the parties contacted chambers to advise that a settlement had been reached.

J.      **The Cayman Proceedings And Petition For Chapter 15 Recognition**

In addition to this action, the parties also litigated proceedings in the Cayman Islands regarding their respective entitlement to the SPAC's assets, including the Termination Fee, and a Chapter 15 proceeding initiated by the JOLs in United States Bankruptcy Court.

On January 12, 2023, in order to preserve the SPAC's assets until this litigation could be resolved and to remove control from the Sponsor and the Individual Defendants, Lead Plaintiff, at its expense, filed a petition (the "Winding Up Petition") for the winding up of the SPAC in the Grand Court of the Cayman Islands (the "Cayman Court"). On May 22, 2023, Lead Plaintiff consented to the dismissal of the Winding Up Petition based on the understanding that the SPAC would commence a voluntary liquidation proceeding, including the appointment of independent liquidators to take control of the SPAC and its assets.

More than two months later, during which time discovery proceeded in this action, the SPAC was placed into voluntarily liquidation on August 11, 2023, and Alexander Lawson and Christopher Kennedey of Alvawrez & Marsal Cayman Islands Limited were appointed as JOLs. On August 28, 2023, the Messrs. Lawson and Kennedy filed a petition seeking to continue the

Debtor's winding up proceedings under supervision of the Cayman Court and to be appointed Joint Official Liquidators ("JOLs"). The Cayman Court granted the petition on September 27, 2023.

The JOLs filed a Summons for Directions on September 29, 2023 and an affidavit in support on October 27, 2023 (together, the "Sanction Application") seeking that the Cayman Court determine to whom the JOLs are required to distribute the SPAC's remaining assets, including the Termination Fee, by way of an *inter partes* proceeding (*i.e.*, a litigation between potential claimants to the assets). On October 31, 2023, the Cayman Court ordered that the matter be adjudicated as an *inter partes* proceeding between the SPAC's Class B Shareholders and its former Class A Shareholders (*i.e.*, the parties in this action) and listed the matter for hearing on December 14, 2023.

On October 19, 2023, the JOLs filed a petition for recognition of a foreign proceeding pursuant to Chapter 15 of the Bankruptcy Code, which sought to stay enforcement of any judgment entered in this action. *See In re Pioneer Merger Corp. (In Official Liquidation)*, No. 23-BK-11663-DSJ (Bankr. S.D.N.Y.) (the "Chapter 15 Proceeding"). Lead Plaintiff appeared in the Chapter 15 Proceeding and opposed the petition. At a hearing on November 15, 2023, Judge Jones declined to grant recognition on the record before him, agreed that Lead Plaintiff was entitled to discovery in connection with its opposition to the petition, and directed the parties to meet and confer and submit a proposed order with respect to a schedule for discovery and any interim relief agreed upon by the parties. Prior to the parties submitting a proposed order, however, this Court issued an Order on December 7, 2023 withdrawing the reference "with respect to matters bearing on the outcome of this case." ECF 80.

On November 24, 2023, Lead Plaintiff filed a summons for direction in the Cayman Court, which was listed for hearing on December 7, 2023. At that hearing, the Cayman Court vacated the

hearing listed for December 14, 2023 in the *inter partes* proceeding to allow time for certain issues relevant to both this action and the Cayman Action to be first determined in the action before this Court.

**K.      Settlement Negotiations And The Terms Of The Proposed Settlement**

Since the initial filing of this action, the parties have engaged in extensive, arm's-length negotiations to resolve the matters in dispute, both directly and through counsel. Following their appointment, the JOLs have been involved in the settlement discussions as quasi-mediators, meeting separately with Lead Plaintiff and with the Sponsor and Individual Defendants to candidly discuss their respective claims to the Termination Fee and the risks of continued litigation, and working to broker a resolution that would avoid further dissipation of the SPAC's remaining assets through litigation expenses.

