O6QAFunH

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

FUNICULAR FUNDS, LP,

                Plaintiff,

          v.                          22 Civ. 10986 (JSR)

PIONEER MERGER CORP.,
                                      Settlement

                Defendant.
------------------------------x
                                      New York, N.Y.
                                      June 26, 2024
                                      3:03 p.m.

Before:

              HON. JED S. RAKOFF,

                                      District Judge

                  APPEARANCES

MORRIS KANDINOV LLP
     Attorneys for Plaintiff
BY:  ANDREW W. ROBERTSON
     WILLIAM SPRUANCE

KIRKLAND & ELLIS LLP
     Attorneys for Defendant
BY:  KYLA A. JACKSON

DLA PIPER LLP (US)
     Attorneys for Defendant
BY:  GREGORY M. JUELL
     MARC SILVERMAN
```

O6QAFunH

        (Case called)

        MR. ROBERTSON:  Good afternoon, your Honor.  Andrew Robertson of Morris Kandinov, counsel for lead plaintiff in the class.  With me at counsel's table is William Spruance, my colleague.

        THE COURT:  Good afternoon.

        MS. JACKSON:  Good afternoon, your Honor.  Kyla Jackson of Kirkland & Ellis on behalf of Pioneer Sponsor and the individual defendants.

        MR. JUELL:  Good afternoon, your Honor.  Greg Juell of DLA Piper on behalf of the joint official liquidators of Pioneer Merger Corp., here with my colleague Marc Silverman.

        THE COURT:  Good afternoon, everyone.  So we're here on the proposed final approval of the class action settlement.  With respect to the settlement itself, I have reviewed it carefully, both under the factors set forth in the Federal Rules and also under the so-called Grinnell factors, and I think it fully satisfies those standards.  So I will approve the settlement.

        I do have some questions, however, with respect to the attorney's fees, litigation expenses, and incentive award.

        So with respect to expenses, I understand that there was about $360,000 for Cayman Island counsel and that a lot of that was initially advanced by Funicular Funds, but I didn't have any indication of billing rates or anything like that.

Maybe I missed it, but I saw your time sheets.  I didn't see anything from them.

What were they charging for?

MR. ROBERTSON:  I'm sorry, your Honor.  I didn't hear the last part of the question.

THE COURT:  What were they charging?

MR. ROBERTSON:  I don't know offhand what their billing rates were, but they were the standard hourly rates for Cayman counsel.

THE COURT:  Yeah, well, what does that mean?  The standard rates for, for example, I won't embarrass the excellent lawyers from Kirkland & Ellis by asking what their standard rates are, but they might be quite substantial.  So how can I approve an expense when I don't even know the billing rates?

MR. ROBERTSON:  Your Honor, we certainly can get that information and submit it to you.  The reason we've included those expenses as an expense to be reimbursed in this case is this is a global settlement of all claims relating to --

THE COURT:  Oh, I don't have any problem with the concept.  I'm just talking about the particulars.

MR. ROBERTSON:  Okay.

THE COURT:  Let me ask something else.  There was no breakdown on the $16,590.64 for travel.

Now, an argument could be made that traveling to the

1    Cayman Islands in the depth of winter is something where you

2    shouldn't be rewarded at all.  It sounds like a wonderful

3    vacation.  But putting that facetious comment aside, where did

4    you stay?

5             MR. ROBERTSON:  So, your Honor, we didn't travel to

6    the Cayman Islands.  The travel was out to the West Coast for

7    Mr. Ma-Weaver's deposition, and then travel here to New York

8    City for depositions and hearings in the matter.

9             THE COURT:  And where did you stay?

10            MR. ROBERTSON:  I stayed, in particular, at the Hilton

11   Garden Inn on 33rd Street, 33rd and Park.  I don't know where

12   Mr. Morris stayed when he traveled here, but certainly I know

13   that I stayed there.

14            THE COURT:  Okay.  That's a reasonable place to stay.

15   If you had told me The Four Seasons, I might have had some

16   questions.

17            MR. ROBERTSON:  Certainly, your Honor.

18            THE COURT:  Now, to get to something more substantive.

19   I don't understand why I should be giving any incentive fee to

20   Funicular.  They're the single biggest recipient of the

21   settlement, are they not?

22            MR. ROBERTSON:  They are a large participant in the

23   settlement.  They're the largest holder of class A shares, but

24   their contribution to the litigation isn't proportionate to

25   their participation in the settlement because they made unique