On December 18, 2023, the parties reached an agreement-in-principle pursuant to which the Class will receive (prior to attorneys' fees and expenses): (a) $13,000,000 paid from the SPAC's remaining assets, plus (b) 80% of all proceeds received by the Sponsor and the Individual Defendants (or any of their affiliates) pursuant to the Side A insurance policy (the "Side A Policy") providing coverage to the SPAC's officers and directors up to a policy limit of $2,500,000. As discussed more fully below, Lead Plaintiff agreed to these settlement terms because they are fair, reasonable, and adequate in view of the extent to which the SPAC's assets have been dissipated through litigation expenses and counsel's assessment of the risks of continued litigation.[2]

---

[2]      Lead Plaintiff notes that Defendants have stated disagreement with certain elements of the relevant background and procedural history set forth herein, but do not object to Lead Plaintiff's request for preliminary approval.

## ARGUMENT

### I. THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

#### A. Standard for Preliminary Approval Of Class Action Settlements

Rule 23(e) requires that a class action settlement be presented to the Court for approval, and that the Court approve the settlement if it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). "Courts in this circuit recognize a 'strong judicial policy in favor of settlements, particularly in the class action context.'" *In re Facebook, Inc. IPO Sec. & Deriv. Litig.*, 343 F. Supp. 3d 394, 408 (S.D.N.Y. 2018), *aff'd sub nom. In re Facebook, Inc.*, 822 Fed. App'x 40 (2d Cir. 2020).

Approval of a class action settlement typically occurs in two stages: (1) preliminary approval, "where 'prior to notice to the class a court makes a preliminary evaluation of fairness,' and (2) final approval, where 'notice of a hearing is given to the class members, [and] class members and settling parties are provided the opportunity to be heard on the question of final court approval.'" *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 691-92 (S.D.N.Y. 2019) (alteration in original). "In weighing a grant of preliminary approval, district courts must determine whether 'giving notice is justified by the parties' showing that the court *will likely be able to*: (1) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal.'" *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 28 (E.D.N.Y. 2019).

District Courts in the Second Circuit apply a settlement approval analysis based on two overlapping multi-factor tests. Courts first consider the factors specified in Rule 23(e)(2)—namely, whether:

(A)     the class representatives and class counsel have adequately represented the class;

(B)     the proposal was negotiated at arm's length;

(C)     the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and

(D)     the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Courts also weigh the *Grinnell* factors set forth by the Second Circuit in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974). *See GSE Bonds*, 414 F. Supp. 3d at 692. These factors include:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class throughout trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Grinnell*, 495 F.2d at 463.

Lead Plaintiff respectfully submits that, because these factors are satisfied here, the final approval of the Settlement, and continued certification of the class, are both "likely" and thus preliminary approval is merited.

**B.     The Court Likely Will Be Able To Approve
The Proposed Settlement Under Rule 23(e)(2)**

**1.     Lead Plaintiff and Class Counsel Zealously Represented the Class**

The adequacy of representation determination "generally 'entails inquiry as to whether: (1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation.'" *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007).

Here, Lead Plaintiff's interests are fully aligned with the interests of the entire Class. Each member is entitled to a pro rata portion of a common asset: the SPAC's residual assets, net of expenses. Lead Plaintiff and the Class have suffered the same injuries (deprivation of the disputed assets) and stand to realize the same benefits (a pro rata distribution). Moreover, Lead Plaintiff was the largest shareholder of Pioneer, and thus has maintained an "interest in vigorously pursuing the claims of the class" to an extent arguably larger than any other member of the Class. *See Denny v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006); *Doe 1 v. JPMorgan Chase Bank N.A.*, No. 22-cv-10019 (JSR), 2023 WL 3945773, at *7 (S.D.N.Y. June 12, 2023) (lead plaintiff was adequate because she was incentivized to "secure as large an award of damages as is possible"). Lead Plaintiff has repeatedly demonstrated throughout this action that it is committed to a substantial recovery for the Class, including by (a) devoting substantial time and resources, primarily of its principal, to litigation strategy, negotiations, expert work, and fact discovery demands, including significant document production and depositions; (b) advancing significant litigation expenses, primarily in connection with the Winding Up Proceeding, which was necessary to fully protect the interests of the Class while litigation ensued; and (c) assuming substantial personal and client-relationship risks in connection with the litigation.