1    contributions, that they alone made, unique among all members
2    of the class in terms of --
3             THE COURT:  Yeah, because they were lead plaintiff and
4    because they had the most money involved.
5             You know, you make the point in your request for
6    30 percent of attorneys' fees that if this were a standard like
7    personal injury contingent fee, you could charge one-third.
8    And we'll get to all that in a minute.  But in a typical
9    personal injury case, your client would be intimately involved.
10   Their deposition would be taken.  They would have to produce
11   all sorts of discovery.  And they wouldn't be entitled to an
12   incentive fee, because if you win, they get the other
13   two-thirds.
14            So I don't understand why Funicular gets a special
15   incentive fee.
16            MR. ROBERTSON:  Well, your Honor, here, Funicular made
17   the choice as a matter of principle to bring this action as a
18   class action, not to recover just on the behalf of themselves
19   but to recover for the benefits of all class --
20            THE COURT:  Right.  And there was no promise to them,
21   I assume, that they would receive even 1 penny in incentive
22   fees.
23            MR. ROBERTSON:  No, your Honor, there was not.  What
24   they were promised was their participation in the settlement.
25            However, in order to litigate the case, Funicular did

participate, and this was beyond a typical lead plaintiff in a securities action where you receive status updates and maybe review a brief. Here they had substantive and meaningful contributions that they made from the initial investigation --

THE COURT: Isn't that their job as lead plaintiff? Don't they owe a fiduciary duty to the other members of the class? So that was part of what they signed on for.

MR. ROBERTSON: So, your Honor, I've handled securities actions. Their participation and engagement was above and beyond what you see from a typical lead plaintiff, institutional lead plaintiff.

THE COURT: So, for example, one of the things you mentioned is they did a lot of work on discovery. So, otherwise that would have been done by counsel. So maybe instead of awarding you 30 percent, I should award you 30 percent minus the payment to them.

MR. ROBERTSON: So, your Honor, their contributions in discovery were preparing for and sitting for a deposition and collecting documents. So we did a lot of other work beyond that in terms of discovery.

But the other factor that I think your Honor should consider is the risks that Funicular took on. You know, a typical lead plaintiff doesn't front $359,000 out-of-pocket expenses for the benefit of the class. And those Cayman Island expenses were necessary to protect the interest of --

1          THE COURT:  Oh, I understand that, and that was their
2     choice as the people who had the most to gain, but also
3     potentially the most to lose.  And also as people who were
4     taking on this role of lead plaintiff.
5          But I don't understand why that means that in addition
6     to all the money they're going to get from the settlement, they
7     should get an added bonus.
8          MR. ROBERTSON:  Well, your Honor, every other class
9     member had one risk and that risk was a risk of zero recovery
10    if the litigation wasn't successful.  Funicular took on an
11    additional and unique risk that no other class member shared
12    in, and that was the risk of a significant out-of-pocket
13    financial loss if the litigation weren't successful.
14         THE COURT:  I hear you, but I don't understand why
15    that isn't implicit in -- that decision was not made because
16    they expected to receive an incentive fee.  And indeed, as you
17    just confirmed, no representation was made to them as to their
18    receiving an incentive fee.  And if had been, it would have
19    been unethical because I had not indicated in any way, shape,
20    or form that I would have given them an incentive.  So they
21    made their decision based on the risk and rewards that they
22    would get from the settlement.
23         MR. ROBERTSON:  So they did, your Honor.  But this was
24    a tremendous risk.  And the case law recognizes that in
25    circumstances like what we're facing here, there is room and

discretion for a court to award --

THE COURT: I understand there's discretion and I understand that some judges have gone far in this direction and other judges have not gone so far. And there doesn't seem to be -- whereas, when we're talking about attorneys' fees, at least there is a kind of rule of thumb that somewhere between 25 and 30 percent is typical. And if it's a really good settlement, if it's not so good but it's okay, 25 percent, unless the amount is so huge that even 25 percent would be billions of dollars, in which case it's less. So you have basic guidance there. But I don't think any guidance has yet emerged with respect to these incentive fees.