Class Counsel has also zealously represented the Class. Class Counsel (i) developed a deep understanding of the facts of the case through careful assessment of the SPAC's public disclosures and the contractual and organizational documents governing the respective rights of Class A and Class B stockholders, leading to the development of the novel claims asserted; (ii) briefed, argued and won Defendants' Motion to Dismiss or to Stay; (iii) conducted extensive fact discovery, including review and analysis of thousands of pages of documents and depositions of five witnesses; (iv) conducted expert discovery, including extensive consultation with Lead Plaintiff's

two testifying experts, who are leading academics studying SPACs, and depositions of Defendants' two experts; (v) briefed, argued and won Lead Plaintiff's class certification motion; (vi) briefed and fully prepared to argue *three separate* summary judgment motions filed by Lead Plaintiff, the SPAC, and the Sponsor and Individual Defendants; (vii) participated in the litigation before the Cayman Court and coordinated Cayman counsel with respect to this case, all in a necessary effort to protect the interests of the Class; and (viii) conducted difficult and complicated negotiations with the JOLs, Sponsor and Individual Defendants in an effort to find a resolution that maximized the interests of the Class. Indeed, the Court acknowledged at class certification that Class Counsel "has been ably and diligently litigating this suit" (ECF 43 at 10), and counsel only redoubled its efforts following that hearing, resulting in a significant recovery for the Class through the Settlement on the eve of the Court's consideration of Lead Plaintiff's dispositive motion for summary judgment.

### 2. The Settlement Is The Result Of Arm's-Length Negotiations At An Advanced Stage Of Litigation

When a class settlement is reached through arm's-length negotiations between experienced, capable counsel, it "will enjoy a presumption of fairness." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173-74 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001); *see also In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 575 (S.D.N.Y. 2008) ("presumption of correctness"). Here, Class Counsel is experienced and capable in SPAC-related litigation: not only have Class Counsel handled multiple cases involving SPACs, but they are simultaneously handling three other cases involving materially identical circumstances in which the SPAC's residual assets were appropriated by sponsors. With that experience and expertise, Class Counsel was uniquely situated to develop a view as to the merits

of the Settlement, and Class Counsel judged the outcome for the Class to be excellent under the circumstances.

Further, there is no "evidence or indicia suggesting that the negotiations were collusive" (because they were not). *See Simerlein v. Toyota Motor Corp.*, No. 17-CV-1091, 2019 WL 1435055, at *14 (D. Conn. Jan. 14, 2019). The Settlement arose from extensive, arm's-length negotiations over the course of several months as highly contentious litigation continued apace. The discussions were facilitated by the JOLs, who attempted to provide an independent perspective as to the parties' respective legal positions and assessments of the risks of litigation. While the parties initially engaged in settlement discussions at an early stage of the litigation, they came nowhere near reaching an agreement until after completion of fact and expert discovery, full briefing of summary judgment motions, and on the eve of the hearing on Lead Plaintiff's dispositive motions and final pre-trial conference. *See Facebook*, 343 F.Supp.3d at 412 (*Grinnell* factor weighs in favor of approval where settlement arises after "discovery was completed, the class had been certified, and numerous pre-trial motions had been briefed and heard"); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 139 (S.D.N.Y. 2010) ("The advanced stage of the litigation and extensive amount of discovery completed weigh heavily in favor of approval."). The extensive discovery and motion practice in this case provided each side with the necessary insight to evaluate the strengths and weaknesses of their respective claims and defenses and laid the groundwork for an arm's-length resolution. Therefore, the Court should conclude that this consideration weighs in favor of preliminary approval.

3.    **The Settlement Provides Adequate Relief**

The proposed settlement is an excellent result and readily satisfies Rule 23(e)(2)(C). Public stockholders will obtain 65% of Pioneer's available cash before expenses and fees (this amount is additional to the distribution of the funds held in trust by the SPAC). Moreover, the Class stands

to receive the additional amount of 80% of any recovery made under the Side A Policy, which Class Counsel will coordinate prior to the Court's final approval. In other words, public stockholders will have recovered not only the entirety of the IPO proceeds plus interest, which were previously paid upon redemption, but an additional $13 million (minus fees and expenses) and the vast majority of any proceeds under the Side A Policy. The alternative, absent this litigation, was that public stockholders would receive nothing beyond their initial investment.