MR. ROBERTSON: So, your Honor, I will concede the case law isn't nearly as well developed on the incentive fees as it is for attorneys' fees. But I think that's also a product of the fact that what Funicular did here is really unique. It doesn't happen all that often where a lead plaintiff, even an institutional lead plaintiff with a large stake in the cause, comes forward and says we're willing to put our money on the line here and face the risk of a financial loss. It also --

THE COURT: All right. I'll cut this short a little bit. I hear your argument. I'm willing to do either of these alternatives, but no others.

Either I'll award them $100,000, or I'll award them

O6QAFunH

195,000, but reduce your 30 percent by 95,000.  Which would you prefer?

MR. ROBERTSON:  We'll do the second one, your Honor.

THE COURT:  Okay.  That's what I was hoping you would say.  Good for you.  And I think that's justified because of the many services they helped you with.

I do think the 30 percent is called for in this case.  I thought it was a good result under all the facts and circumstances.

I won't put counsel through the trouble of telling me now, as always happens in these situations, plaintiff's counsel tells me all the wonderful defenses that the other side had and defense counsel tells me all the huge risks they faced from the plaintiffs, but we won't go through that stuff.  So the 30 percent minus the 95,000 will be the award.

I do want to point out one thing just for future reference.  While I thought that the time sheets were considerably better than many I've seen, it's amazing to me how many times I see meaningless time sheets.  There were occasional exceptions, not material and I don't want to overemphasize it, but just to give an example.  Let me see if I can find it.

So, for example, there was some entries that said no more than "review documents" or "work relating to discovery."  They were from some fella named Aaron Morris.  And then there

1  was a 1.3 hour entry from associate for "observing deposition
2  prep." Much of that is appropriate to charge. But I want to
3  reemphasize these were the exceptions. By and large the time
4  sheets were much better than I usually see. So I think to help
5  justify through the lodestar calculation the 30 percent award.
6      So I will adjust the proposed order on that and sign
7  the other two orders you have presented and get this all out in
8  the next day or so.
9      Is there anything else we need to take up today?
10     MR. ROBERTSON: No, your Honor. Just do you need
11 anything further from us on the expenses in the Cayman counsel?
12     THE COURT: No, I'll assume that -- if I were a lawyer
13 in the Cayman Islands, I would be paying the Court for the
14 privilege of appearing in such a wonderful venue. But I assume
15 that probably they have mouths to feed at home so they probably
16 do charge something for the service.
17     MR. ROBERTSON: It always sounded like a nice place
18 when we were on the phone with them.
19     THE COURT: Yeah. Okay. Very good. Anything else?
20 Anything from defense counsel?
21     MS. JACKSON: Thank you, your Honor. I just had one
22 question. I know that previously --
23     THE COURT: And I'm not going to ask you what the
24 Kirkland charges are. Don't worry.
25     MS. JACKSON: Thank you, your Honor. I appreciate

1   that.  The only question we had is whether or not this is a
2   provisional approval pending the expiration of the 90-day CAFA
3   notice.
4           THE COURT:  Oh, that's a good point.  Well, I would
5   treat it as a final approval now, but there is that 90 day.
6   When does that expire?
7           MR. ROBERTSON:  September 16, your Honor.
8           THE COURT:  Well, let me ask plaintiff's counsel.  I
9   can either sign these as is, and if there's a problem you can
10  come back, or I can sign them today, but say effective
11  September 16th, or I can just wait until September 16th.
12          What do you want?
13          MR. ROBERTSON:  We prefer to move forward with the
14  settlement and come back to you if there's an issue.  I don't
15  anticipate there will be given the lack of involvement from the
16  regulator at this point.
17          THE COURT:  Yeah.  I think that's -- I'm very glad
18  though that counsel for the defense raised that but I think I
19  can sign off on this now with the express understanding made
20  here in open court that if there is a problem, that we will
21  reopen at that point.
22          MR. ROBERTSON:  Yes, your Honor.
23          MS. JACKSON:  Thank you, your Honor.
24          THE COURT:  Very good.  Okay.  Thanks very much.
25          (Adjourned)