This result is equally impressive when considered in view of the specific factors identified in Rule 23(e)(2)(C).

<u>Costs, Risks, and Delay of Trial and Appeal</u>. While Lead Plaintiff and Class Counsel believe the claims asserted against Defendants were strong and supported by substantial evidence, there were significant risks to continued litigation. Defendants vigorously contested liability and raised a host of arguments in opposition to Lead Plaintiff's claims, including contending that (a) Class A shareholders are not intended third-party beneficiaries of the Sponsor Agreement; (b) the waiver provision in the Sponsor Agreement applies only to the Trust Account and does not apply to the Termination Fee; (c) the Sponsor Agreement was terminated upon the initiation of liquidation proceedings; and (d) redemption of Class A shareholders extinguished any rights they may have had to the SPAC's assets. Lead Plaintiff and Class Counsel believe each of these arguments is without merit, but if the Court or a jury were to adopt any one of them, then the Class could be left with no recovery at all. The proposed settlement eliminates these risks, while allowing the Class to recover a significant portion of the Termination Fee. *See GSE Bonds*, 414. F. Supp. 3d at 694 (court "should balance the benefits afforded the Class, including immediacy and certainty of recovery, against the continuing risks of litigation"); *Gordon v. Vanda Pharm. Inc.*, No. 19 CV 1108(FB)(LB), 2022 WL 4296092, at *4 (E.D.N.Y. Sept. 15, 2022) (considering risks of

continuing litigation where "the parties remain fiercely divided on fundamental issues of liability").

Moreover, "even if [Plaintiff] 'were to prevail at trial, post-trial motions and the potential for appeal could prevent the class members from obtaining any recovery for several years, if at all.'" *GSE Bonds*, 414. F. Supp. 3d at 693-94. These considerations are particularly relevant here where Lead Plaintiff faced not only the prospect of the appeal of any favorable ruling in this action, but also the risk that Defendants would use the Cayman Action to prevent distribution of the SPAC's remaining assets to Class A shareholders even if this Court determined that Class B shareholders had contractually waived their right to the Termination Fee. Indeed, Defendants and their purported Cayman-law expert took the position here and in the Cayman Action that Class A shareholders were entitled only to the SPAC's Trust Account, that redemption of their shares extinguished any right on the part of Class A shareholders to further distributions in the SPAC's liquidation, and that the SPAC's remaining assets should be treated as *bona vacantia* and tendered to the Cayman Islands government. Although Lead Plaintiff vigorously disputes each of those contentions, litigating them through the Cayman Action necessarily presented risks and threatened to further dissipate the SPAC's assets.

Further, a defendant's ability to withstand or avoid a greater judgment and the range of reasonableness of the settlement fund further favor preliminary approval. *Grinnell*, 495 F.2d at 463. Here, the Settlement reflects approximately 65% of the available cash (after satisfaction of the SPAC's expenses) and 80% of the proceeds from the Side A Policy. *See, e.g.*, *In re Currency Conversion Fee Antitrust Litig.*, No. 01-CV-1409, 2006 WL 3247396, at *6 (S.D.N.Y. Nov. 8, 2006) (preliminarily approving settlements "representing roughly 10-15% of the credit transaction fees collected by Defendants"); *Gordon*, 2022 WL 4296092, at *6 (preliminarily approving a

settlement of "approximately 10.2% of reasonably recoverable damages")). While Defendants may have personal assets that Lead Plaintiff could have pursued, there was significant litigation risk as to the extent of indemnification under Cayman law and the availability of such assets to satisfy a judgment (indeed, this Court twice denied Lead Plaintiff's efforts to amend the operative complaint to attack Defendants' indemnification rights and lack thereof).

Method of Distributing Settlement Funds to the Class. The Court should also conclude that the proposed method of distributing relief is effective and equitable. Here, the Settlement is to be distributed pro rata to Class A shareholders (other than those excluded from the Class), and rather than requiring the time and expense of a claims submission process, the settlement administrator will leverage the information previously used to distribute redemption proceeds to distribute the settlement funds. Such a straightforward plan ensures "the equitable and timely distribution of a settlement fund without burdening the process in a way that will unduly waste the fund." *In re Credit Default Swaps Antitrust Litig.*, No. 13md2476 (DLC), 2016 WL 2731524, at *4 (S.D.N.Y. 2016). This satisfies Rule 23(e)(2)(C)(ii).

Proposed Attorneys' Fees, Expenses and Incentive Award. The terms of the proposed settlement as to attorneys' fees and litigation expenses also favor preliminary approval. Courts in this Circuit routinely "find requests for attorney's fees which are approximately one-third of the class action's total settlement . . . to be reasonable." *Gordon*, 2022 WL 4296092, at *5) (citing *Rosenfeld v. Lenich*, No. 18-CV-6720, 2021 WL 508339, at *7 (E.D.N.Y. Feb. 11, 2021)); *see also Payment Card*, 991 F. Supp. 2d at 445. Here, the proposed fee award of 30% of the Settlement is fair and reasonable in view of Class Counsel's expedited investigation and filing of this action, coordination with the Winding Up Proceeding, litigation through Rule 12(b) motions, fact and expert discovery, a contested class certification motion, briefing of summary judgment, and

preparation for argument on dispositive motions, and ultimately Class Counsel's ability to obtain this Settlement for the Class. Class Counsel will also seek reimbursement of the reasonable costs of litigation, including expenses incurred by Lead Plaintiff, up to $600,000, all of which was reasonably and necessarily incurred in connection with prosecuting and protecting the rights of the Class. *Dial Corp. v. News Corp.*, 317 F.R.D. 426, 438-39 (S.D.N.Y. 2016) (awarding reimbursement of expenses, including expert witnesses and outside contract counsel, and noting where "the lion's share of these expenses reflect" typical costs of litigation there is no need for the court to "depart from the common practice in this circuit of granting expense requests").

In addition, Lead Plaintiff will apply for an incentive award not to exceed $195,000. While not insubstantial, an incentive award of this magnitude is warranted by the exceptionally unique facts of this case and the contributions made by Lead Plaintiff—at risk of its business and livelihood—including devoting hundreds of hours consulting with Class Counsel and counsel in the Winding Up Proceeding with respect to litigation strategy, responding to extensive and overly burdensome written discovery, producing thousands of pages of documents, sitting for an all-day deposition, risking substantial litigation expenses, including the fees of Cayman counsel in the Winding Up Proceeding. *See Dial Corp.*, 317 F.R.D. at 438-39 (noting factors to guide court in awarding incentive awards, including personal risk, time and effort, other burdens, and ultimate recovery).

Agreements Required To Be Identified Under Rule 23(e)(3). All agreements pertaining to the settlement are set forth in the Stipulation of Settlement attached as Exhibit 1 to Lead Plaintiff's Motion for Preliminary Approval.

### 4. The Court Has Already Certified The Class, And Its Members Will Be Treated Equitably

In determining whether to grant preliminary approval, the Court also determines whether

it "will likely be able to" certify the class for purposes of judgment on the proposal and whether the proposed settlement treats Class members equitably. *See* Fed. R. Civ. P. 23(e)(1)(B)(ii), (e)(1)(D). Here, the Court certified the Class pursuant to Rule 23(a) and Rule 23(b)(1) on November 1, 2023, and the proposed settlement treats Class members equitably by distributing the settlement proceeds pro rata based on their respective ownership of Class A Public Shares. Pro rata distribution is inherently fair, required by the SPAC's governing documents, and was the same methodology use to allocate the assets held in trust. *See, e.g.*, *In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 135 (S.D.N.Y. 2008) ("A plan of allocation that calls for the *pro rata* distribution of settlement proceeds on the basis of investment loss is presumptively reasonable.").

## II.   <u>NOTICE TO THE CLASS SHOULD BE APPROVED</u>

Rule 23(e)(1)(B) requires "appropriate notice" in a "reasonable manner" to a class certified under Rule 23(b)(1), as this one is here. As outlined in the Preliminary Approval Order, the settlement administrator retained by Lead Counsel and the JOLs will notify the Class of the Settlement electronically through the same means used to previously notify the Class of developments in the Chapter 15 Proceeding. The Notice will advise Class Members of, among other things, (i) the pendency and nature of the class action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses and the essential terms of the Settlement; and (iv) that a class member may enter an appearance through an attorney if the member so desires. The Notice will also provide specifics on the date, time, and place of the Settlement Hearing and set forth the procedures, as well as deadlines, for objecting to the Settlement, the proposed Plan of Allocation, and the forthcoming motion for attorneys' fees, incentive award, and litigation expenses. The proposed Preliminary Approval Order also requires Lead Counsel to cause a Summary Notice to be published in Investor's Business Daily and to be transmitted once over the PR Newswire within ten (10) business days of the mailing of the Notice. Lead Counsel will also cause a copy of the

Notice to be readily available on a dedicated settlement website established by the settlement administrator.

The form and manner of providing notice to the Settlement Class satisfy the requirements of Rule 23 and due process. The Notice and Summary Notice "fairly apprise the prospective members of the class of the terms of the proposed settlement[s] and of the options that are open to them in connection with the proceedings." *Wal-Mart*, 396 F.3d at 114. The manner of providing notice, which is known to be reliable and efficient to the Class and will be supplemented by additional publication and internet notice, represents in Class Counsel's judgment the best notice practicable under the circumstances and satisfies the requirements of due process and Rule 23. *See, e.g.*, *City of Providence v. Aeropostale, Inc.*, No. 11 Civ. 7132(CM)(GWG), 2014 WL 1883494, at *2 (S.D.N.Y. May 9, 2014); *Menkes v. Stolt-Nielsen S.A.*, 270 F.R.D. 80, 105-06 (D. Conn. 2010); *In re Warner Chilcott Ltd. Sec. Litig.*, No. 06 Civ. 11515(WHP), 2008 WL 5110904, at *3 (S.D.N.Y. Nov. 20, 2008). Accordingly, Lead Plaintiff respectfully submits that the proposed notice and related procedures are appropriate and should be approved.

## III.   PROPOSED SCHEDULE OF SETTLEMENT EVENTS

Lead Plaintiff respectfully proposes the schedule below for the Settlement-related events. The timing of events is determined by the date the Preliminary Approval Order is entered by this Court and the date this Court sets for the final approval of the Settlement (the "Settlement Fairness Hearing"). If the Court agrees with the proposed schedule, Lead Plaintiff respectfully requests that the Court schedule the Settlement Fairness Hearing for a date approximately 75 days after entry of the Preliminary Approval Order or at the Court's earliest convenience thereafter.

| Event | Deadline for Compliance |
|---|---|
| Deadline for distributing the Notice to the Class and posting the Settlement website making the Notice and other materials available for download. | No later than 20 days after entry of the Preliminary Approval Order (the "Notice Date"). |
| Deadline to publish the Notice through Investor's Business Daily and PR Newswire. | No later than 10 days after the Notice Date. |
| Deadline for Lead Plaintiff to file and serve papers in support of Final Approval. | No later than 45 days prior to the Settlement Fairness Hearing. |
| Deadline for submission of objections. | No later than 21 days prior to the Settlement Fairness Hearing. |
| Deadline for Lead Plaintiff to file reply papers in support of Final Approval. | No later than 14 days prior to the Settlement Fairness Hearing. |
| Deadline for proof of distribution and publication of the Notice. | Not later than 7 days prior to the Settlement Fairness Hearing. |
| Date for Settlement Fairness Hearing. | Lead Plaintiff requests that the Court schedule the Settlement Fairness Hearing 75 days after entry of Preliminary Approval Order or at the Court's earliest convenience. |

## **CONCLUSION**

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court enter the proposed Preliminary Approval Order (ECF 81-2) preliminarily approving the proposed Settlement as fair, reasonable, and adequate and ordering notice to the Class pursuant to the schedule above.

Dated: February 9, 2024

Respectfully submitted,

By: /s/ Aaron T. Morris

**MORRIS KANDINOV LLP**
Aaron T. Morris
Andrew W. Robertson
305 Broadway, 7th Floor
New York, NY 10007
(212) 431-7473
aaron@moka.law
andrew@moka.law

**MORROW NI LLP**
Angus F. Ni
506 2nd Ave., Suite 1400
Seattle, WA 98104
(646) 453-7294
angus@moni.law

*Attorneys for Lead Plaintiff and the Class*